UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

```
---------------------------------------------------------- X
MARIA GRANCIO, individually, and in her           :
capacity as Executrix and Personal Representative :
of the Estate of Nicholas P. Grancio,             :
                                                  :
                        Plaintiff,                :   CIVIL ACTION NO.
V.                                                :   06 CV 0069 (FB)(CLP)
                                                  :
R. LINDLEY DeVECCHIO;                             :
                                                  :
CHRISTOPHER FAVO;                                 :
                                                  :
UNITED STATES OF AMERICA.                         :
                                                  :
                        Defendants.               :
---------------------------------------------------------- X
```

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT CHRISTOPHER FAVO'S
MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................ 1

    A.    Statement Of Facts Relevant To Motion To Dismiss .......................... 2

ARGUMENT ........................................................................................................... 6

    I.    Complaints Failing To State A Claim Should Be Dismissed As A Matter Of Law ........................................................................................ 6

    II.    The Complaint Fails To Allege Facts Establishing Favo's Personal Involvement .................................................................................... 7

    III.    The Doctrine Of Qualified Immunity .................................................. 9

        A.    Qualified Immunity Should Be Resolved As Early As Possible ............ 10

        B.    The Standards For Assessing Qualified Immunity Claims ...................... 10

    IV.    The Complaint Should Be Dismissed Because It Fails to Assert Any Constitutional Claim Against Favo And Favo Is Entitled To Qualified Immunity ........................................................................................ 11

        A.    The Fifth Amendment Claim Should Be Dismissed ............................... 12

            1.    The Complaint Does Not Allege A Substantive Due Process Violation ...................................................................... 12

                a.    Grancio Did Not Have A "Special Relationship" With The United States ................................................ 13

                b.    No "State Created Danger" Was Created By Favo .......... 14

                c.    Alleged Failures To Act Do Not Violate Due Process ................................................................. 16

            2.    Favo Is Entitled To Qualified Immunity ...................................... 16

        B.    The Fourth Amendment Claim Should Be Dismissed And Favo Is Entitled To Qualified Immunity ................................................... 18

        C.    The Eighth Amendment Claim Should Be Dismissed And Favo Is Entitled To Qualified Immunity ................................................... 19

        D.    The Complaint Fails To State A Bivens Conspiracy Claim For Additional Reasons ..................................................................... 20

    V.    Favo Is Entitled To Summary Judgment On The Constitutional Claims ............ 21

        A.    Statement Of Facts Relevant To Motion For Summary Judgment .......... 21

        B.    Standard For Granting Summary Judgment ............................................ 23

        C.    Plaintiff Cannot Show Favo's Personal Involvement In A Constitutional Violation ............................................................... 24

## TABLE OF CONTENTS
(continued)

Page

D.    Plaintiff Cannot Show Any Constitutional Deprivation By Favo ........... 24

1.    There Is No Material Issue Concerning The Fifth
Amendment Claim .................................................................. 25

2.    There Is No Material Issue Concerning The Other
Constitutional Claims............................................................ 26

E.    Favo Is Entitled To Qualified Immunity................................................. 27

VI.    The State Common Law Claims Against Favo Are Barred By The FTCA......... 28

VII.    Plaintiff's Bivens Claims Are Barred By The Statute Of Limitations................. 28

A.    Plaintiff Was Or Should Have Been Aware Of Her Claims By
1998.......................................................................................................... 30

B.    Plaintiff's Claims Of Fraudulent Concealment Also Fail........................ 32

CONCLUSION.......................................................................................................... 34

# TABLE OF AUTHORITIES

## CASES

*Aetna Cas. & Sur. Co. v. Manshul Const. Corp.*, No. 95-CV-3994, 2002 U.S. Dist. LEXIS 13810 (S.D.N.Y. July 26, 2002) ........................................................................6

*Allah v. Juchenwioz*, 176 Fed. Appx. 187, 188-89 (2d Cir. 2006) ...............................10

*Anderson v. Creighton*, 483 U.S. 635 (1987) ........................................................9, 10

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ...............................................23

*Arar v. Ashcroft*, 414 F. Supp. 2d 250 (E.D.N.Y. 2006) ...............................................8

*Armstrong v. McAlpin*, 699 F.2d 79 (2d Cir. 1983) .....................................................33

*Banushi v. City of N.Y.*, No. 2006 U.S. Dist. LEXIS 70414 (E.D.N.Y. Sept. 28, 2006) ..............32

*Barbera v. Smith*, 836 F.2d 96 (2d. Cir. 1987) ......................................................8, 17

*Barr v. Abrams*, 810 F.2d 358 (2d Cir. 1987) ...............................................................6

*Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971) ................................................................................................... *passim*

*Brosseau v. Haugen*, 543 U.S. 194 (2004) ...................................................................11

*Brower v. County of Inyo*, 489 U.S. 593 (1989) ..........................................................19

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1985) ............................................................23

*Cerosini v. Sony Corp.*, 991 F. Supp. 343 (S.D.N.Y. 1998) .........................................30

*Ciambriello v. County of Nassau*, 292 F.3d 307 (2d Cir. 2002) ............................20, 21

*Citizen's Accord, Inc. v. Town of Rochester*, No. 98-CV-0715, 2000 U.S. Dist. LEXIS 4844 (N.D.N.Y. Apr. 18, 2000) ........................................................................25

*Citizen's Accord, Inc. v. Town of Rochester*, No. 98-CV-0715, 2000 U.S. Dist. LEXIS 4844 (N.D.N.Y. Apr. 18, 2000) ........................................................................25

*Clark v. Sweeney*, 312 F. Supp. 2d 277 (D. Conn. 2004) .............................................15

*Condit v. Dunne*, 317 F. Supp. 2d 344 (S.D.N.Y. 2004) ..............................................30

*Cook v. City of Groton*, 952 F. Supp. 101 (D. Conn.), *aff'd mem., 129 F.3d 113 (2d Cir. 1997)* ........................................................................................................17

iii

## TABLE OF AUTHORITIES
### CASES
#### (continued)

*County of Sacramento v. Lewis*, 523 U.S. 833 (1998) ............................................ 12, 18

*Coveal v. Consumer Home Mortgage. Inc.*, No. 04-CV-4755, 2005 U.S. Dist. LEXIS 5003 (E.D.N.Y. Mar. 29, 2005) .......................................................................... 33

*Cyril v. Neighborhood P'ship II Hous. Dev. Fund, Inc.*, 124 F. App'x. 26, 28 (2d Cir. 2005) ...................................................................................................................... 7

*Davidson v. Scully*, 114 F.3d 12 (2d Cir. 1997) .......................................... 27, 28, 29

*Davis v. Little*, 851 F.2d 605 (2d Cir. 1988) ............................................................ 19

*De Jesus v. Sears Roebuck & Co.*, 87 F.3d 65 (2d Cir. 1996) ................................... 6

*DeShaney v. Winnebago County Dep't of Social Servs.*, 489 U.S. 189 (1989) ............... 12, 13, 14, 16, 17, 19

*Dwares v. City of New York*, 985 F.2d 94 (2d Cir. 1993) ................................... 14, 17

*Eagleston v. Guido*, 41 F.3d 865 (2d Cir. 1994) ..................................................... 29

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982) ................................................... 9, 10, 11

*Hughes v. Vanderbilt Univ.*, 215 F.3d 543 (6th Cir. 2000) ..................................... 31

*Hunter v. Bryant*, 502 U.S. 224 (1991) .................................................................. 10

*Ingraham v. Wright*, 430 U.S. 651 (1977) ............................................................... 20

*Kantha v. Blue*, 262 F. Supp. 2d 90 (S.D.N.Y. 2003) ............................................ 24

*Kohli v. Stephen A. Steiglitz, Inc.*, No. 99-CV-982, 2000 U.S. Dist. LEXIS 3373 (E.D.N.Y. Feb. 23, 2000) ........................................................................................... 6

*Kozonasky v. Sears Roebuck & Co.*, No. 81 Civ. 2164-CSH, 1986 U.S. Dist. LEXIS 18671 (S.D.N.Y Oct. 23, 1986) .............................................................................. 33

*Kramer v. City of N.Y.*, No. 04 Civ. 106, 2004 U.S. Dist. LEXIS 21914 (S.D.N.Y. Oct. 29, 200) .................................................................................................................... 27

*Kronisch v. United States*, 150 F.3d 112 (2d Cir. 1998) ................................ 29, 31, 32, 33

*LC Capital Partners LP v. Frontier Ins. Group, Inc.*, 318 F.3d 148 (2d Cir. 2003) .............. 29, 31

## TABLE OF AUTHORITIES
### CASES
### (continued)

*Luna v. Pico*, 356 F.3d 481 (2d Cir. 2004) .................................................................28

*Matican v. City of N.Y.*, 424 F. Supp. 2d 497 (E.D.N.Y. 2006)..........................13, 26, 28

*McCullough v. Wyandanch Union Free Sch. Dist.*, 187 F.3d 272 (2d Cir. 1999)...........10, 11, 17, 27, 28, 29

*McKenna v. Wright*, 386 F.3d 432 (2d Cir. 2004) ........................................................10

*In re Merrill Lynch & Co.*, 273 F. Supp. 2d 351 (S.D.N.Y. 2003)..............................29, 30, 32, 33

*Middleton v. City of N.Y.*, No. 04-C 2006 U.S. Dist. LEXIS 44320 (E.D.N.Y. June 19, 2006) .....................................................................................................................21

*Muzio v. Inc. Vill. of Bayville*, No. CV-99-8605, 2006 U.S. Dist. LEXIS 1886 (E.D.N.Y. Jan. 3, 2006)................................................................................................................8

*Nance v. Hazell*, No. 02-CV-3525, 2005 U.S. Dist. LEXIS 6421 (E.D.N.Y. Apr. 15, 2005) ...............................................................................................................................23

*Nassau County Employee "L" v. County of Nassau*, 345 F. Supp. 2d 293 (E.D.N.Y.2004) .....7, 10

*Niagara Mohawk Power Corp. v. Jones Chem., Inc.*, 315 F.3d 171 (2d Cir. 2003) ....................23

*Nwaokocha v. Sadowski*, 369 F. Supp. 2d 362 (E.D.N.Y. 2005).......................................6

*Oblio v. City Univ. of N.Y.*, No. Civ-01-5118, 2003 U.S. Dist. LEXIS 2886 (E.D.N.Y. Feb. 28, 2003) ...............................................................................................................7

*Orena v. United States*, 956 F. Supp. 1071 (E.D.N.Y. 1997).......................................16

*Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67 (2d Cir. 1998) ...........................30

*Pena v. Deprisco*, 432 F.3d 98 (2d Cir. 2005)................................................12, 16, 18, 25, 26

*Piechowicz v. United States*, 885 F.2d 1207 (4th Cir. 1989).......................................17

*Pinaud v. County of Suffolk*, 52 F.3d 1139 (2d Cir. 1995) .........................................29

*Piotrowski v. City of Houston*, 237 F.3d 567 (5th Cir. 2001).....................................15

*Provost v. City of Newburgh*, 262 F.3d 146 (2d Cir. 2001)...................................7, 8, 24

v

# TABLE OF AUTHORITIES
## CASES
### (continued)

*Reno v. Flores*, 507 U.S. 292 (1993) ..................................................................12

*Richardson v. Selsky*, 5 F.3d 616 (2d Civ. 1993)................................................11

*Rivera v. Rhode Island*, 402 F.3d 27 (1st Cir. 2005) .........................................15

*Rivera v. United States*, 928 F.2d 592 (2d Cir. 1991)........................................28

*Estate of Rosenbaum v. City of New York*, 975 F. Supp. 206 (E.D.N.Y. 1997) ...............17, 18, 27

*Saucier v. Katz*, 533 U.S. 194 (2001) ...........................................................10, 11

*Saunders v. Crotty*, No. 00-0082, 2000 U.S. App. LEXIS 29568 (2d Cir. Nov. 16, 2000) ..........20

*Silverman v. City of N.Y.*, 216 F. Supp. 2d 108 (E.D.N.Y. 2002), *aff'd, 64 F. App'x 799 (2d. Cir 2003)*.......................................................................24

*Simpson v. Putnam County Nat'l Bank*, 20 F. Supp. 2d 630 (S.D.N.Y. 1998) ............................33

*Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236 (2d Cir. 2002) ................................6

*Solow v. Stone*, 994 F. Supp. 173 (S.D.N.Y.), *aff'd, 163 F.3d 151 (2d Cir. 1998)*......................33

*Straker v. Metro. Transit Auth.*, 333 F. Supp. 2d 91 (E.D.N.Y. 2004) ............................................7

*Tapia-Ortiz v. Doe*, 171 F.3d 150 (2d Cir. 1999) .............................................29

*Tennessee v. Garner*, 471 U.S. 1 (1985)............................................................19

*Tricoles v. Bumpus*, No. 05-CV-3728, 2006 U.S. Dist. LEXIS 17457 (E.D.N.Y. Mar. 23, 2006) ......................................................................6, 7, 8

*United Klans of Am. v. McGovern*, 621 F.2d 152 (5th Cir. 1980).............................31

*Vasquez v. Parks*, No. 02CIV1735, 2003 U.S. Dist. LEXIS 3957 (S.D.N.Y. Jan. 27, 2003) ........................................................................7

*Veal v. Geraci*, 23 F.3d 722 (2d Cir. 1994) .....................................................29

*Walker v. Jastremski*, 430 F.3d 560 (2d Cir. 2005) .........................................21

*Whitley v. Albers*, 475 U.S. 312 (1986) ............................................................19

*Williams v. Smith*, 781 F.2d 319 (2d Cir. 1986) ...............................................7

**TABLE OF AUTHORITIES**
**CASES**
**(continued)**

*Wright v. Smith*, 21 F.3d 496 (2d Cir. 1994)................................................................7

*Ying Jing Gan v. City of N.Y.*, 996 F.2d 522 (2d Cir. 1993)................................14, 27

*Young v. County of Fulton*, 160 F.3d 899 (2d Cir. 1998)............................................11

**STATUTES AND RULES**

*28* U.S.C. *§ 2679(b)(1) (2006)*.................................................................................29

*Fed. R. Civ. P. 12(b)(6)*......................................................................................1, 6, 30
                                                                                                  34, 35
*Fed. R. Civ. P. 56(c)* ........................................................................................1, 2, 24

Defendant Christopher Favo ("Favo"), by and through undersigned counsel, respectfully submits this Memorandum of Law in Support of his Motion to Dismiss the First Amended Complaint, filed October 4, 2006 ("Complaint"), pursuant to Federal Rule of Civil Procedure 12(b)(6), or, in the alternative, for Summary Judgment, pursuant to Federal Rule of Civil Procedure 56.

<u>PRELIMINARY STATEMENT</u>

The claims in this action arise out of the January 1992 murder of Nicholas P. Grancio ("Grancio"), a reputed member of the Orena faction of the Colombo organized crime family, by Gregory Scarpa, Sr. ("Scarpa"), a member of the Persico faction of the Colombo family, and Scarpa's associates. Scarpa died in prison in 1994. At the time of Grancio's murder, Scarpa was also a confidential informant for the Federal Bureau of Investigation ("FBI") and was handled in that role by Defendant Lindley DeVecchio ("DeVecchio"), formerly a Supervisory Special Agent with the FBI. At the time of Grancio's murder, Defendant Favo was a Special Agent with the FBI who reported to DeVecchio, but had no role in handling Scarpa. Despite Favo's lack of involvement with Scarpa and the passage of 14 years since Scarpa's murder of Grancio, Plaintiff Maria Grancio now sues Favo, alleging, *inter alia*, that he had a constitutional duty to protect Grancio.

As discussed below, the constitutional claims against Favo should be dismissed under Rule 12(b)(6). First, the allegations in the Complaint do not support a claim that Favo participated in any alleged constitutional violation with knowledge of facts that would render his conduct unlawful. Second, the Complaint fails to state a claim that Favo deprived Grancio or Plaintiff of any rights under the Fifth, Fourth or Eighth Amendments as a matter of law. Third, even if the Complaint alleged a claim of constitutional deprivation, Favo is nonetheless

entitled to qualified immunity.  Alternatively, the Court should grant summary judgment under Rule 56 as to Favo because Plaintiff cannot create any genuine issue of material fact regarding the lack of any constitutional deprivation by Favo or Favo's entitlement to qualified immunity. In addition, Plaintiff's common law state claims against Favo are barred by the Federal Torts Claims Act.  Finally, Plaintiff's constitutional claims against Favo are barred by the statute of limitations.  As a result, all of Plaintiff's claims against Favo must be dismissed.

A.   <u>Statement Of Facts Relevant To Motion To Dismiss.</u>

Defendant Favo has been and remains today a Special Agent of the Federal Bureau of Investigation.[1]  (Compl. ¶ 5.)  In the early 1990's, Favo participated in a task force comprised of FBI agents and New York Police Department ("NYPD") detectives investigating the Colombo organized crime family (the "Colombo task force").  (Compl. ¶¶ 11, 22.)  In that role, Favo reported to and was supervised by DeVecchio, who served as the head of the FBI unit to which Favo was assigned.  At all times relevant to the Complaint, Favo acted within the scope of his employment as a Special Agent of the FBI.  (Compl. ¶ 5.)

Scarpa was a member of the Colombo organized crime family who was reputed to hold a leadership position therein and was known on the street as a feared killer.  (Compl. ¶ 33.)  Scarpa was also an informant for the government.  (Compl. ¶ 33.)  Since 1980, Scarpa had been "handled" as a government informant by DeVecchio, who "managed his informant status, had him paid for his work, and took responsibility for him."  (Compl. ¶¶ 16, 35.)  According to the Complaint, DeVecchio allowed and encouraged Scarpa's commission of a broad range of crimes, including murder.  (*E.g.*, Compl. ¶¶ 41, 61.)  Favo came forward to report suspicions he had

---

[1] This Statement of Facts sets out the allegations of the Complaint, which we assume to be true solely for purposes of the motion to dismiss.   Citations to "Compl. ¶ __" are to paragraphs of the Complaint.

formed regarding the relationship between DeVecchio and Scarpa. (Compl. ¶ 46) ("Favo did eventually come forward and report some of what he knew and suspected . . . .")

The decedent upon whom this entire litigation is premised, Grancio, a suspected member of the Colombo organized crime family, was shot and killed on January 7, 1992 by Scarpa and two of Scarpa's associates. (Compl. ¶¶ 2, 11, 15, 25.) In the early 1990's, the government contended that there was an internal war within the Colombo organized crime family between the "Orena" and "Persico" factions. (Compl. ¶ 58.) Scarpa was a leader of the Persico faction and his intended victims, on most occasions, were members of the Orena faction. (Compl. ¶ 59.) According to the Complaint, DeVecchio "became, in effect, a member of the 'Persico' faction and assisted Scarpa in fomenting the 'war' and in seeking to advance Scarpa's agenda through murder and other illegal conduct." (Compl. ¶ 60.) As part of Scarpa's "criminal campaign", Scarpa and his associates shot and killed Grancio. (Compl. ¶¶ 25, 61.)

In particular, the Complaint alleges that, on the afternoon of January 7, 1992, Grancio and a nephew were sitting in a car in Brooklyn and talking. (Compl. ¶¶ 8, 9.) Scarpa and his associates spotted Grancio in his car. (Compl. ¶¶ 13, 14.) Scarpa also saw that a NYPD detective and his partner (members of the Colombo task force) were maintaining surveillance on Grancio. (Compl. ¶¶ 11, 14.) Scarpa could not kill Grancio while Grancio was under surveillance, and told one of his associates that he would remove the surveillance by calling his contact in law enforcement. (Compl. ¶¶ 14, 17.) According to the Complaint, Scarpa called DeVecchio and said that he had found Grancio, and DeVecchio responded that he would remove the surveillance from Grancio. (Compl. ¶¶ 18, 19.)

With respect to Favo's role in these central events, the Complaint asserts the following allegations:

22.  At DEVECCHIO's direction and knowing the importance of the surveillance for a variety of reasons, including the need to protect Grancio from the imminent and credible threat to kill him, and aware of the "war" and Grancio's alleged position, FAVO, who worked closely with DEVECCHIO on the joint federal and state task force, telephoned Detective Simone and directed him to end the surveillance that he and his partner were conducting of Grancio.  (Compl. ¶ 22.)

23.  FAVO directed Simone and his partner to return to the FBI New York field office headquarters for a meeting.  (Compl. ¶ 23.)

24.  Simone found this direction most unusual, argued with FAVO, tried to dissuade him from the direction, and emphasized the critical importance of keeping Grancio under surveillance; but FAVO would not be dissuaded and he required Simone and his partner to follow the directive.  Under protest, Simone and his partner pulled off their surveillance of Grancio and began to return to the FBI New York field office.  (Compl. ¶ 24.)

According to the Complaint, after seeing the surveillance team leave, Scarpa and his associates shot and killed Grancio.  (Compl. ¶ 25.)  The Complaint, however, does not allege that DeVecchio told or otherwise conveyed to Favo his alleged conversation with Scarpa regarding the removal of any surveillance.

The Complaint further asserts that before DeVecchio and Favo pulled the surveillance team off Grancio they had been told by law enforcement officers (not named in the Complaint) that Grancio was thought to be a primary target for murder by Scarpa and was in immediate danger.  (Compl. ¶¶ 11, 20.)  According to the Complaint, that information gave rise to a special relationship that imposed a duty on DeVecchio and Favo to protect Grancio from harm by Scarpa, but that Defendants failed to warn or protect Grancio.  (Compl. ¶¶ 20, 54, 55.)  Similarly, the Complaint asserts that DeVecchio and Favo "knew or believed" that Scarpa's and Grancio's factions of the Colombo family were at "war", which "meant that people in one faction killed or tried to kill members of the other faction …."  (Compl. ¶ 21.)

The Complaint thereafter asserts only certain generalized allegations with respect to the conduct of Favo.  First, notwithstanding its admission that Scarpa was handled as an informant

4

by DeVecchio, not Favo, the Complaint asserts that Favo failed to supervise Scarpa in violation

of an alleged obligation to protect Grancio:

> 63.  These Defendants and others wholly failed to supervise Scarpa as an informant, failed wholly to supervise each other and failed wholly to protect Nicholas Grancio and others from Scarpa and others, knowing the dangers that existed, all in violation of their lawfully required obligations . . . . (Compl. ¶ 63; *see also* Compl. ¶¶ 37-38, 53.)

Second, the Complaint offers conclusory assertions regarding Favo's alleged

participation in an alleged broad "coverup" in the period <u>after</u> the Grancio shooting:

> 26.  Since the murder of Nicholas Grancio, DEVECCHIO and FAVO and others engaged in a widespread pattern of lying about this matter and others in various settings, have misled on this subject and other incidents of gross misconduct repeatedly, and have taken other steps to conceal the true facts of the Grancio murder.  (Compl. ¶ 26; *see also* Compl. ¶¶ 30, 43, 46, 56, 57, 66.)

Third, the Complaint generally alleges that, at an unspecified point in time, Favo was or

should have been aware of the allegedly improper relationship between DeVecchio and Scarpa

and aided or ignored that relationship.  Tellingly, the Complaint alleges no facts indicating that

Favo was aware of that relationship <u>before</u> Grancio's murder:

> 44.  FAVO was aware of or should have been aware of the illicit, illegal, and corrupt relationship between Scarpa and DEVECCHIO and aided them in accomplishing their illegal purposes or deliberately turned a blind eye to the same.  (Compl. ¶ 44.)

> 45.  To the extent FAVO was not aware of all details of the relationship between Scarpa and DEVECCHIO, he reasonably should have been, and he had a lawful duty to act to stop that relationship and the crimes it facilitated . . . .  (Compl. ¶ 45; *see also* Compl. ¶¶ 28, 62, 65.)

Following these generalized allegations, the Complaint asserts two claims against Favo in

his individual capacity purportedly pursuant to *Bivens v. Six Unknown Named Agents of Federal*

*Bureau of Narcotics*, 403 U.S. 388 (1971).  The Complaint also asserts common law state claims

against Favo for conspiracy, negligent and intentional infliction of emotional distress, wrongful

death, negligence, negligent hiring and supervision, and loss of consortium.

ARGUMENT

I.    <u>Complaints Failing To State A Claim Should Be Dismissed As A Matter Of Law.</u>

A complaint should be dismissed if it fails to "state a claim upon which relief can be

granted." Fed. R. Civ. P. 12(b)(6). In reviewing the complaint, the Court "must accept as true

all well-pleaded factual allegations . . . and view them in the light most favorable to Plaintiff[]."

*De Jesus v. Sears Roebuck & Co.*, 87 F.3d 65, 69 (2d Cir. 1996) (citation omitted). A complaint,

however, should be dismissed if the plaintiff "can prove no set of facts in support of the claim[s]

which would entitle [her] to relief." *Kohli v. Stephen A. Steiglitz, Inc.*, No. 99-CV-982, 2000

U.S. Dist. LEXIS 3373, at *5 (E.D.N.Y. Feb. 23, 2000) (citation omitted). "Complaints

containing only conclusory, vague or general allegations . . . cannot survive a motion to dismiss."

*Aetna Cas. & Sur. Co. v. Manshul Const. Corp.*, No. 95-CV-3994, 2002 U.S. Dist. LEXIS

13810, at *9 (S.D.N.Y. July 26, 2002) (internal citations omitted); *see also De Jesus*, 87 F.3d at

70. Similarly, "legal conclusions masquerading as factual conclusions will not suffice to prevent

a motion to dismiss." *Tricoles v. Bumpus*, No. 05-CV-3728, 2006 U.S. Dist. LEXIS 17457, at *5

(E.D.N.Y. Mar. 23, 2006) (quoting *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240

(2d Cir. 2002)).

In particular, complaints alleging civil rights and constitutional violations "are

insufficient unless they contain some specific allegations of fact indicating a deprivation of

rights, instead of [a] litany of general conclusions that shock but have no meaning." *Barr v.

Abrams*, 810 F.2d 358, 363 (2d Cir. 1987) (citation omitted); *see also Nwaokocha v. Sadowski*,

369 F. Supp. 2d 362, 369 (E.D.N.Y. 2005) (pleadings alleging *Bivens* claims "must contain more

6

than mere conclusory allegations that a right has been violated"); *Oblio v. City Univ. of N.Y.*, No. CV-01-5118, 2003 U.S. Dist. LEXIS 2886, at *68 (E.D.N.Y. Feb. 28, 2003) (plaintiff "'must make specific allegations that indicate a deprivation of constitutional rights'").

Accordingly, in this Circuit, in this District and in this Court, complaints relying upon such conclusory allegations are appropriately dismissed as a matter of law. *See, e.g., Cyril v. Neighborhood P'ship II Hous. Dev. Fund, Inc.*, 124 F. App'x. 26, 28 (2d Cir. 2005); *Nassau County Employee "L" v. County of Nassau*, 345 F. Supp. 2d 293, 303-04 (E.D.N.Y. 2004); *Straker v. Metro. Transit Auth.*, 333 F. Supp. 2d 91, 102 (E.D.N.Y. 2004) (Block, *J.*).

II.   <u>The Complaint Fails To Allege Facts Establishing Favo's Personal Involvement.</u>

"[I]t is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations'" is a prerequisite to damages for the alleged violation of constitutional rights. *Provost v. City of Newburgh*, 262 F.3d 146, 154 (2d Cir. 2001) (quoting *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citation omitted)). Favo, who is not alleged, and could not be alleged to be DeVecchio's supervisor, may be personally involved in the alleged constitutional deprivation only if he "directly participated in the infraction." *See Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986); *see also Provost*, 262 F.3d at 154.

To survive a motion to dismiss, a plaintiff alleging a Section 1983 or *Bivens* claim must set forth "'specific and detailed factual allegations' of personal involvement as opposed to 'bald assertion[s]' and 'conclusory terms.'" *Vasquez v. Parks*, No. 02CIV1735, 2003 U.S. Dist. LEXIS 3957, at *25 (S.D.N.Y. Jan. 27, 2003) (citation omitted); *Tricoles,* 2006 U.S. Dist. LEXIS 17457, at *9-10. Such personal involvement requires more than mere physical participation. The defendant must participate with "knowledge of the facts that rendered the conduct illegal." *Provost*, 262 F.3d at 155. In other words, what is required is "intentional

7

participation in the conduct constituting a violation of the victim's rights by one who knew of the facts rendering it illegal." *Id.*  Complaints that fail to adequately allege such personal participation in the alleged wrongful conduct are properly dismissed as a matter of law. *See, e.g., Muzio v. Inc. Vill. of Bayville*, No. CV-99-8605, 2006 U.S. Dist. LEXIS 1886, at *14-15 (E.D.N.Y. Jan. 3, 2006); *Tricoles,* 2006 U.S. Dist. LEXIS 17457, at *9-12; *Arar v. Ashcroft*, 414 F. Supp. 2d 250, 286 (E.D.N.Y. 2006) (all dismissing *Bivens* or § 1983 claims for failure to adequately plead facts showing personal involvement).

In *Barbera v. Smith*, for example, the Second Circuit reversed the district court's denial of a motion to dismiss a complaint against a federal prosecutor because of his lack of personal involvement in the alleged violation.  836 F.2d 96, 99 (2d Cir. 1987).  The complaint asserted that a United States Attorney and Assistant United States Attorney violated the right to life of a cooperating witness whose identity was revealed and who was subsequently killed. *See id.* at 98-99.  The Circuit found, *inter alia*, that the complaint alleged no personal involvement by the U.S. Attorney in the decisions that revealed the witness. *See id.* at 99.  As a result, the complaint failed to state a claim against him.[2] *See id.*

Here too, the Complaint fails to assert facts that would show that Favo intentionally participated in conduct that violated Grancio's constitutional rights with "knowledge of the facts that rendered the conduct illegal." *Provost*, 262 F.3d at 155.  Rather, the Complaint alleges that, on January 7, 1992, Scarpa and his associates spotted Grancio; Scarpa allegedly spoke with DeVecchio regarding the removal of surveillance on Grancio; DeVecchio agreed to do so; and thereafter Scarpa and his associates shot and killed Grancio.  (Compl. ¶¶ 8, 10-11, 13-15, 18-20.)  With respect to Favo's alleged participation in these critical events, the Complaint alleges

---

[2] Separately, as to the Assistant United States Attorney, the Second Circuit held that he was entitled to qualified immunity from suit. *See Barbera v. Smith*, 836 F.2d 96, 102 (2d Cir. 1987).

that at DeVecchio's direction and knowing of the "need to protect Grancio from the imminent and credible threat to kill him, and aware of the 'war' and Grancio's alleged position", Favo called the NYPD detectives "and directed [them] to end the surveillance" on Grancio and to return to 26 Federal Plaza for a meeting. (Compl. ¶¶ 20-24.)

Tellingly, the Complaint nowhere alleges that DeVecchio ever told Favo that Scarpa had called DeVecchio and requested that any surveillance on Grancio be terminated. Accordingly, the Complaint fails to assert facts that would show that Favo acted to remove the surveillance on Grancio to enable Scarpa to murder Grancio. Furthermore, as discussed below at pages 12-20, the allegation that Favo directed the NYPD detectives to end their surveillance knowing of the need to protect Grancio does not state a constitutional violation. Thus, because the Complaint fails to plead that Favo called the detectives in for a meeting knowing of facts that would render his conduct illegal, the *Bivens* claims should be dismissed.

III.    The Doctrine Of Qualified Immunity.

As the Supreme Court long ago articulated, officials who perform discretionary functions are "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The qualified immunity defense is intended to mitigate the cost of claims against public officials, "not only to the defendant officials, but to society as a whole." *Id.* at 814. Qualified immunity accommodates the need to permit damages suits, while acknowledging that such "suits against government officials can entail substantial social costs, including the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987).

9

A.   Qualified Immunity Should Be Resolved As Early As Possible.

Because qualified immunity is an entitlement to immunity from suit, the Supreme Court "repeatedly ha[s] stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991); *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001).  To minimize the "distraction of officials from their governmental duties, inhibition of discretionary action, and deterrence of able people from public service", qualified immunity permits the quick termination of insubstantial lawsuits. *Harlow*, 457 U.S. at 814.

As the Second Circuit recently noted, in appropriate cases, the qualified immunity defense may properly be asserted in a 12(b)(6) motion. *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004); *see also Allah v. Juchenwioz*, 176 Fed. Appx. 187, 188-89 (2d Cir. 2006); *Nassau County Employee "L"*, 345 F. Supp. 2d at 303.  The qualified immunity defense is also properly raised in a motion for summary judgment. *E.g.*, *Saucier*, 533 U.S. at 202; *McCullough v. Wyandanch Union Free Sch. Dist.*, 187 F.3d 272, 281 (2d Cir. 1999).

B.   The Standards For Assessing Qualified Immunity Claims.

The Supreme Court has directed that courts confronted with qualified immunity defenses address two issues in sequence.  The threshold inquiry is whether "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right." *Saucier*, 533 U.S. at 200-01.  "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Id. at 201.*

However, if a constitutional violation could be made out, the second inquiry is "whether the right was clearly established" in the "specific context" of the case at issue. *Saucier*, 533 U.S. at 201. The answer "turns on the 'objective legal reasonableness' of the action . . . assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Anderson*, 483

U.S. at 639 (quoting *Harlow*, 457 U.S. at 819).  The relevant question is "whether a reasonable officer *could have believed [his conduct] to be lawful*, in light of clearly established law and the information [he] possessed." *Anderson*, 483 U.S. at 641 (emphasis added).

As the Second Circuit has explained, an agent will enjoy qualified immunity when "(1) the conduct did not violate clearly established rights of which a reasonable person would have known, or (2) it was objectively reasonable to believe that the conduct did not violate clearly established rights." *McCullough*, 187 F.3d at 278; *accord Young v. County of Fulton*, 160 F.3d 899, 903 (2d Cir. 1998).  In defining whether a right was clearly established, the Circuit asks: "(1) Was the law defined with reasonable clarity? (2) Had the Supreme Court or the Second Circuit affirmed the rule? and (3) Would a reasonable defendant have understood from the existing law that the conduct was unlawful?" *Young*, 160 F.3d at 903.  Unsurprisingly, the Circuit typically "puts significant weight on whether or not the law was governed by controlling precedent of this Circuit." *Id.* at 903 (citing *Richardson v. Selsky*, 5 F.3d 616, 623 (2d Cir. 1993)).  If the law in existence at the time of the alleged conduct "did not clearly establish that the officer's conduct would violate the Constitution," the officer is entitled to qualified immunity. *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004).

We apply these standards below and demonstrate, in sequence, that the facts alleged in the Complaint fail to state a claim for the violation of any constitutional rights against Favo and that, in any event, no such rights were even established in January 1992.

IV.   **The Complaint Should Be Dismissed Because It Fails to Assert Any Constitutional Claim Against Favo And Favo Is Entitled To Qualified Immunity.**

Plaintiff's *Bivens* claims against Favo should be dismissed for failure to state a claim because:  (i) the Complaint fails to allege a constitutional deprivation against Favo under the

11

Fifth, Fourth, or Eighth Amendments and, in any event, Favo is entitled to qualified immunity on

each claim; and (ii) the *Bivens* conspiracy claim asserted in Count Two is also improperly pled.

A.    The Fifth Amendment Claim Should Be Dismissed.

The Due Process Clause of the Fifth Amendment provides that no person shall "be

deprived of life, liberty, or property, without due process of law." *U.S. Const. amend. V*.  The

Due Process Clause has been held to encompass a substantive element, which generally "forbids

the government to infringe certain 'fundamental' liberty interests" absent a compelling state

interest. *E.g.*, *Reno v. Flores*, 507 U.S. 292, 302 (1993).  To establish a substantive due process

violation, the government action must also be "so egregious, so outrageous, that it may fairly be

said to shock the contemporary conscience." *Pena v. Deprisco*, 432 F.3d 98, 112 (2d Cir. 2005)

(quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998)).

1.    The Complaint Does Not Allege A Substantive Due Process Violation.

The Complaint asserts that Favo violated Grancio's substantive due process rights (and

derivatively the Plaintiff's) because Favo had a "duty to protect" Grancio from Scarpa, which

Favo allegedly breached by calling in the task force surveillance on the day Grancio was killed.

(Compl. ¶¶ 20, 22.)  Because the Due Process Clause "does not require the State to provide its

citizens with particular protective services", that theory is flawed as a matter of law. *DeShaney*

*v. Winnebago County Dep't of Social Servs.*, 489 U.S. 189, 195-97 (1989).  In *DeShaney,* the

Supreme Court explained that nothing in the Due Process Clause "requires the State to protect

the life, liberty, and property of its citizens *against invasion by private actors*.  The Clause is

phrased as *a limitation on the State's power to act*, not as a guarantee of certain minimal levels of

safety and security." *Id.* at 195 (emphasis added).  The Court held starkly "that a State's failure

to protect an individual against private violence simply does not constitute a violation of the Due

Process Clause." *Id.* at 197.  Here, the Complaint alleges that Scarpa and his organized crime

associates shot and killed Grancio, and as such, their "private violence simply does not constitute a violation of the Due Process Clause." *Id*. Further, as shown below, neither of the two limited exceptions to *DeShaney's* holding apply.

        a.      Grancio Did Not Have A "Special Relationship"
                With The United States.

     In *DeShaney*, the Supreme Court recognized that when the State "takes a person into its custody and holds him there against his will", the State assumes some responsibility for his safety. 489 U.S. at 199-200. This is often called the "special relationship doctrine". Here, the Complaint alleges that because Favo knew Grancio was "a primary target for murder" by Scarpa's faction and "was in immediate danger", a special relationship arose between Favo and Grancio, which carried with it a duty to protect and warn Grancio. (Compl. ¶ 20.) Under *DeShaney*, however, Favo's alleged knowledge of Grancio's predicament does not trigger any duty to protect. Indeed, *DeShaney* squarely held to the contrary:

> The affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which it has imposed on his freedom to act on his own behalf .... through incarceration, institutionalization, or other similar restraint of personal liberty.

489 U.S. at 200. In other words, it is the "State's affirmative act of restraining the individual's freedom to act" which is the "'deprivation of liberty'" that triggers the Due Process Clause, not the "failure to act to protect his liberty interests against harms inflicted by other means." *Id*.

     In this case, the Complaint does not plead that Grancio was incarcerated or that Favo otherwise restrained Grancio's freedom to act for himself, and, thus, fails to allege a due process violation against Favo under the special relationship theory. *See DeShaney*, 489 U.S. at 198-99. As this Court and other courts in this Circuit have repeatedly recognized, "there can be no special relationship when such involuntary restraints are not present." *Matican v. City of N.Y.*,

13

424 F. Supp. 2d 497, 504 (E.D.N.Y. 2006) (Block, *J.*) (collecting cases); *see also Ying Jing Gan v. City of N.Y.*, 996 F.2d 522, 533 (2d Cir. 1993) (recognized special relationships include custodial relationships and children in foster care).

> b.   No "State Created Danger" Was Created By Favo.

The second exception to *DeShaney* is the so-called "state created danger" theory of liability, first recognized by the Second Circuit in 1993 in *Dwares v. City of New York*, 985 F.2d 94 (2d Cir. 1993). In *Dwares*, police officers had affirmatively guaranteed a group of "skinheads" impunity in attacking certain demonstrators, thereby "increas[ing] the likelihood that the 'skinheads' would assault demonstrators." *Id.* at 99. In *Dwares*, the Second Circuit ruled that such "a prearranged official sanction of privately inflicted injury would surely have violated the victim's rights under the Due Process Clause." *Id.*

Here, the Complaint is bereft of any factual allegations to suggest that Favo provided a "prearranged sanction" of the private violence inflicted by Scarpa. As alleged in the Complaint, Scarpa called DeVecchio, not Favo, to remove the alleged surveillance on Grancio. There is no allegation that DeVecchio told Favo that Scarpa had requested that the surveillance be removed. Similarly, there is no allegation that DeVecchio told Favo that with such surveillance removed, Scarpa could murder Grancio that day. Nor is there any allegation that Favo had any communications with Scarpa regarding Grancio, let alone that Favo guaranteed him impunity if he attacked Grancio. At most, Plaintiff's allegations suggest that Favo was aware that Grancio, a suspected member of the Colombo family, was at risk in the Colombo family war and did not provide him protection. (*See* Compl. ¶ 21 (alleging Scarpa's faction was "at war" with Grancio's reputed faction)). If such allegations were sufficient to state a claim under a state created danger theory, that would eviscerate *DeShaney's* central holding that the due process clause does not

14

require the state to provide protective services to persons at risk of private violence.  *See Rivera v. Rhode Island*, 402 F.3d 27, 38 (1st Cir. 2005).

Indeed, in cases with far more compelling allegations, courts have not extended liability under a state created danger theory to persons at risk of private violence.  For example, in *Rivera*, 402 F.3d at 30-32, a witness was murdered to prevent her from testifying.  Her mother claimed that the state's false assurances of protection had increased the danger to her daughter and rendered it liable under a state created danger theory.  *Id.* at 36-37.  In affirming dismissal of the complaint, the court ruled that "[w]hile the unkept promises may have rendered [Rivera] more vulnerable to the danger posed by [the defendant], merely rendering a person more vulnerable to risk does not create a constitutional duty to protect," and alleging such actions, under "a theory of state-created danger, cannot be used as an end run around *DeShaney's* core holding."  *Id.* at 37-38.  Similarly, in *Clarke v. Sweeney*, police had assigned marked cars to protect mother and son witnesses, who had received repeated threats from defendants, but had withdrawn the protection before their murders.  312 F. Supp. 2d 277 (D. Conn. 2004).  After acknowledging that the police could have provided better protection, the court nonetheless ruled that "the danger posed by the [defendants] was not the creation of the state" and found no due process violation.  *Id.* at 294.  *See also Piotrowski v. City of Houston*, 237 F. 3d 567, 584-85 (5th Cir. 2001).

The reasoning of those cases applies with greater force here.  Grancio was not a testifying witness; nor is there any allegation that he had requested or received assurances of protection from Favo.  The danger here was not created by Favo, but by Scarpa and by Grancio's own involvement with the Colombo organized crime family, which was "at war".  (*See* Compl. ¶¶ 11, 15, 21.)  The possibility that Grancio might be attacked in that war existed independently of whether any surveillance was allegedly placed or maintained on Grancio; that risk was not

created by Favo. *See DeShaney*, 489 U.S. at 262-63. Indeed, to find that Favo had a constitutional duty to protect Grancio would mean that the government had a duty to provide round-the-clock protection to the more than 100 members of the Colombo family who participated in and were at risk of attack in the "fratricidal blood-letting" and "deadly struggle for power" between the Orena and Persico factions that began in late 1991 and lasted through spring 1992. *See Orena v. United* States, 956 F. Supp. 1071, 1077 (E.D.N.Y. 1997) (describing Colombo war). That is simply not the law.

c.   <u>Alleged Failures To Act Do Not Violate Due Process.</u>

The Complaint's allegations that Favo failed to warn Grancio or report his suspicions about and end the DeVecchio-Scarpa relationship sooner (Compl. ¶¶ 20, 28, 45, 55) also fail to implicate the Due Process Clause. Alleged failures to act and acts of negligence do not rise to the level of a constitutional violation. It is well-established that the Due Process Clause "does not transform every tort committed by a state actor into a constitutional violation." *DeShaney,* 489 U.S. at 202-03 (no due process violation even though officials "stood by and did nothing when suspicious circumstances dictated a more active role"); *Pena,* 432 F.3d at 109 ("a failure to interfere when misconduct takes place, and no more, is not sufficient to amount to a state created danger"). In addition, the Complaint alleges no facts to indicate that Favo had any knowledge of the allegedly corrupt relationship between DeVecchio and Scarpa before Grancio's murder. For at least these reasons, those conclusory allegations fail as a matter of law.

2.   <u>Favo Is Entitled To Qualified Immunity.</u>

Even assuming the Complaint alleged a substantive due process claim against Favo -- which it does not -- Favo nonetheless would be entitled to qualified immunity because his alleged conduct did not violate any rights clearly established in January 1992 and it was

objectively reasonable to believe that such conduct did not violate clearly established rights. *See McCullough*, 187 F.3d at 278. In fact, in 1992, it was clearly established by *DeShaney* that the state's failure to protect an individual from acts of private violence did not violate due process. As discussed above, *DeShaney* set forth a narrow and unequivocal definition of the custodial exception to its holding. No other Supreme Court or Second Circuit case of which we are aware suggested in January 1992 that such an exception applied to individuals, such as Grancio, who were not in custody, but were alleged to be the subject of governmental surveillance. To the contrary, even in the case of a cooperating witness who was killed after her identity was revealed, the Second Circuit held that in light of "the absence of any significant caselaw on governmental duties arising from non-custodial relationships, we cannot say that it was clearly established that the government had created or assumed a special relationship" with the witness, and found that the prosecutor in that case was entitled to qualified immunity. *Barbera*, 836 F.2d at 102; *see also Piechowicz v. United States*, 885 F.2d 1207, 1214-15 (4th Cir. 1989) (no "special relationship" between federal government and non-custodial witnesses). As a result, no reasonable officer in Favo's position could have believed that his conduct was unlawful under the special relationship theory of the Due Process Clause.

Moreover, because the state created danger theory was first enunciated by the Second Circuit in *Dwares* in 1993, it did not represent a clearly established constitutional right in January 1992. *See Cook v. City of Groton,* 952 F. Supp. 101 (D. Conn.), *aff'd mem.,* 129 F.3d 113 (2d Cir. 1997). Indeed, in granting qualified immunity to the individual defendants in *Estate of Rosenbaum v. City of New York*, 975 F. Supp. 206, 221 (E.D.N.Y. 1997) (Block, *J.*), this Court recognized that the state created danger theory was not clearly established in the Second Circuit as of the summer of 1991. For these reasons, in January 1992, there was no Second

17

Circuit decision even recognizing the state created danger theory, much less any binding precedent applying it to the circumstances alleged in this case: the failure to maintain governmental surveillance of a suspected organized crime member engaged in an internecine organized crime family war.

Significantly, the Second Circuit recently emphasized that the contours of that right had not even been clearly established by 2001, some ten years after Grancio's murder. *Pena*, 432 F.3d at 115. In *Pena*, an intoxicated, off duty police officer struck and killed three family members. The Circuit held that plaintiffs properly pleaded a substantive due process claim against other officers who "implicitly but affirmatively condoned" the first officer's excessive drinking. *Id.* at 111. Nonetheless, the Circuit held that because the right was not clearly established in 2001, a decade after Grancio's murder, the defendants were entitled to qualified immunity. *See id.* at 115. In sum, no such right was clearly established in January 1992 and a reasonable agent in Favo's position "could not have reasonably understood that [his] alleged conduct could have implicated [Grancio's] due process rights". *Estate of Rosenbaum*, 975 F. Supp. at 221. Accordingly, Favo is entitled to qualified immunity.

     B.     The Fourth Amendment Claim Should Be Dismissed And Favo Is Entitled To <u>Qualified Immunity.</u>

The Fourth Amendment applies only to "searches and seizures". *U.S. Const. amend. IV.* Because there is no allegation in the Complaint that Favo either searched or seized Grancio, Plaintiff's claim under the Fourth Amendment fails as a matter of law. As the Supreme Court has explained: "[A] Fourth Amendment seizure [only occurs] . . . when there is a *governmental termination of freedom of movement through means intentionally applied*." *County of Sacramento v. Lewis*, 523 U.S. 833, 843-44 (1998) (partial emphasis added) (citation omitted). This principle has been applied, under defined circumstances, to the use of deadly force by the

18

government to effect a seizure. *See, e.g., Tennessee v. Garner*, 471 U.S. 1, 7, 11 (1985) ("A police officer may not seize an unarmed, nondangerous suspect by shooting him dead."); *Davis v. Little*, 851 F.2d 605, 608 (2d Cir. 1988) (police officer's use of deadly force to prevent the flight of a felon who posed no safety threat violated the Fourth Amendment).

Here, there are no allegations that Favo "terminat[ed] [Grancio's] freedom of movement through means intentionally applied." *Brower v. County of Inyo*, 489 U.S. 593, 596-97 (1989). Nowhere does the Complaint assert either that Favo applied deadly force to Grancio or that Grancio was apprehended by Favo. Rather, the Complaint asserts that *Scarpa* and his organized crime associates shot and killed Grancio after allegedly speaking with DeVecchio regarding the removal of surveillance. (Compl. ¶¶ 13-14, 17-19, 25.) The Complaint's allegations cannot demonstrate that Favo violated Grancio's Fourth Amendment rights.

Even assuming that the Complaint alleged a Fourth Amendment violation against him, Favo would still be entitled to qualified immunity because, as set forth above, his alleged conduct in calling in the NYPD detectives for a meeting did not violate clearly established rights under the Fourth Amendment and it was objectively reasonable for him to believe that such conduct did not violate any clearly established rights under the Fourth Amendment. *McCullough*, 187 F.3d at 278.

C.   The Eighth Amendment Claim Should Be Dismissed And Favo Is Entitled To Qualified Immunity.

Plaintiff also alleges that Defendants violated Grancio's right under the Eighth Amendment to be free from "cruel and unusual punishment." (Compl. ¶¶ 83-84.) The Cruel and Unusual Punishments Clause of the Eighth Amendment applies "'only *after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions.*'" *Whitley v. Albers*, 475 U.S. 312, 318 (1986) (citations omitted) (emphasis

19

added).  It does not apply to claims, like those made here, because "impositions outside the criminal process [do not constitute] cruel and unusual punishment." *Ingraham v. Wright*, 430 U.S. 651, 667-68 (1977).  Thus, Plaintiff's claims under the Eighth Amendment must be dismissed.  *See Saunders v. Crotty*, No. 00-0082, 2000 U.S. App. LEXIS 29568, at *2 (2d Cir. Nov. 16, 2000) (claims of cruel and unusual punishment "properly dismissed because the alleged wrongful conduct did not occur as a result of a criminal prosecution and conviction").

Similarly, there is no argument that any right under the Cruel and Unusual Punishments Clause applicable to Grancio was ever clearly established, let alone in January 1992.  As a result, Favo is also entitled to qualified immunity on the Eighth Amendment claim.

D.    The Complaint Fails To State A *Bivens* Conspiracy Claim For Additional Reasons.

To assert a cognizable *Bivens* conspiracy claim, a plaintiff must allege: "(1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Ciambriello v. County of Nassau*, 292 F.3d 307, 324-25 (2d Cir. 2002).  Complaints "containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct". *Ciambriello*, 292 F.3d at 325 (citation omitted); *Walker v. Jastremski*, 430 F.3d 560, 564 n.5 (2d Cir. 2005).

As an initial matter, the Complaint fails to allege any agreement to inflict "an unconstitutional injury".  Instead, the Complaint conclusorily alleges a conspiracy to "cause and allow to be caused" the wrongful death of Grancio.  (Compl. ¶ 86.)  That claim sounds in tort and does not raise a constitutional violation.  In addition, even if it were so read, the allegations of the Complaint fail to state a claim for any constitutional violations for the reasons stated above.

20

Further, the Complaint also fails to allege any details of the alleged conspiracy, including any facts demonstrating the existence of any agreement or concerted action. For all of these reasons, Count Two should be dismissed. *See, e.g., Ciambrillo*, 292 F.3d at 325 (affirming dismissal of conspiracy claim for lack of specificity); *Middleton v. City of N.Y.*, No. 04-CV-1304, 2006 U.S. Dist. LEXIS 44320, at *24-25 (E.D.N.Y. June 19, 2006) (conspiracy pleading must present facts tending to show agreement and concerted action).

Because Favo is entitled to dismissal of the constitutional claims for failure to state a claim and on the grounds of qualified immunity, we respectfully submit that the Court need go no further in addressing them. In the event that this Court concludes otherwise, we demonstrate below that Favo is also entitled to summary judgment on those claims.

V.    Favo Is Entitled To Summary Judgment On The Constitutional Claims.

In the alternative, Favo should be granted summary judgment dismissing the *Bivens* claims because Plaintiff will be unable to establish essential elements of her claims and because Favo is, in any event, entitled to qualified immunity.

A.    Statement Of Facts Relevant To Motion For Summary Judgment.

For a complete statement of the facts relevant to Defendants' Motion for Summary Judgment, the Court is respectfully referred to Defendants' Rule 56.1 Statement and to the accompanying Affidavit of Christopher Favo, sworn to January 17, 2007 ("Favo Aff."). An overview of those facts are set forth below.

Favo has been a Special Agent for twenty-three years and continues to serve the FBI today. (Favo Aff. ¶ 1.) DeVecchio was Favo's supervisor at the time of Grancio's murder. (*Id.* ¶ 5.) DeVecchio handled and managed Scarpa's role as an FBI confidential informant. (*Id.* ¶ 7.) Favo had no responsibility for, and never supervised, Scarpa as an informant. (*Id.* ¶ 8.)

21

By the end of 1991, the FBI's C-10 squad (of which Favo was a member) had begun working with the NYPD to better coordinate their Colombo family investigations in what was informally called the Colombo War Task Force (the "task force").  (Favo Aff. ¶¶ 10-11.)  By the morning of January 6 or 7, 1992, Favo had contacted the NYPD officers who supervised the NYPD detectives on the task force to request a meeting of the task force.  (*Id.* ¶ 16.)  As a result, a meeting was scheduled for the afternoon of January 7 at 26 Federal Plaza.  (*Id.*)  The task force included NYPD detectives Joseph Simone ("Simone") and Patrick Maggiore ("Maggiore").  (*Id.*)  The topic of the meeting was the proposed focusing of surveillance on Grancio and reputed members of his crew in connection with the detection and prevention of possible criminal activity by that crew.  (*Id.* ¶¶ 14-16.)

By early afternoon on January 7, most of the task force had assembled, but Simone and Maggiore had not yet arrived.  (Favo Aff. ¶ 18.)  As a result, Favo called Simone and Maggiore to request their attendance.  (*Id.*)  At the time he made that call, Favo did not know whether Simone and Maggiore were watching Grancio.  (*Id.*)  Simone and Maggiore joined the meeting.  (*Id.* ¶ 19.)  Near the end of the meeting, the task force learned Grancio had been shot.  (*Id.* ¶ 20.)

Favo was not directed by DeVecchio to call the task force members, including Simone and Maggiore, in for the meeting on January 7, 1992. (Favo Aff. ¶ 17.)  Nor was Favo ever told by DeVecchio that Scarpa had requested that any surveillance on Grancio be removed.  (*Id.*)  DeVecchio did not ask Favo at any time to undertake any effort to terminate any surveillance on January 7, 1992.  (*Id.*)

Throughout the call with Simone and Maggiore on January 7, 1992, Favo had no knowledge of Scarpa having formulated a plan to murder Grancio, that Grancio was under surveillance to protect him or to prevent his murder, or that Scarpa had requested that any

surveillance on Grancio be removed.  (Favo Aff. ¶¶ 22-25.)  During the call with Simone and

Maggiore on January 7, neither told Favo that it was important to maintain surveillance on

Grancio that afternoon or that they had Grancio under surveillance to protect him or to prevent

his murder.  (*Id.* ¶ 26.)  Favo never had any agreement with DeVecchio or any other person to

enable Scarpa or Scarpa's associates to commit a crime of violence against Grancio.  (*Id.* ¶ 27.)

As a result, Favo believed that his conduct was entirely lawful.  (*Id.* ¶¶ 29-30.)

     B.     <u>Standard For Granting Summary Judgment.</u>

     Summary judgment should be granted where there is "no genuine issue as to any material

fact" and the moving party is "entitled to judgment as a matter of law".  Fed. R. Civ. P. 56(c).

*Nance v. Hazell*, No. 02-CV-3525, 2005 U.S. Dist. LEXIS 6421, at *2 (E.D.N.Y. Apr. 15, 2005).

A "moving party is entitled to judgment as a matter of law [if] the nonmoving party has failed to

make a sufficient showing on an essential element of [her] case."  *Celotex Corp. v. Catrett*, 477

U.S. 317, 317 (1985) (internal quotation marks and citations omitted).  In ruling on a motion for

summary judgment, "a court must view the facts in the light most favorable to the non-moving

party and must resolve all ambiguities and draw all reasonable inferences against the movant."

*Nance*, 2005 U.S. Dist. LEXIS 6421, at *2 (citation omitted).

     To defeat a motion for summary judgment, the nonmoving party may not rest on the mere

allegations of the pleadings, but "must come forward with 'specific facts showing that there is *a*

*genuine issue for trial.*'"  *Niagara Mohawk Power Corp. v. Jones Chem., Inc.*, 315 F.3d 171, 175

(2d Cir. 2003) (citation omitted) (emphasis in original).  "'Conclusory allegations, conjecture,

and speculation . . . are insufficient to create a genuine issue of fact.'"  *Id.* at 175 (citation

omitted).  Nor is "[t]he mere existence of a scintilla of evidence in support of the plaintiff's

position" sufficient to create a genuine issue.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252

(1986).  The non-moving party must offer "concrete evidence from which a reasonable juror could return a verdict in his favor." *Id.* at 256.

> C.  Plaintiff Cannot Show Favo's Personal Involvement In A Constitutional Violation.

Favo has stated that when he called, and throughout his call with, Simone and Maggiore on January 7, 1992, he had no knowledge of Scarpa having formulated a plan to murder Grancio, of Grancio being under surveillance to protect him, or of Scarpa requesting that any surveillance be removed.  (Favo Aff. ¶¶ 22-26.)  Thus, even assuming that Grancio was under surveillance and that Scarpa had sought its removal, Plaintiff will be unable to create any triable issue of fact regarding whether Favo knowingly acted to remove any surveillance to enable Scarpa to murder Grancio.  She will therefore be unable to sustain her burden of proving that Favo intentionally participated in a constitutional violation with knowledge of facts that would render his conduct unlawful as required under *Provost,* 262 F.3d at 155.  (*See* p. 7-8 *supra.*)

Where there is no evidence that a defendant acted with knowledge of facts that would render his conduct unlawful, courts in this Circuit grant summary judgment on the ground that the personal involvement requirement cannot be satisfied.  *See, e.g., Silverman v. City of N.Y.,* 216 F. Supp. 2d 108, 117 (E.D.N.Y. 2002) (no evidence that defendants knowingly participated in employee suspension for discriminatory reason), *aff'd,* 64 F. App'x 799 (2d. Cir 2003); *Kantha v. Blue,* 262 F. Supp. 2d 90, 104-05 (S.D.N.Y. 2003) (where defendant who fired plaintiff did so without knowledge of state officials' improper purpose, no genuine issue existed regarding defendant's personal participation).  The same result is warranted here.

> D.  Plaintiff Cannot Show Any Constitutional Deprivation By Favo.

Based on the evidentiary record, no reasonable juror could conclude that Favo deprived Grancio or Plaintiff of any constitutional rights.  Thus, there is no genuine issue for trial.

1.      <u>There Is No Material Issue Concerning The Fifth Amendment Claim.</u>

The Complaint's allegations that Favo had a duty to protect and warn Grancio under the Fifth Amendment fail to state a claim. (*See* p. 12-16 *supra*.) Even if a claim could somehow be salvaged, there is no admissible evidence to show that Scarpa called DeVecchio to have any surveillance removed on the day of Grancio's murder. Scarpa is dead and DeVecchio denies that any such call was made. (Affidavit of R. Lindley DeVecchio, sworn to January 29, 2007 ("DeVecchio Aff."), ¶ 3.) Given the absence of any evidence to establish that call, no reasonable jury could find in Plaintiff's favor. Further, even if there were evidence of such a call from Scarpa to DeVecchio, there is no allegation and no evidence that Favo knew of such a call or that DeVecchio otherwise told Favo that any surveillance should be terminated.

There is also no evidence to support the allegation that DeVecchio "directed" Favo to call the detectives to end any surveillance. (Compl. ¶ 22.) Instead, the only evidence of record is Favo's and DeVecchio's sworn statements that DeVecchio neither directed Favo to call Simone and Maggiore on January 7, 1992, nor asked Favo to terminate any surveillance on that date. (Favo Aff. ¶ 17; DeVecchio Aff. ¶ 4.) When Favo called, and throughout his call with, Simone and Maggiore on January 7, Favo had no knowledge of Scarpa requesting that any surveillance be removed, of Scarpa having formulated a plan to murder Grancio, or of Grancio being under surveillance to protect him. (Favo Aff. ¶¶ 22-26.) Thus, Plaintiff will be unable to create any triable issue of fact as to whether Favo knowingly acted to place Grancio in danger by requesting the task force meeting. Absent such culpable knowledge, any claim against Favo under a state created danger theory must fail. *See Pena*, 432 F.3d at 111; *see also Citizen's Accord, Inc. v. Town of Rochester*, No. 98-CV-0715, 2000 U.S. Dist. LEXIS 4844, at *21 (N.D.N.Y. Apr. 18, 2000) (requiring that state actor have culpable knowledge of danger).

25

Similarly, given the information possessed by Favo at the time he requested the task force meeting, no reasonable jury could possibly conclude that Favo's conduct here was so egregious as to shock the conscience. *Pena,* 432 F.3d at 112.   Indeed, in *Matican,* this Court granted summary judgment dismissing a state created danger claim against police officers who allegedly exposed an informant to risk of attack by having him participate in a sting operation because there was "no indication that the officers intentionally exposed [the informant] to … assault". *Matican,* 424 F.Supp. 2d at 506.   Thus, the officers' alleged conduct neither shocked the conscience nor violated due process. *Id.*   The same reasoning applies here.

Furthermore, with respect to the legally insufficient claims that Favo had a duty to stop the DeVecchio-Scarpa relationship and avert Grancio's murder, there is no evidence that Favo knew of the allegedly improper nature of that relationship before Grancio's murder on January 7, 1992.   Favo has attested that he did not know at the time of Grancio's murder of the alleged improprieties relating to the DeVecchio-Scarpa relationship asserted in the Amended Complaint. (Favo Aff. ¶ 28.)   As a result, there is no genuine issue as to whether Favo should have acted to stop that relationship before Grancio's murder.

2.   There Is No Material Issue Concerning The Other Constitutional Claims.

As discussed above, Plaintiff's claims under the Fourth and Eighth Amendments are defective as a matter of law.   (*See* p.18-20 *supra*.)   Favo's affidavit further dooms those claims because it establishes that on January 7, 1992, Favo had no knowledge of Scarpa having formulated a plan to murder Grancio, of Grancio being under surveillance to protect him, or of Scarpa requesting that any surveillance be removed.   (Favo Aff. ¶¶ 22-26.)   Thus, Plaintiff will also be unable to create any genuine issue of fact as to whether Favo unlawfully seized Grancio under the Fourth Amendment or violated his rights under the Eighth Amendment.

26

Favo has also stated that he did not agree with DeVecchio (or anyone else) to enable Scarpa to murder Grancio. (Favo Aff. ¶ 27.) As a result, there is no genuine issue as to the existence of any agreement to violate Grancio's rights. Thus, Favo is also entitled to summary judgment on the conspiracy claim. *Kramer v. City of N.Y.,* No. 04 Civ. 106, 2004 U.S. Dist. LEXIS 21914, at *22 (S.D.N.Y. Oct. 29, 2004) (granting summary judgment where there was no evidence of "an impermissible agreement or *quid pro quo* arrangement").

> E.     Favo Is Entitled To Qualified Immunity.

Summary judgment should be granted on qualified immunity grounds when (1) "'the asserted rights were not clearly established'" or (2) when viewing the evidence in the light most favorable to the plaintiff "'no rational jury could fail to conclude that it was objectively reasonable for the defendant [ ] to believe that [he was] acting in a fashion that did not violate a clearly established right'". *Davidson v. Scully,* 114 F.3d 12, 14 (2d Cir. 1997) (citation omitted); *accord McCullough,* 187 F.3d at 278. Based on the evidence, Favo is entitled to qualified immunity under either test.

First, as discussed above, the Fifth, Fourth, and Eighth Amendment rights asserted by Plaintiff were not clearly established in January 1992 or at any time. (*See* p. 11-20 *supra.*) Thus, Favo is entitled to summary judgment on his qualified immunity defense. *See, e.g., Ying Jing Gan,* 996 F. 2d at 532-35; *Matican,* 424 F.Supp. 2d at 506-07; *Estate of Rosenbaum,* 975 F. Supp. at 206 (all upholding qualified immunity defense where rights not clearly established).

Second, when Favo called Simone and Maggiore on January 7, 1992, and throughout that call, Favo had no knowledge of Scarpa having formulated a plan to murder Grancio, of Grancio being under surveillance to protect him, or of Scarpa requesting that any surveillance be removed. (Favo Aff. ¶¶ 22-26.) As a result, Favo believed that his conduct was entirely lawful

in light of the information he possessed at the time regarding DeVecchio, Scarpa and Grancio. (*Id.* ¶¶ 29-30.) Thus, even <u>if</u> the constitutional rights asserted by Grancio were clearly established in 1992 in the specific context of the facts alleged here -- which they clearly were not -- "no rational jury could fail to conclude that it was objectively reasonable for [Favo] to believe that [he was] acting in a fashion that did not violate a clearly established right" of Grancio. *Davidson v. Scully,* 114 F.3d 12, 14 (2d Cir. 1997) (citation omitted). Favo did not know that by requesting that the detectives join other members of the task force for the meeting on January 7, 1992, he was taking any action that would place Grancio in danger of attack by Scarpa. Thus, Favo's belief that his conduct was entirely lawful was objectively reasonable and he is entitled to qualified immunity. *See, e.g., Luna v. Pico,* 356 F.3d 481, 490-91 (2d Cir. 2004); *McCullough,* 187 F.3d at 279, 281 (both granting summary judgment where official's belief was objectively reasonable).

VI.   <u>The State Common Law Claims Against Favo Are Barred By The FTCA.</u>

The Federal Tort Claims Act precludes common law tort claims against federal employees -- such as Favo -- acting within the scope of their employment. *28 U.S.C. § 2679(b)(1)* (2006); *Rivera v. United States,* 928 F.2d 592, 608-09 (2d Cir. 1991). Based on the Certification of Scope of Employment and Notice of Substitution of United States of America as Sole Defendant on all tort claims, filed by the United States (docket entries 45 and 46), the state law claims against Favo in his individual capacity must be dismissed.

VII.   <u>Plaintiff's *Bivens* Claims Are Barred By The Statute Of Limitations.</u>

As discussed below, the stale claims in this action -- which was commenced fourteen years after Grancio's death on January 7, 1992 -- are barred by the statue of limitations and

should be dismissed under Rule 12(b)(6).[3]  In the alternative, Favo seeks summary judgment on the same grounds.

New York State's three-year limitations period applies to *Bivens* actions arising in New York.  *Tapia-Ortiz v. Doe*, 171 F.3d 150, 151 (2d Cir. 1999).  However, "federal law determines when a federal claim accrues."  *Eagleston v. Guido*, 41 F.3d 865, 871 (2d Cir. 1994).  A *Bivens* claim accrues and the statute begins to run "'when the plaintiff knows or has reason to know of the injury which is the basis of his action.'"  *Pinaud v. County of Suffolk*, 52 F.3d 1139, 1156 (2d Cir. 1995) (citation omitted); *Veal v. Geraci*, 23 F.3d 722, 724 (2d Cir. 1994).

To satisfy the knowledge component of that test "requires only knowledge of, or knowledge that could lead to, the basic facts of the injury, i.e., knowledge of the injury's existence and knowledge of its cause or of the person or entity that inflicted it".  *Kronisch v. United States*, 150 F.3d 112, 121 (2d Cir. 1998).  Thus, in determining whether a *Bivens* claim is time-barred, courts look not only to when the injury was discovered, but to when it <u>should</u> have been discovered through the exercise of reasonable diligence.  *Id.* at 127.  Given that the original Complaint was filed on January 6, 2006, Plaintiff's *Bivens* claims can only survive if she was unaware of the basic facts underlying those claims <u>and</u> could not have discovered them through the exercise of reasonable diligence before January 7, 2003.  Based on the pervasive publicity surrounding the events at the center of this case in the 1990's, Plaintiff's claims fail on both scores.

---

[3] Where the allegations of the complaint and matters of which the Court may take judicial notice show that claims are time-barred, a motion to dismiss is appropriate. *See LC Capital Partners LP v. Frontier Ins. Group, Inc.*, 318 F.3d 148,156 (2d Cir. 2003); *In re Merrill Lynch & Co.*, 273 F. Supp. 2d 351, 382-83 n.3 (S.D.N.Y. 2003).

A.    Plaintiff Was Or Should Have Been Aware Of Her Claims By 1998.

Grancio was murdered on January 7, 1992.  By 1993, it was a matter of public record that Scarpa, a member of the Persico faction of the Colombo family, had killed Grancio, a reputed member of the Orena faction.  (United States of America's Statement of Undisputed Facts Pursuant to Local Rule 56.1, dated January 29, 2007 ("USA 56.1 Statement"), ¶¶ 18-24; Exs. D, E, F, G to Declaration of AUSA Gail A. Matthews, dated January 29, 2007 ("Matthews Declaration.").)[4]  By 1994, it was also a matter of public record that Scarpa had been an FBI informant at the time of Grancio's murder.  (USA 56.1 Statement ¶ 30.)

Between 1994 and 1998, there was extensive and striking information in the press that DeVecchio and the FBI allegedly had incited the Colombo family war of which Grancio was a victim and had assisted Scarpa in finding his murder targets, that Favo was DeVecchio's subordinate on the FBI's Colombo investigation, and that Favo publicly and extensively testified concerning his suspicions about and exposure of the DeVecchio-Scarpa relationship. (USA 56.1 Statement ¶¶ 31-120.)  By June 1995, for example, Favo was publicly identified as a member of DeVecchio's Colombo squad who was publicly criticized for allegedly covering up the DeVecchio-Scarpa relationship.[5]  (USA 56.1 Statement ¶¶ 60-77, 83-84, 113.)  Indeed, most of the Complaint's allegations, including the allegation that Favo should have reported the DeVecchio-Scarpa relationship earlier, were widely circulated in media reports, aired at public

---

[4]  The press statements, articles and reports referenced in the USA 56.1 Statement and the exhibits to the Matthews Declaration are incorporated herein only to establish the fact that they were published and publicly available during the 1990's.  They are not submitted for the truth of the matters asserted therein, and Favo does not make any representation as to the accuracy of their contents.  On a motion to dismiss, a court may consider matters in the public record of which judicial notice may be taken, including newspaper articles, judicial decisions, and proceedings in other courts.  *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir. 1998); *Condit v. Dunne*, 317 F. Supp. 2d 344, 356 (S.D.N.Y. 2004); *In re Merrill Lynch & Co.*, 273 F. Supp. 2d at 383; *Cerosini v. Sony Corp.*, 991 F. Supp. 343, 350-51, 353-54 (S.D.N.Y. 1998).

[5]  The New York press further reported that "[i]t was Favo who eventually reported DeVecchio to the Bureau".  (USA 56.1 Statement ¶ 68; *see id.* ¶¶ 60-67, 83-84.)

trials, and addressed in judicial decisions during the 1990's. (USA 56.1 Statement ¶¶ 31-120;
Exs. A–Q to Matthews Declaration.) As a result, there was an abundance of information in the
public record from 1994 to 1998 underlying Plaintiff's claims against Favo.

Under similar circumstances, other courts have found that widespread publicity of facts
relating to a potential claim constitutes constructive knowledge of that information or triggers a
duty to inquire. *See, e.g.*, *LC Capital Partners LP v. Frontier Ins. Group, Inc.*, 318 F.3d 148,
155-56 (2d Cir. 2003) (public disclosures, media reports and litigation brought by other parties
raised "storm warnings"); *Kronisch*, 150 F.3d at 121 (televised hearings on CIA drug testing
experiments); *Hughes v. Vanderbilt Univ.*, 215 F.3d 543, 548 (6th Cir. 2000) (significant media
attention in 1990's to experiments); *United Klans of Am. v. McGovern*, 621 F.2d 152, 154 (5th
Cir. 1980) ("where events receive ... widespread publicity, plaintiffs may be charged with
knowledge of their occurrence"). Moreover, it is especially appropriate to charge Plaintiff with
constructive knowledge or a duty to inquire further because much of that pervasive coverage
occurred in the local New York metropolitan area where Plaintiff resides. (Compl. ¶ 4.) *See,
e.g. Hughes*, 215 F.3d at 548 (attributing knowledge of facts of local notoriety to local resident).

As noted in *Kronisch,* all that is required to trigger accrual of a claim is "knowledge of,
or knowledge that that could lead to, the basic facts of the injury." 52 F.3d. at 121. Here, based
on the undisputed record, Plaintiff should be charged with such knowledge. Even if Plaintiff
only had "suspicions" concerning her claims before January 2003, she "would have still been
under a duty to diligently investigate" them. *Kronisch*, 150 F.3d at 122. Given the widespread
publicity in the 1990's of the events at the center of this case, the Plaintiff had a duty to
investigate her claim against Favo back then. *See, e.g.*, *id.* at 121. Once a plaintiff has a duty to

inquire, he will be charged with all the knowledge that he would have acquired through the exercise of reasonable diligence. *Id.* at 123-24.

Here, the Complaint is devoid of any allegation that the Plaintiff undertook <u>any</u> steps to pursue her claims during the entire period from 1994 until 2006, let alone undertook a diligent investigation. As indicated by the articles and decisions referenced in the United States 56.1 Statement, if she had exercised reasonable diligence, the vast majority of the allegations in the Complaint were already the subject of press reports, judicial decisions and public testimony by 1998 and were easily discoverable. Similarly, the identity of those persons with knowledge of Plaintiff's claims was also a matter of public record by 1998.

Under these circumstances, Plaintiff's claims accrued by 1998 at the latest and the Complaint should be dismissed. *See, e.g., In re Merrill Lynch & Co.*, 273 F. Supp. 2d at 382-83 (citing pervasive publicity surrounding complaint's theory years before its filing in granting motion to dismiss). Alternatively, because no reasonable jury could find that the Plaintiff should not have discovered the basis of her claims here through the exercise of reasonable diligence by 1998 at the latest, summary judgment should be granted dismissing those claims. *See, e.g., Kronisch,* 150 F. 3d at 122, 124.

## B.   Plaintiff's Claims Of Fraudulent Concealment Also Fail.

In an effort to circumvent her failure to timely file her claims, Plaintiff alleges that fraudulent concealment occurred. (Compl. ¶¶ 30-31.) To establish fraudulent concealment to toll the statute of limitations, Plaintiff must plead and prove that: (1) Favo wrongfully concealed material facts relating to his alleged wrongdoing; (2) the concealment prevented Plaintiff from discovering her claims during the limitations period; <u>and</u> (3) Plaintiff exercised reasonable diligence in pursuing discovery of her claims. *Kronisch,* 150 F.3d at 123; *Banushi v. City of N.Y.*, No. CV-05-1805, 2006 U.S. Dist. LEXIS 70414, at *12 n.5 (E.D.N.Y. Sept. 28, 2006).

Plaintiff's attempt to invoke that doctrine fails. First, the bald assertion that Defendants "fraudulently concealed" the true facts of Grancio's murder does not provide the detail required under Federal Rule of Civil Procedure 9(b). *Armstrong v. McAlpin*, 699 F.2d 79, 88 (2d Cir. 1983); *Solow v. Stone*, 994 F. Supp. 173, 182 (S.D.N.Y.), *aff'd*, 163 F.3d 151 (2d Cir. 1998). Second, the concealment must have prevented Plaintiff from discovering her claims during the limitations period. *Kronisch*, 150 F.3d at 123; *Coveal v. Consumer Home Mortgage. Inc.,* No. 04-CV-4755, 2005 U. S. Dist. LEXIS 5003, at *18-20 (E.D.N.Y. Mar. 29, 2005). Because the allegations that form the basis of Plaintiff's claims here were widely disseminated by 1998, Plaintiff will be unable to show that any alleged concealment prevented the discovery of her claims. Significantly, even the allegations in the Complaint relating to Favo's alleged participation in a cover-up were well publicized in the 1990's.[6] (*See* USA 56.1 Statement ¶¶ 60-77, 83-84, 113.) Finally, it is not sufficient for Plaintiff to conclusorily allege that the claims could not have been discovered earlier through the exercise of reasonable diligence. (Compl. ¶ 30.) Rather, the Complaint must allege "'facts showing [Plaintiff's] due diligence in trying to uncover the facts.'" *Kozonasky v. Sears Roebuck & Co.*, No. 81 Civ. 2164-CSH, 1986 U.S. Dist. LEXIS 18671, at *6 (S.D.N.Y Oct. 23, 1986) (citation omitted); *Coveal,* 2005 U.S. Dist. LEXIS 5003, at *18-20. Absent any such allegations, Plaintiff cannot rely upon the doctrine of fraudulent concealment to toll the statute. *See, e.g., Simpson v. Putnam County Nat'l Bank*, 20 F. Supp. 2d 630, 635 (S.D.N.Y. 1998).

Accordingly, because Plaintiff's *Bivens* claims accrued by 1998 at the latest, those claims are time-barred and should be dismissed under Rule 12(b)(6). Alternatively, because no

---

[6] For example, information concerning the allegation that FBI records indicated that another Colombo family member had killed Grancio when in fact Scarpa was the murderer (Compl. ¶ 56) was widely reported in the 1990's. (*See, e.g., N.Y. Times,* Nov. 20, 1994, 81, p. 49 (Ex. I to Matthews Declaration.).)

reasonable jury could find that Plaintiff should not have discovered the basis of her claims by 1998 at the latest, summary judgment should be granted.

## CONCLUSION

As set forth above, the constitutional claims asserted by Plaintiff should be dismissed as to Favo under Rule 12(b)(6) because the Complaint does not adequately allege Favo's personal involvement in any constitutional violation, and fails to state any constitutional claim as a matter of law against Favo. The Complaint should also be dismissed under Rule 12(b)(6) on grounds of qualified immunity because no constitutional rights asserted by Plaintiff were clearly established in 1992 or at any time. Alternatively, Favo is entitled to summary judgment because Plaintiff will be unable to establish essential elements of her constitutional claims. Based on the information Favo had at the time of Grancio's murder, no reasonable jury could find that Favo's conduct "shocked the conscience" or violated any constitutional right of Grancio's or Plaintiff's. To the contrary, Favo had every reason to believe that his conduct was entirely lawful. Because no rational jury could fail to conclude that belief was objectively reasonable, Favo is also entitled to summary judgment on the qualified immunity defense. In addition, Plaintiff's common law state claims against Favo are barred under the FTCA. Finally, Plaintiff's stale constitutional claims are barred by the statute of limitations.

By permitting the early termination of insubstantial damages suits against government officials, qualified immunity minimizes the costly distraction of government officials from their official duties, the undue inhibition of such officials' discretion and the deterrence of able people from entering and remaining in public service. This lawsuit against Favo is a classic example of why the qualified immunity doctrine exists. Plaintiff's claims against Favo, who has served the FBI for twenty-three years and remains a Special Agent today, are unsupported

34

either by the law or by the uncontroverted record.  At bottom, this suit asserts that Favo had a constitutional duty to protect persons at risk of private violence from their own involvement in an organized crime family at war, a theory contrary both to common sense and to governing Supreme Court and Second Circuit precedent in January 1992 and at present.  Dismissing the insufficient and unsupported claims against Favo now will allow him to devote his full attention to meaningful work for the government and will encourage able people to remain in public service.  As a result, dismissal now will vindicate the important policies underlying qualified immunity.

For all the reasons set forth above and in the accompanying Rule 56.1 Statement and Affidavit of Christopher Favo, we respectfully submit that the Court should grant Favo's Motion to Dismiss or, in the alternative, for Summary Judgment in its entirety.

January 29, 2007

Respectfully submitted,

DEFENDANT,
CHRISTOPHER FAVO

By _Michael Considine_
‎   Michael G. Considine (MC-0516)
Rosemary Q. Barry (RB-0733)
Helen Harris (HH-4045)
Day Pitney LLP
One Canterbury Green
Stamford, CT  06901
203-977-7300 – Telephone
203-977-7301 – Facsimile
Email:  mgconsidine@daypitney.com

35