UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
MARIA GRANCIO, individually and in her capacity
as Executrix and Personal Representative of the Estate
of Nicholas P. Grancio,

                       Plaintiff,

      - against -

R. LINDLEY DEVECCHIO,
CHRISTOPHER FAVO,
UNITED STATES OF AMERICA,

                  Defendants.
-------------------------------------------------------------------X

Case No. 06 CV 0069 (FB)(CLP)


## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT R. LINDLEY DEVECCHIO'S MOTION TO DISMISS AND FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, TO STAY THE ACTION


THOMPSON HINE LLP
*Attorneys for Defendant R. Lindley DeVecchio*
335 Madison Avenue, Floor 12
New York, New York 10017
(212) 344-5680


Douglas E. Grover (DG 6037)
Joseph B. Koczko (JK 7259)

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ................................................................ 1

STATEMENT OF FACTS ...................................................................... 3

    The Complaint ............................................................................. 3

    *The People of the State of New York v. R. Lindley DeVecchio* .......................... 5

    Undisputed facts supporting summary judgment ........................................ 6

ARGUMENT ..................................................................................... 7

I.    THE COMPLAINT SHOULD BE DISMISSED BECAUSE IT FAILS TO STATE A
    CLAIM ON WHICH RELIEF MAY BE GRANTED AS AGAINST DEVECCHIO ...... 7

    A.    Plaintiff fails to plead facts that establish a claim for
        relief against DeVecchio ........................................................... 7

    B.    DeVecchio is entitled to dismissal of count 1 because
        plaintiff fails to adequately plead a constitutional
        violation ............................................................................... 8

        1.    The complaint fails to assert a cognizable claim
            under the Fourth Amendment ................................................ 10

        2.    The complaint fails to assert a cognizable claim
            under the Eighth Amendment ................................................ 12

        3.    The complaint fails to assert a cognizable claim
            under Fifth Amendment ....................................................... 13

            a.    DeVecchio is entitled to qualified immunity because there
                is no constitutional right to be free from third-party
                violence .................................................................. 14

            b.    The "state-created danger" exception was not clearly
                established at the time of Grancio's murder ................... 14

            c.    Grancio did not have a "special relationship" with the
                government that would give rise to a duty to protect him
                from private violence .................................................. 16

            d.    Failure to follow proper procedures is not a constitutional
                violation and, even if it occurred, would not deprive an
                official of qualified immunity ....................................... 17

i

**TABLE OF CONTENTS**
**(cont.)**

Page

    e.    There is no constitutional violation where a government agent fails to supervise a private party who is likely to cause harm to another ................................................................. 18

II.    DEFENDANT DEVECCHIO MUST BE GRANTED SUMMARY JUDGMENT ON PLAINTIFF'S *BIVENS* CLAIM ........................................................ 19

    A.    Summary judgment should be granted because no genuine issue of material fact exists ................................ 19

    B.    The allegations in the complaint are pure fantasy, and they are contradicted by undisputed admissible evidence ...................................................................... 21

        1.    Scarpa was not aware of any police surveillance ..................................... 22

        2.    No telephone call was ever made by Scarpa to call off the surveillance .................................................... 22

        3.    Favo received no order, communication or request from DeVecchio to call off the police surveillance ................ 23

        4.    Grancio was murdered hours after the surveillance was terminated .................................................... 24

    C.    Plaintiff's *Bivens* claim is also barred by the three-year statute of limitations .................................................... 25

III.    A STAY OF ALL CLAIMS THAT SURVIVE THIS MOTION IS WARRANTED IN LIGHT OF THE CRIMINAL CASE .......................................................... 29

    A.    The issues in the criminal case and this one substantially overlap, thus warranting a stay ...................... 30

    B.    The status of the criminal case supports the grant of a stay ...................................................................... 32

    C.    The private and public interests weigh in favor of the issuance of a stay ................................................ 33

CONCLUSION .............................................................. 34

## PRELIMINARY STATEMENT

Plaintiff Maria Grancio ("plaintiff") has brought this action to recover money damages against two former special agents of the Federal Bureau of Investigation ("FBI") -- defendant R. Lindley DeVecchio ("DeVecchio") and defendant Christopher Favo ("Favo") -- as well as against the United States arising from DeVecchio and Favo's alleged participation in the 1992 gangland murder of her husband, Nicholas "Nicky Black" Grancio ("Grancio"), a one-time member of the Colombo organized crime family. The sole basis for plaintiff's claims is the allegation that there was a "corrupt and unlawful relationship between law enforcement and a ruthless killer," Gregory Scarpa, Sr., ("Scarpa"), and that the two agents specifically assisted Scarpa in the 1992 killing of Grancio by withdrawing a government surveillance team moments before the shooting took place.

The complaint[1] sets forth eleven causes of action: (1) a claim under *Bivens v. Six Unknown Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) (the "*Bivens* claim"), asserting that defendants violated Grancio's Fourth, Fifth and Eight Amendment rights (count 1); (2) a purported *Bivens* conspiracy claim (count 2); (3) a Federal Tort Claims Act claim against the United States (count 3); (4) a common law conspiracy claim (count 4); (5) a negligence, negligence per se, and/or gross negligence claim (count 5); (6) a claim for intentional infliction of emotional distress (count 6); (7) a wrongful death claim (count 7); (8) a claim of negligent hiring, supervision, and retention (count 8); (9) a claim for conscious pain and suffering (count 9); (10) a claim for negligent infliction of emotional distress (count 10); and (11) a claim for loss of consortium (count 11).

---

[1] The "complaint" refers to the amended complaint filed in this action on October 4, 2006.

On January 10, 2007, the government filed a Certification of Scope of Employment (the "Certification"),[2] which certified that DeVecchio and Favo were acting within the scope of their employment as federal employees at the time the events alleged in the complaint occurred. On January 10, 2007, the government also filed a Notice of Substitution of United States of America as Sole Defendant With Respect to All Tort Claims (the "Notice of Substitution"), by which it interceded on counts 2 through 11. As a result, none of those counts are addressed in this motion, and DeVecchio relies upon the government's response to them, reserving the right to contest these claims in the event it later becomes necessary. In addition, DeVecchio hereby incorporates and adopts any and all arguments relating to the complaint as set forth in the motions contemporaneously filed by counsel for defendant Favo and the government.

As for the sole remaining count in the complaint, count 1, DeVecchio moves, pursuant to Fed.R.Civ.P. 12(b)(6), to dismiss on the grounds that plaintiff has failed to state a cognizable claim and that, in any event, because he is a retired Supervisory Special Agent of the FBI, he is shielded from these claims by qualified immunity under the federal Supremacy Clause (Point I, *infra*). DeVecchio also moves for summary judgment, pursuant to Fed.R.Civ.P. 56(b), on two grounds: (1) that the only admissible evidence relevant to plaintiff's claim, *i.e.*, that DeVecchio personally took official action by removing a surveillance squad as a part of an effort to assist Scarpa's plan to kill Grancio, clearly demonstrates that no such events ever took place, and that there is no admissible evidence to support the fictional allegations set forth in the complaint (Point IIA-B, *infra*),[3] and (2) that in any event, the complaint is time-barred by the applicable

---

[2]  Copies of the Certification and the Notice of Substitution are annexed to the Declaration of Douglas E. Grover, dated January 29, 2007, in support of this motion ("Grover Dec."), as Exhibits D and E, respectively.

[3]  Moreover, because the facts underlying this motion for summary judgment were previously raised in a post-trial motion in the criminal matter of *Orena et. al. v. United States of America*, United States District Court, Eastern District of New York, Case No. CV-96-1474, before Senior District Judge Jack B. Weinstein (a copy of the January 15, 2004, Memorandum and Decision issued by Judge Weinstein on that motion is annexed to the Grover

statute of limitations (Point IIC, *infra*). And, finally, should the Court decline to grant any of these motions, DeVecchio seeks a stay of the proceedings pending the resolution of a related criminal case (*People of New York v. R. Lindley DeVecchio*; Indictment No. 6825/2005, Kings County), in which DeVecchio has been charged with four counts of common law murder by the Kings County District Attorney (the "D.A.") (Point III, *infra*). Trial in that matter is expected to begin on May 15, 2007. Grover Dec., ¶ 3.

## STATEMENT OF FACTS

### The Complaint[4]

On January 7, 1992, Scarpa was driving through Brooklyn, New York, with two organized crime associates, Larry Mazza ("Mazza") and James DelMasto ("DelMasto"). Complaint, ¶ 13. Scarpa was a member of the "Columbo [organized crime] family," and was "known and feared widely, as a ruthless killer and career criminal." Complaint, ¶ 15. According to the complaint, Scarpa was in Brooklyn that day with the specific purpose of finding and killing Grancio. Complaint, ¶ 13.

At that time, DeVecchio and Favo were special agents with the FBI, and both were members of a joint federal and state task force, the purpose of which was to monitor organized crime members and their illegal activities. Complaint, ¶ 5. In addition to being a member of the task force, DeVecchio was also a "handler" of confidential informants. Complaint, ¶¶ 33, 35.

---

Dec., and it will become evident that counsel for the plaintiff was, and is, well aware that no admissible evidence exists which would support the allegations set forth in the complaint, we will also seek permission, at the appropriate time, to move for the imposition of sanctions under Fed.R.Civ.P. 11.

[4] Because the Court must accept Grancio's allegations as true for purposes of this motion to dismiss, DeVecchio has repeated, and will discuss, those allegations for the purpose of this motion only. Many of the allegations are inaccurate, misleading and/or outright false (*see, e.g.,* DeVecchio Aff., *infra*), and DeVecchio should not be understood to have accepted or adopted the allegations by repeating them in connection with this motion. Indeed, in his motion for summary judgment (Point II, *infra*), DeVecchio sets forth facts, all of which are referenced, which not only are inconsistent with these allegations, but which are uncontradicted by admissible evidence – thereby requiring summary judgment.

One such confidential informant was Scarpa, who had been a paid informant since the 1960s. Complaint, ¶ 33.   As part of his duties as Scarpa's "handler," DeVecchio managed Scarpa's informant relationship with the FBI.  Complaint, ¶ 35.

In the "early afternoon" of January 7, 1992, Scarpa and his fellow killers found Grancio sitting in a car near Avenue U in Brooklyn.  Complaint, ¶ 8.  The complaint alleges that Scarpa observed, however, that Grancio was being surveilled by law enforcement.   Complaint, ¶ 14. Realizing that they could not accomplish their mission while investigators were watching, Scarpa allegedly advised his colleagues that he would call his law enforcement source, defendant DeVecchio, who would remove the surveillance.   Complaint, ¶ 17.   Scarpa then purportedly telephoned DeVecchio from the car, and he "told DeVecchio that he had found Grancio," but that Scarpa "saw law enforcement in place maintaining surveillance of Grancio."   Complaint, ¶ 18.  DeVecchio allegedly responded that he "would take care of removing the surveillance." Complaint, ¶ 22.  DeVecchio then allegedly spoke to Favo, who ordered the investigators to terminate surveillance.  Complaint, ¶ 22.  Finally, according to the complaint, "[m]inutes later, after seeing the surveillance team leave," Scarpa shot and killed Grancio.  Complaint, ¶ 25.

The scenario just set forth is nothing short of fantasy.  Nevertheless, the complaint goes on to state that "at all times material . . . [DeVecchio and Favo] acted within the scope of their office or employment as agents or employees of the FBI and the United States Department of Justice."  Complaint, ¶ 5.  Plaintiff contends, among other things, that DeVecchio and Favo:  (a) conspired and provided aid to Scarpa in connection with the murder of Grancio (Complaint, ¶ 50), (b) failed to follow proper procedures (Complaint, ¶ 38), failed to supervise Scarpa as an informant (Complaint, ¶ 53), and failed to protect Grancio from Scarpa (Complaint, ¶ 20), and (c) orchestrated a cover-up to "conceal the true facts of the Grancio murder." (Complaint, ¶ 26).

*The People of the State of New York v. R. Lindley DeVecchio*

On March 30, 2006, DeVecchio was arraigned on a grand jury indictment returned in Kings County which alleged four counts of murder, all arising out of DeVecchio's agent-informant meetings and conversations with Scarpa (the "criminal case"). Grover Dec., ¶¶ 25-26. These charges included the murders of Mary Bari in September 1984, Joseph DeDomenico in September 1987, Patrick Porco in May 1990 and Lorenzo Lampasi in May 1992. Grover Dec., ¶ Exhibits A and V. Copies of the Kings County Indictment No. 6825/2005 and the transcript of the March 30, 2006, arraignment are annexed to the Grover Dec. as Exhibit A and Exhibit V, respectively.

The indictment was the result of an investigation commenced in February 2005 by the D.A. into the February 1992 murder of Grancio. Grover Dec., ¶ 28. While the D.A. was unable to substantiate the allegations that DeVecchio was involved with the Grancio murder, the investigation allegedly uncovered evidence of DeVecchio's involvement in the four other murders. *See* Grover Dec., ¶ 28 and Exhibit W thereto.

It is undisputed that Scarpa and his associates were responsible for the four murders charged in the indictment, as well as the murder of Grancio. Grover Dec., ¶ 11. The allegations against DeVecchio, however, are based solely on the theory that DeVecchio solicited, encouraged, assisted, and/or planned these murders with Scarpa during the course of agent-informant meetings. Complaint, ¶¶ 5, 50. Thus, the theory of criminal liability in that case arises solely out of DeVecchio's relationship with Scarpa and his role as Scarpa's FBI "handler," which is precisely the same theory raised here. Grover Dec., ¶ 27 and Exhibit W thereto.

In April 2006, DeVecchio filed a petition, pursuant to 28 U.S.C. Section 1442, to remove the criminal proceeding to this Court. Grover Dec., ¶ 27. On January 9, 2007, this Court granted a motion brought by the D.A. to remand the case to the Supreme Court, Kings County, where the

case is presently pending.  Grover Dec., ¶ 29.  It is our understanding that the D.A. is continuing its grand jury investigation, and that it is still investigating DeVecchio's alleged involvement in the murder of Grancio.  Grover Dec., ¶ 28.

**Undisputed facts supporting summary judgment**

On January 7, 1992, according to former New York City Detective Joseph Simone's ("Simone") daily activity report, sometime between 12:45 p.m. and 1:30 p.m., Simone and his partner were following Grancio in an automobile.  Grover Dec., ¶ 15 and Exhibit G thereto (Transcript of Testimony of Joseph Simone in *Orena, et al. v. United States of America,* United States District Court, Eastern District of New York, Case No. CV-96-1474, dated January 7, 2004 ("Simone Tr.")), at 134:8-135:14; 148:9-18; 150:2-4.  By 1:30 p.m., the surveillance was terminated, and the two investigators were already *en route* to FBI headquarters at 26 Federal Plaza.  Simone Tr. at 135:15-24; 150:2-4.  Favo had called them to attend a meeting previously scheduled, at which he believed their attendance would be useful.  Affidavit of Christopher Favo, sworn to on January 17, 2007, (hereinafter, the "Favo Aff."),[5] ¶¶ 16, 18.  However, at the time Favo called Simone, he did not know that Simone and his partner were watching Grancio.  *See* Favo Aff., ¶ 18.  Further, DeVecchio did not direct or suggest to Favo to terminate any surveillance of Grancio.  Affidavit of R. Lindley DeVecchio, sworn to on January 29, 2007 (hereinafter, the "DeVecchio Aff."), ¶ 4; Favo Aff. ¶ 17.  At 4:00 p.m., while at the FBI offices, Simone heard that Grancio had been shot.  Simone Tr. at 136:11-20.

Meanwhile, earlier that day, Scarpa, Mazza and DelMasto left Scarpa's house with the purpose of finding and killing any members of the Orena faction of the Colombo crime family.  Transcript of Testimony of Larry Mazza in *Orena, supra,* dated January 7, 2004 ("Mazza Tr."),

---

[5] The Favo Aff. is submitted by Defendant Favo in support of a motion to dismiss and for summary judgment that is to be filed on or about January 29, 2007, in this action.

at 108:20-109:3.  While watching the social club of a Colombo family member, they spotted Grancio.  Mazza Tr. at 98:6-15; 109:4-110:14.  They were not expecting Grancio to show up at that location, and they were unaware of any police surveillance of him.  Mazza Tr. at 99:23-100:3; 104:24–105:14.  From the moment Scarpa and his colleagues first discovered Grancio until the moment they killed Grancio, there was not sufficient time to make a phone call.  Mazza Tr. at 113:15-18.  The Medical Examiner for the City of New York reported the time of Grancio's murder as 3:20 p.m.  Grover Dec., ¶ 18 and Exhibit J thereto (a copy of the Report of Medical Examiner of New York, dated January 7, 1992).

By 1994, the Grancio murder and the DeVecchio-Scarpa relationship had been well publicized and sensationalized throughout the media.  Grover Dec., ¶ 23.  The New York metropolitan media coverage surrounding the DeVecchio-Scarpa relationship and the federal prosecutions resulting from the Colombo war was prominent and continuous from 1994 through 1999.  *See, e.g.*, Grover Dec., ¶¶ 23 and Exhibits L through U.

## ARGUMENT

## I. THE COMPLAINT SHOULD BE DISMISSED BECAUSE IT FAILS TO STATE A CLAIM ON WHICH RELIEF MAY BE GRANTED AS AGAINST DEVECCHIO

### A. Plaintiff fails to plead facts that establish a claim for relief against DeVecchio

Fed.R.Civ.P. 12(b)(6) provides for dismissal of claims if the plaintiff fails to plead facts that establish a cognizable claim for relief.  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Cohen v. Koenig*, 25 F.3d 1168, 1171-72 (2d Cir. 1994).  In assessing a motion to dismiss, the Court must accept all "well-plead factual allegations" in the complaint as true.  *Leeds v. Meltz*, 85 F.3d 51 (2d Cir. 1996).  However, " bald assertions and conclusions of law will not suffice."  *See id.* ay 53.  Moreover, in order to survive a motion to dismiss, the complaint must contain allegations concerning each of the material elements necessary to sustain recovery under a viable legal

theory. *Dotson v. Griesa*, 99 Civ. 11713, 2001 U.S. Dist. LEXIS 3259, at *4-5 (S.D.N.Y. March 26, 2001). As argued below, the single remaining count against DeVecchio, the *Bivens* count, should be dismissed because "it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief." *Cohen, supra*, 25 F.3d at 1172.

### B. DeVecchio is entitled to dismissal of count 1 because plaintiff fails to adequately plead a constitutional violation

Relying on *Bivens, supra*, 403 U.S. 388 (1971), plaintiff claims that DeVecchio and Favo violated, and conspired to violate, Grancio's Fourth, Fifth and Eighth Amendment rights under the United States Constitution. Plaintiff predicates these claims on the following allegations:

- That Scarpa called DeVecchio and told him "that he had found Grancio, but that he also saw law enforcement in place maintaining surveillance of Grancio." Complaint, ¶ 18.

- That DeVecchio "advised Scarpa that he would take care of removing the surveillance from Grancio." *Id.* ¶ 19.

- That DeVecchio knew or should have suspected at that time that Scarpa wanted the surveillance pulled off of Grancio so that Scarpa could murder Grancio. *Id.* ¶ 20.

- That Defendants "failed to supervise Scarpa as an informant … failed wholly to protect Nicholas Grancio and others from Scarpa and others, knowing the dangers that existed… ." *Id.* ¶ 63.

- That Defendants "created an opportunity for Grancio's death that otherwise would not have existed… ." *Id.*

As demonstrated below, these allegations, even taken together with the other allegations set forth in the complaint, fail to allege a constitutional violation. Therefore, count 1 of plaintiff's action must fail.[6] *See Kee v. Hasty*, 01 Civ. 2123, 2004 U.S. Dist. LEXIS 6385, at *40

---

[6] In light of the Certification and Notice of Substitution, Count 2, whose allegations appear to allege a state law conspiracy claim, is not addressed herein. It is worth noting, however, that, because DeVecchio is entitled to qualified immunity on the underlying constitutional claims, plaintiff's conspiracy claims, if deemed to be alleged as a *Bivens* claim, must also fail as a matter of law. See *Brown v. City of Oneonta*, 106 F.3d 1125, 1133 (2d Cir. 1997), *overruled on other grounds by Gonzaga Univ. v. Doe*, 536 U.S. 273, 278 (2002) (ruling that defendants had

(S.D.N.Y. April 14, 2004) ("to establish any type of claim under *Bivens*, a plaintiff must allege facts showing, *inter alia*, that each named defendant denied him a right secured by the Constitution").

Further, where, as here, a government agent has been sued in his individual capacity for acts taken in the scope of his employment, qualified immunity will shield him from liability so long as the conduct did "not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Velez v. Levy*, 401 F.3d 75, 100 (2d Cir. 2004), *quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Because a qualified immunity claim involves a two-step inquiry, the Court must first determine whether the alleged facts show that the defendant's conduct violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Pena v. Deprisco*, 432 F.3d 98, 107 (2d Cir. 2005). If no constitutional right has been violated, the agent is entitled to qualified immunity and no further inquiry is necessary. *Saucier*, 533 U.S. at 201. However, if it is determined that a constitutional right has been violated, then the Court must determine whether that right was "clearly established" at the time of the alleged violation.

---

qualified immunity with respect to conspiracy claim because they had qualified immunity on the underlying violation they were alleged to have conspired to commit); *Pryor v. New York*, 704 F. Supp. 35, 38-39 (E.D.N.Y. 1989) (where defendants were entitled to qualified immunity on claims of alleged constitutional violations, court ruled that conspiracy claim failed as well because the alleged acts of conspiracy were the same acts to which qualified immunity annexed); *Zappala v. Albicelli*, 954 F. Supp. 538, 546 (N.D.N.Y. 1997) ("The only evidence offered by the Defendants of a separate conspiracy are the alleged unconstitutional acts themselves. Since the Defendants are entitled to qualified immunity on all the individual Constitutional claims, a separate conspiracy claim based only on the exact same conduct fails as well.").

Plaintiff's conspiracy claim fails for the additional reason that the Complaint fails to state a cognizable claim, in that the complaint fails to demonstrate that there was an express agreement or meeting of the minds between the conspirators. *Pollack v. Nash*, 58 F. Supp. 2d 294, 302 (S.D.N.Y. 1999) (dismissing conspiracy claim where there were no allegations as to when, where, or how the alleged conspiracy was formed). Lastly, to state a claim of conspiracy under § 1983, the complaint "must contain more than mere conclusory allegations." *Dwares, supra*, 985 F.2d at 99. Thus, complaints containing only conclusory, vague or general allegations that defendants engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed. *Id.* at 100. Indeed, a complaint alleging a conspiracy to violate civil rights is held to a heightened pleading standard. *Pollack, supra*, 58 F. Supp. 2d at 299.

*Id.*; *Pena, supra,* 432 F.3d at 107.  If the right was not clearly established, qualified immunity applies.  *See id.*

Qualified immunity is an immunity from suit, rather than a mere defense to liability. *Saucier, supra,* 533 U.S. at 200-201.  Thus it can be presented in a Fed.R.Civ.P. 12(b)(6) motion as long as it is based on facts appearing on the face of the complaint.  *Benzman v. Whitman,* 04 Civ. 1888, 2006 U.S. Dist. LEXIS 4005, at *37-38 (S.D.N.Y. Feb. 2, 2006).[7]  Because count 1 fails to allege a cognizable constitutional violation (*see Barr v. Abrams*, 810 F.2d 358 (2d Cir. 1987)), DeVecchio is entitled to qualified immunity – whether plaintiff's claim is predicated on the Fourth, Fifth or Eighth Amendment.

### 1.  The complaint fails to assert a cognizable claim under the Fourth Amendment

The Fourth Amendment "covers only searches and seizures."  *County of Sacramento v. Lewis,* 523 U.S. 833, 843 (1998).  Its protections do not apply to private action - unless the private party acted as an agent or instrument of government.  *United States v. Mendez-de Jesus,* 85 F.3d 1, 2-3 (1st Cir. 1996).  Here, where plaintiff alleges that his constitutional right to life has been denied by a private party who was not acting in furtherance of a governmental objective, that claim, if at all viable, can only be based on the Due Process clause (Fifth Amendment) – not the Fourth Amendment.  *See Pleasant v. Zamieski,* 895 F.2d 272, 276, n. 2 (6th Cir. 1990) (substantive due process is the only appropriate basis for claims where a free citizen is denied his/her constitutional right to life through means other than a law enforcement official's arrest, investigatory stop or other seizure"), *cert. denied,* 498 U.S. 851 (1990).

---

[7]  The qualified immunity standard in *Bivens* cases is identical to the standard employed in cases brought under 42 U.S.C. § 1983.  *Elmaghraby v. Ashcroft,* 04 Civ. 1409, 2005 U.S. Dist. LEXIS 21434, at *33, n. 12 (E.D.N.Y. Sept. 27, 2005).

The Second Circuit has also recognized that where a government agent has allegedly participated in a deprivation of rights by a private party which does not occur in connection with any arrest, then the Due Process Clause, as opposed to the Fourth Amendment, is the proper basis of analysis. *Hemphill v. Schott*, 141 F.3d 412 (2d Cir. 1998). In *Hemphill*, the plaintiff alleged that police officers violated his due process rights by providing a former police officer with a gun, driving him to where the plaintiff was located, and allowing him to shoot the plaintiff. *Id.* at 418-419. The defendants argued that allegations of excessive force must be analyzed under the Fourth Amendment. *Id.* at 418. Rejecting the defendants' argument, the Court held that the case must be analyzed under the Due Process Clause because the alleged excessive force was outside the context of an arrest. *Id. citing Graham v. Connor*, 490 U.S. 386, 394 (1989). The *Hemphill* Court explained:

> While some of the facts that comprise Hemphill's allegations with respect to the Officers' aiding and abetting [the former officer] occurred in the "context" of his arrest in a physical sense, the Officers' alleged actions with respect to [the former officer] form a different kind of claim from excessive force in effecting an arrest. *Graham*'s holding that excessive force claims in the context of an arrest are to be analyzed under the Fourth Amendment's objective standards does not extend to this unusual situation in which the police officers allegedly engaged in a deprivation of rights coincident with, but distinct from, their arrest of the suspect. Not only did not alleged aid necessarily begin before the Officers and [the former officer] reached the scene of the arrest, but [the former officer], as a civilian, was not himself arresting Hemphill.

*Id.* at 418-419. Thus, Hemphill's claim should have been raised under the Fourteenth Amendment – not the Fourth Amendment.[8] *Id.*

The Fourth Amendment does not apply here for the same reasons it was inapplicable in *Hemphill*. Plaintiff's claim is based solely on the theory that DeVecchio aided Scarpa in

---

[8] *See also United States v. Attson*, 900 F.2d 1427, 1433 (9th Cir. 1990) (explaining that the Fourth Amendment will not apply when the private party was acting for a reason that is independent of a governmental purpose).

depriving Grancio of his right to life – by murdering him.  Clearly, Scarpa was not attempting to

arrest Grancio.  Rather, he was pursuing the violent business interests of organized crime.  His

actions were those of a private actor, and plaintiff does not allege otherwise.  *See* Complaint, ¶¶

58, 59, 61.  Accordingly, plaintiff's claim, to the extent it is based on the Fourth Amendment,

must be dismissed as a matter of law.  *Hemphill, supra,* 141 F.3d at 418-419; *United States v.*

*Attson,* 900 F.2d 1427, 1433 (9th Cir. 1990).  For the same reason, DeVecchio is entitled to

qualified immunity because plaintiff has failed to satisfy the first prong of *Saucier.  Saucier,*

*supra,* 533 U.S. at 201.

### 2.  The complaint fails to assert a cognizable claim under the Eighth Amendment

Plaintiff also fails to allege facts sufficient to show any violation of the Eighth

Amendment.  Eighth Amendment protections are only applicable after the state has made a

formal adjudication of guilt.  *See Ingraham v. Wright,* 430 U.S. 651, 671 (1977) (emphasis

added) ("Eighth Amendment scrutiny is appropriate only after the State has complied with the

constitutional guarantees traditionally associated with criminal prosecutions . . . [The] State does

not acquire the power to punish with which the Eighth Amendment is concerned until after it has

secured a formal adjudication of guilt in accordance with due process of law."); *see also Revere*

*v. Mass. Gen. Hosp.,* 463 U.S. 239, 244 (1983) (where injured suspect required medical care at

time of his arrest, the court held that "[b]ecause there had been no formal adjudication of guilt

against [the perpetrator] at the time he required medical care, the Eighth Amendment has no

application."); *Schottenstein v. Schottenstein,* 230 F.R.D. 355, 361 (S.D.N.Y. 2005) (emphasis

added) ("the protections of the Eighth Amendment apply only to convicted criminals.").

There is no question here that the government had not "secured a formal adjudication of

guilt" against Grancio at the time he was murdered by Scarpa.  Thus Grancio's Eighth

Amendment rights were not violated.  And, for the same reason, DeVecchio is entitled to

qualified immunity predicated on plaintiff's failure to satisfy the first prong of *Saucier*. *Saucier, supra,* 533 U.S. at 201.

### 3.   The complaint fails to assert a cognizable claim under Fifth Amendment

In the unlikely event that this Court finds that either the Fourth or Eighth Amendment claims asserted by plaintiff are cognizable, then plaintiff's Fifth Amendment due process claim must be dismissed as a matter of law. *See County of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998) ("where a particular amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims."). If, however, the Court determines that there is no Fourth or Eighth Amendment violation, plaintiff's *Bivens* claim must still fail because plaintiff does not sufficiently plead a Fifth Amendment violation against DeVecchio. *Saucier, supra,* 533 U.S. at 201.

To begin with, the complaint does not clearly specify exactly what due process rights of Grancio's were allegedly violated. It appears that plaintiff is alleging that DeVecchio violated Grancio's due process rights in five ways: (1) that DeVecchio failed to protect Grancio from violence by Scarpa (Complaint, ¶ 20, 55, 63, 84); (2) that DeVecchio "created an opportunity for Grancio's death that otherwise would not have existed" (Complaint, ¶ 19-20, 63) (*i.e.*, the state-created danger theory); (3) that DeVecchio had an obligation to protect Grancio based upon a special relationship between the government and Grancio (Complaint, ¶ 20); (4) that DeVecchio failed to follow proper procedures (Complaint, ¶ 37-39, 53); and (5) that DeVecchio failed to supervise Scarpa (Complaint, ¶ 38-39, 63, 84). However, none of these allegations sufficiently plead a constitutional violation which can avoid dismissal.

13

### a. DeVecchio is entitled to qualified immunity because there is no constitutional right to be free from third-party violence

The Due Process Clause of the Fifth Amendment provides that the government shall not deprive any person of life, liberty or property without due process of law.  U.S. Const. amend. V; *DeShaney v. Winnebago Cty. Dept. of Social Services*, 489 U.S. 189, 196, 109 S.Ct. 998 (1988). However, the Due Process Clause confers "no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." *DeShaney, supra*, 489 U.S. at 196.  Put simply, "a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *Id.* at 197.

Here, there is no question that Grancio was murdered by Scarpa, a private actor. Complaint, ¶ 25; Grover Dec., ¶ 11.  Since the murder was the result of private violence, plaintiff, in order to proceed, must demonstrate that her Due Process claim is not controlled by *DeShaney*, which requires dismissal unless she can demonstrate that there was either a "state-created danger" or that Grancio enjoyed a "special relationship" with the government. *See Pena, supra*, 432 F.3d at 107-108.  She can do neither.

### b. The "state-created danger" exception was not clearly established at the time of Grancio's murder

For many years, Courts held that the government did not have a duty to protect individuals from violence by private actors. *See DeShaney, supra,* 489 U.S. at 195-196 ("Nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors.").  In 1993, however, the Second Circuit recognized an exception to this long-recognized rule in instances where an agent "assisted in creating or increasing the danger to the victim." *Dwares v. City of New York*, 985

F.2d 94, 99 (2d Cir. 1993). This exception became known as the "state-created danger" theory. *See Pena, supra,* 432 F.3d at 108.

Even assuming for a moment that the state in some way contributed to the danger in which Grancio was placed, this exception was not "clearly established" at the time the events occurred. Consequently, DeVecchio is still entitled to qualified immunity. *See Pena, supra,* 432 F.3d at 108 (although defendant officers violated plaintiffs' rights by implicitly communicating to off-duty police officer that they would not interfere with his drunk driving, which increased the likelihood of harm to others, they were entitled to qualified immunity because this due process violation was not clearly established at the time). In determining whether a right was "clearly established," the proper inquiry is whether it would have been clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *Pena, supra,* 432 F.3d at 114. Thus this Court should consider whether the right in question was defined with "reasonable specificity," whether the decisional law of the Supreme Court and the Second Circuit supports the existence of the right, and whether under preexisting law, a reasonable official would have understood that his acts were unlawful. *Id., citing Back v. Hastings on Hudson Union Free Sch. Dist.,* 365 F.3d 107, 129-130 (2d Cir. 2004). That standard cannot be met by plaintiff because *Dwares,* the case that created the "state created danger" standard, had not yet been decided. "Only Supreme Court and Second Circuit precedent existing at the time of the alleged violation is relevant in deciding whether a right is clearly established." *Matican v. City of New York,* 424 F. Supp. 2d 497, 506 (E.D.N.Y. 2006) (internal quotation marks omitted), *quoting Moore v. Vega,* 371 F.3d 110, 114 (2d Cir. 2004).

Since the concept of "state-created danger" was not "clearly established" in January 1992, when the alleged events here took place, DeVecchio is entitled to qualified immunity. *Saucier, supra,* 533 U.S. at 201.

### c. Grancio did not have a "special relationship" with the government that would give rise to a duty to protect him from private violence

The government may also have a duty to protect an individual from violence from a private actor where the government has a special relationship with the victim. *Pena, supra,* 432 F.3d at 109; *Ying Jing Gan v. City of New York,* 996 F.2d 522, 534 (2d Cir. 1993). Whereas "state-created danger" liability arises from the relationship between the state and the private assailant, "special relationship" liability arises from the relationship between the state and the victim. *Pena, supra,* 432 F.3d at 109. The government here had no such relationship with Grancio.

A special relationship can only arise where "the State, through affirmative exercise of its power, so restrains an individual's liberty that it renders him unable to care for himself." *DeShaney,* 489 U.S. at 200. "In the substantive due process analysis, it is the State's affirmative act of <u>restraining</u> the individual's freedom to act on his own behalf – <u>such as through incarceration, institutionalization, or other similar restraint of personal liberty</u>" that creates a special relationship. *Id.* (emphasis added). *See also Ying Jing Gan, supra,* 996 F.2d at 534 ("Special relationships . . . include[ed] custodial relationships such as a prison and inmate or a mental institution and involuntarily committed patient, and the relationship between a social service agency and foster child."). Both the Supreme Court and the Second Circuit have recognized that a constitutionally significant "special relationship" involves some type of custody or other restraint on an individual's ability to fend for himself. *Matican, supra,* 424 F. Supp. 2d at 504.

16

Here, the only "relationship" that Grancio had with the government was that, because he was an individual known to be engaged in organized crime, he was one of many such people who were routinely the subject of government surveillance. Complaint, ¶¶ 8-10. Neither the Second Circuit nor the Supreme Court has recognized a "special relationship" under these facts. Indeed, the "special relationship" argument has been expressly rejected in cases where the plaintiff had a far more significant relationship with the government than Grancio had here. *See, e.g., Matican, supra,* 424 F. Supp. 2d at 504 (no special relationship where plaintiff was a confidential informant, since it did not involve custody or any other restraint on Matican's ability to fend for himself); *Ying Jing Gan, supra,* 996 F.2d at 534 (no special relationship created requiring protection where a potential witness is asked to identify criminal suspects).

Even assuming, *arguendo,* that Grancio had a "special relationship" with the government, DeVecchio is still entitled to qualified immunity because the "special relationship" exception to the *DeShaney* rule was not established in the Second Circuit until 1993 (*see Matican, supra,* 424 F. Supp. 2d at 503; *Ying Jing Gan, supra,* 996 F.2d at 534), and events alleged here occurred in January 1992. *See Saucier, supra,* 533 U.S. at 201.

### d. Failure to follow proper procedures is not a constitutional violation and, even if it occurred, would not deprive an official of qualified immunity

Grasping at straws, plaintiff alleges that DeVecchio "failed to follow proper procedures and guidelines regarding the selection, use, payment and supervision of, reporting on, monitoring, restricting criminal activity of, and other interaction and involvement with cooperating witnesses and informants, with respect to the selection and employment of Scarpa and others." Complaint, ¶ 53. The Second Circuit, however, has expressly rejected the argument that a law enforcement agent's violation of procedures or guidelines creates a constitutional violation. *Cofone v. Manson,* 594 F.2d 934, 938 (2d Cir. 1979); *see also Batista v. Kelly,* 854 F.

17

Supp. 186, 193 (W.D.N.Y. 1994) ("due process claim premised upon a prison official's failure to follow state procedural rules or regulations, standing alone, is not a sufficient basis for a § 1983 claim"); *Johnson v. Goord*, 99-0060, 1999 U.S. App. LEXIS 22954 (2d Cir. Sept. 16, 1999) (plaintiff inmate alleged that the state violated his due process rights by failing to follow state regulations in suspending his visitation rights; court found no constitutional violation because plaintiff did not show that the process he actually received was constitutionally deficient). Moreover, government agents sued for constitutional violations "do not lose their qualified immunity merely because their conduct violates some statutory or administrative provision." *Davis v. Scherer*, 468 U.S. 183, 194 (1984).

In essence, plaintiff claims that by failing to follow procedures that could have protected Grancio from the violence of his Colombo crime family associates, defendants have deprived Grancio of his liberty. Apart from the utter absurdity of the argument, to the extent that a Court might even consider the failure to follow proper procedures as a basis for creating "state-created danger," DeVecchio is still entitled to qualified immunity because that right was not clearly established at the time. In short, the claim is not actionable.

### e. There is no constitutional violation where a government agent fails to supervise a private party who is likely to cause harm to another

Plaintiff also alleges that DeVecchio failed to properly supervise Scarpa and protect Grancio, and that the defendants thereby created an opportunity for Grancio's death that otherwise would not have existed. Complaint, ¶ 63. Plaintiff's "failure to supervise" claim is just another way of stating that defendants failed to protect Grancio from Scarpa. Since there is no obligation to protect individuals from the acts of private actors, *DeShaney*, 489 U.S. at 200-201, and since the "state-created danger" theory of liability did not exist when the conduct alleged occurred, *Dwares, supra*, DeVecchio cannot be liable for his alleged failure to supervise

Scarpa.

In addition, there is no separate constitutional duty for a government official to supervise or monitor a private actor who is likely to commit violence. Indeed, since a government agent has no duty to protect individuals from known dangers from private parties, it follows that there is also no duty to supervise those private parties. *See Clarke v. Sweeney*, 312 F. Supp. 2d 277, 298 (D. Conn. 2004) ("there was no constitutional deprivation arising from the [police department's] failure to protect Karen and B.J. from [private actors]. As there was no underlying deprivation of constitutional rights, accordingly there can be no supervisory liability for Sweeney based on the inadequacies of the [police department's] witness protection program."). *See also Blyden v. Mancusi*, 186 F.3d 252, 265 (2d Cir. 1999) (supervisory liability requires "an underlying constitutional deprivation"). In sum, because plaintiff is unable to plead that any constitutional right was "clearly established" at the time of Grancio's murder, DeVecchio is shielded by qualified immunity, and count 1 of the complaint must be dismissed as against DeVecchio.

## II. DEFENDANT DEVECCHIO MUST BE GRANTED SUMMARY JUDGMENT ON PLAINTIFF'S *BIVENS* CLAIM

### A. Summary judgment should be granted because no genuine issue of material fact exists

It is well settled that summary judgment should be granted if no genuine issue of material fact exists, and thus the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see generally Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). "When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *See Gallo v. Prudential Residential Services, Ltd. P'ship*, 22 F.3d 1219,

1224 (2d Cir. 1994) (citing *Dister v. Continental Group, Inc.,* 859 F.2d 1108, 1114 (2d Cir.1988)). Significantly, "[t]he nonmoving party [plaintiff] must produce evidence in the record and 'may not rely simply on conclusory statements or on contentions that the affidavits in support of the motion are not credible.'" *Sylvester v. City of New York,* 385 F. Supp. 2d 431, 434 (S.D.N.Y. 2005) (citations omitted). "Where no such showing is made, 'the moving party is entitled to judgment as a matter of law because the nonmoving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof.'" *Lujan v. National Wildlife Fed'n,* 497 U.S. 871, 884 (1990) (citations omitted). Put another way, plaintiff "'must adduce factual material which raises a substantial question of the veracity or completeness of [defendant's] showing or presents countervailing facts.'" *Porter v. Reynolds Leasing, Inc.,* 92 Civ. 5095, 1994 U.S. Dist. LEXIS 549, at *13-14 (S.D.N.Y. January 24, 1994) (citations omitted) (summary judgment warranted where plaintiff failed to adduce any evidence contrary to defendant's).

Plaintiff's claim against DeVecchio hinges entirely on two allegations: (1) on January 7, 1992, he received a telephone call from Gregory Scarpa, Sr. immediately prior to the murder; and (2) after receiving that telephone call, he communicated with defendant Favo, who then ordered a surveillance team that was watching Grancio to return to the FBI offices, thereby allowing Grancio to be murdered. Because there is no admissible evidence that such a telephone call was ever made, or that DeVecchio ever communicated with Favo about removing the surveillance team, there can be no basis for allowing these claims to continue. In fact, the only evidence unequivocally establishes that none of these events ever occurred.

The only relevant and admissible evidence relating to these issues consists of: (1) the prior sworn testimony of Larry Mazza, who was present at the murder scene, and who has

previously testified about these events; (2) the prior sworn testimony of Detective Simone, one of the members of the surveillance team that day, (3) the affidavits of defendants DeVecchio and Favo; and (4) the documentary evidence establishing the exit of the surveillance team and the timing of the murder – almost two hours after withdrawal.  Because all of this clearly establishes that these events have no connection to DeVecchio, the claims must be dismissed.  *See, e.g.*, *Taveras v. Hasty*, No. Civ. A. CV-02-1307, 2005 WL 1594330, at *5 (E.D.N.Y. July 7, 2005) ("Because plaintiff cannot show the defendants' personal involvement in the alleged constitutional violations, his *Bivens* claims must also fail.").  Moreover, Plaintiff's *Bivens* claim is barred as a matter of law because it was not filed within the statute of limitations.

**B.  The allegations in the complaint are pure fantasy, and they are contradicted by undisputed admissible evidence**

The complaint is predicated on the theory that the defendants, while working for the FBI, aided and abetted the organized crime murder of Grancio by Scarpa, Larry Mazza ("Mazza") and James DelMasto ("DelMasto") on January 7, 1992.  Significantly, these same allegations were previously raised before Senior United States District Judge Jack B. Weinstein in December 2004, during post-trial motions in the case of *Orena, supra*.  In the hearing before Judge Weinstein, he determined that these allegations were unsupported by admissible evidence.  *See* Memorandum and Order (Weinstein, S.J.), dated January 15, 2004, in *Orena, supra*, a copy of which is annexed to the Grover Dec. as Exhibit F.  Nothing has changed in the past two years.  Grover Dec., ¶ 14.

The scenario presented in the complaint alleges that on January 7, 1992, Scarpa and his cohorts were stalking Grancio when they determined that the police were conducting a surveillance.  Complaint ¶¶ 9 and 14.  Scarpa allegedly told Mazza that "he could get the surveillance removed by calling his contact in law enforcement . . . 'Lyn,' 'Del,' 'Dello,' or his

'girlfriend.'"   Complaint ¶ 17.   Also, according to the complaint, Scarpa allegedly called DeVecchio and told him that he had had "found Grancio," but that Grancio was under surveillance.   Complaint ¶ 18.   During that alleged phone call, DeVecchio purportedly agreed to remove the surveillance.   Complaint ¶¶ 18-19.   Allegedly, only minutes after the surveillance team left the scene, Scarpa and his colleagues killed Grancio.   Complaint ¶ 25.   Among many other problems, this story suffers from a very significant flaw: no such call ever occurred, and there is no witness who will say that it did.   Affidavit of R. Lindley DeVecchio, sworn to on January 19, 2007 (hereinafter, the "DeVecchio Aff."), ¶3.   Nor was Grancio killed moments after the surveillance team left the scene. *See, e.g.,* Grover Dec., Exhibits I and J.

### 1.  Scarpa was not aware of any police surveillance

The true facts are: Mazza previously testified under oath that neither he, Scarpa, nor DelMasto were aware of any police surveillance when they discovered Grancio that afternoon. *See* transcript of testimony of Larry Mazza, in *Orena, supra,* dated January 7, 2004 ("Mazza Tr."), pp.99-100, 104-105, a copy of which is annexed to the Grover Dec. as Exhibit K.

### 2.  No telephone call was ever made by Scarpa to call off the surveillance

DeVecchio never received any telephone call from Scarpa asking him to remove or terminate surveillance of Grancio. *See* DeVecchio Aff., ¶3.   Mazza specifically testified that he, Scarpa and DelMasto came upon Grancio quite unexpectedly, and the events which took place were fortuitous.   Mazza Tr., Exhibit K to the Grover Dec., at 98, 109-110.   More importantly, "[f]rom the moment [they] first saw Grancio till the moment he was killed, <u>there was no time to make any phone calls</u>."   Mazza Tr., Exhibit K to the Grover Dec., at 113 (emphasis added).   In other words, no such phone call was ever made.

### 3. Favo received no order, communication or request from DeVecchio to call off the police surveillance

Plaintiff alleges that defendant Favo called Detective Simone and ordered him and his partner to terminate their surveillance of Grancio after being told to do so by DeVecchio. Complaint ¶¶ 17-18. This never happened. DeVecchio Aff. ¶¶ 3-4; Favo Aff. ¶¶ 17-18. To begin with, DeVecchio neither called Detective Simone himself nor directed Favo to contact anyone to terminate surveillance of Grancio. DeVecchio Aff. ¶¶ 3-4; Favo Aff. ¶ 17. Second, police testimony and reports give no indication that DeVecchio issued an order that the police surveillance of Grancio be called off.

In fact, according to Detective Simone's daily activity report ("DAR") for January 7, 1992, between the hours of 12:45 and 1:30 p.m., he and his partner were in an "FBI plant" observing Grancio and following Grancio in the car. *See* Transcript of testimony of Joseph Simone, in *Orena, supra*, dated January 7, 2004 ("Simone Tr."), pp. 134-135, 148, 150. A copy of this testimony is annexed to the Grover Dec. as Exhibit G; a copy of the DAR is annexed to the Grover Dec. as Exhibit H. At <u>1:30 p.m.</u>, according to Simone's testimony and his DAR, he was already en route to ("ERT") FBI headquarters at 26 Federal Plaza - after being called back by Special Agent Favo to attend a meeting. Simone Tr. at 135 & 150; *see also* Grover Dec., Exhibit H.

Significantly, Favo was not directed by DeVecchio to call Simone and his partner in for that meeting. Favo. Aff. ¶ 17. Rather, Favo called them to participate in a previously-scheduled meeting relating to the refocusing of surveillance. Favo Aff., ¶¶ 16-18. Specifically, when Simone and his partner had not yet arrived for the meeting, Favo called them to attend because he felt their attendance at the meeting would be useful. Favo Aff., ¶ 18. Perhaps most

significantly, at the time Favo made that call, he did not know that Simone and his partner were watching Grancio. Favo Aff., ¶ 18.

### 4.  Grancio was murdered hours after the surveillance was terminated

One of the critical "facts" set forth in the Complaint is that "**[m]inutes later**, after seeing the surveillance team leave . . . Scarpa, with Mazza and DelMasto, drove up to Grancio's car and shot and killed Nicholas Grancio." Complaint ¶ 25 (emphasis added).   While this sounds compelling – it is not true.  The **only available evidence** clearly establishes that the homicide occurred almost two hours, not minutes, after the surveillance team left the scene:  According to official report of the Medical Examiner of the City of New York, the initial report of the Grancio murder was at 1520 (3:20 p.m.), almost two hours after Detective Simone had terminated Grancio's surveillance.  A copy of the Report of Medical Examiner of New York, dated January 7, 1992, is annexed to the Grover Dec. as Exhibit J.  Indeed, Simone testified that it was not until 4:00 P.M., while he was at the FBI offices, that he heard that Grancio had been shot.  Simone Tr., Exhibit G to the Grover Dec., at 136.  The assertion that surveillance was "pulled" to clear the path for Scarpa's murderous plans is simply fantasy.  Simone Tr., at 153.

In short, the complaint is predicated entirely on unsupported and conclusory allegations that Scarpa knew Grancio was being surveilled, that a telephone call was made by Scarpa to DeVecchio, that DeVecchio directed Favo to terminate the surveillance of Grancio, and that Favo directed the surveillance team to terminate the surveillance.  However, since the only evidence available, as set forth above, completely contradicts this theory, the allegations amount to nothing more than an unsupportable and hypothetical, if not fantastic, story.  *See, e.g., Joe Hand Promotions, Inc. v. Conroy*, 167 F. Supp. 2d 536, 538 (N.D.N.Y. 2001) ("an alleged or hypothetical factual dispute will not defeat a motion for summary judgment").  Consequently, this is a case that can and should be resolved quickly and easily by summary judgment.  There is

not a single material fact connecting DeVecchio to Grancio's death.  Plaintiff's claim against DeVecchio must therefore be dismissed.

### C. Plaintiff's *Bivens* claim is also barred by the three-year statute of limitations

Although Congress has not established a federal statute of limitations for *Bivens* claims, the Second Circuit has held that the local time limitation set forth in section 214(5) of the New York Civil Practice Law and Rules applies to *Bivens* actions initiated in federal court in New York. *See Chin v. Bowen*, 833 F.2d 21 (2d Cir. 1987); *Kronisch v. United States*, 150 F.3d 112, 123 (2d Cir. 1998). Section 214(5) requires that an action to recover damages for personal injury be commenced within three years. *See* N.Y. C.P.L.R. 214(5) (McKinney 2006).

The statute of limitations period on such a claim begins to run when the plaintiff has "knowledge of, or knowledge that could lead to, the basic facts of the injury, *i.e.*, knowledge of the injury's existence and knowledge of its cause or of the person or entity that inflicted it." *Id.* at 121. Thus, in order to determine whether a *Bivens* claim is time-barred, one not only must consider when the injury was actually discovered, but also, when it should have been discovered through the exercise of reasonable diligence. *Id.* at 127.

Plaintiff commenced her *Bivens* claim on January 6, 2006, almost 14 years after Grancio was murdered on January 7, 1992. Plaintiff, of course, knew that her husband had been murdered, and that his murder arose out of his involvement in organized crime. Complaint, ¶ 125. If that alone did not constitute "knowledge that could lead to ... [the] cause or of the person or entity that inflicted" the murder, certainly the media blitz that has raged from time to time since 1992 does. Grover Dec., ¶ 23. Beginning in 1994 -- 12 years prior to the filing of this action -- and continuing for years thereafter, there were numerous articles which focused on an alleged improper relationship between DeVecchio and Scarpa, the convicted murderer of

Grancio.[9]   Grover Dec., ¶ 23.   This media deluge, which included newspapers as well as television, began in metropolitan New York and spread nationwide.   Grover Dec., ¶ 23.   The media coverage included, but was not limited to, the following:

- **November 20, 1994.** In *"The Mobster Was a Mole for the F.B.I.; Tangled Life of Mafia Figure Who Died of AIDS Is Exposed,"* the *New York Times* reported that the recent "exposure of Mr. Scarpa's double life" as an FBI informant has "raised questions about whether the F.B.I. funneled confidential information to Mr. Scarpa and immunized him from a prison sentence for decades." The article also reports assertions that "the F.B.I. used Scarpa an as agent provocateur to provoke a war among factions in the Colombo family" and notes that Scarpa "confessed that he led the hit team that shot Mr. Grancio." (Grover Dec., Exhibit L.)

- **May 9, 1995.** In *Prosecutors Say F.B.I. Agent Passed Information to a Colombo Mob Figure,* the *New York Times* reported:

  The prosecutors said the agent, R. Lindley DeVecchio, funneled to Gregory Scarpa, Sr., a captain in the Colombo family, information about his enemies' possible hideaways during a[n] internal Colombo war from 1991 to 1993 in which 10 men were killed. . . . In effect, the prosecutors indicated that while Mr. Scarpa was a mole for the Federal Bureau of Investigation inside the Mafia, he was also getting potentially valuable information from Mr. DeVecchio.
  (Grover Dec., Exhibit M.)

- **May 10, 1995.** The *Daily News* reports that "feds believe that DeVecchio…leaked critical information to the homicidal Scarpa on at least eight occasions." (Grover Dec., Exhibit N.)

- **May 11, 1995.** Media coverage of the DeVecchio-Scarpa relationship and the sensational theory that DeVecchio and the FBI had incited the Orena-Persico wars continued. The *Daily News* reports an allegation that "FBI gave Scarpa a pass to commit crime" and knew on January 12, 1992, that Scarpa had "shotgunned rival gangster Nicky Grancio in the head." *Mobster Had Deal with FBI,* DAILY NEWS, May 11, 1995 (Grover Dec., Exhibit O.)

---

[9]  For a detailed summary of the extensive media coverage of the relationship between Scarpa, DeVecchio and the FBI, defendant respectfully refers the Court to the Declaration of Assistant United States Attorney ("AUSA") Gail A. Matthews dated January 26, 2007, and the U.S. Department of Justice's Rule 56.1 Statement, both of which are submitted by the United States in support of its motion filed on or about January 29, 2007, in this action.

- **May 29, 1995.** "At this latest trial of six reputed gangsters charged with participating in the Colombo family war between 1991 and 1993, federal prosecutors acknowledged that FBI Special Agent R. Lindley DeVecchio, assigned to the elite squad investigating the Colombo family, 'may have' supplied information to Scarpa about his rivals." According to *Newsday*, an agent testified that "Scarpa actually spoke to DeVecchio the day the mobster murdered [Grancio] . . . and then called [*sic*] DeVecchio the day after the murder to report that 'peace was now impossible' because 'someone' had killed Grancio." *Mob Trial Points to Ties Between FBI, Gangsters*, NEWSDAY, May 29, 1995, at A15. (Grover Dec., Exhibit P.)

- **June 4, 1995.** *Newsday* publishes an article entitled, *The FBI Gave Him An Edge*, and reports on the DeVecchio-Scarpa relationship. "[Scarpa] and DeVecchio had established a regular trade in intelligence, with the advantage generally on Scarpa's side. . . . DeVecchio now knows to his sorrow that Scarpa began the counterattack by killing . . . Nicky Grancio for the New Year." (Grover Dec., Exhibit Q.)

- **July 1 and July 2, 1995.** The New York media reports that a Federal jury in Brooklyn has acquitted seven defendants (aligned with the Orena faction) of murder in the Colombo family war relying on the theory that DeVecchio and the FBI had incited the war and that the mobsters had acted in self-defense. Jurors stated that a pivotal moment was when they saw the sheet of the conversations between DeVecchio and Scarpa, which showed that "'Scarpa was basically running free'" to commit murders. *7 Found Not Guilty in Plot Tied to a Mob Family Feud*, N.Y. TIMES, July 1, 1995; *The Thin Line Between Mole and Manager*, N.Y. TIMES, July 2, 1995. (Grover Dec., Exhibit R.)

- **September 29, 1996.** In *FBI Rewards The Gullible,* Newsday observes that:

   If there had indeed been a Colombo war, Scarpa had held its liveliest gun and used it to kill Amato, Fusaro and Grancio. These combats were all but exclusively Scarpa's; and he enlisted DeVecchio as a Persico partisan . . . [DeVecchio's] zest may or may not be excused by the dream that, when peace was restored . . . the FBI would at last own a boss among bosses.
   (Grover Dec., Exhibit S.)

27

- **January 26, 1997.** The *New York Times* repeats the accusation that F.B.I. agents suspected DeVecchio "had helped Mr. Scarpa escape arrest and track down supporters of Mr. Orena." (Grover Dec., Exhibit T.)

- **February 23, 1997.** "DeVecchio is accused of leaking government secrets to Scarpa over the course of a 12-year relationship . . . [including] sensitive details that may have helped fuel the internal Colombo crime family war between 1991 and 1992." *Fed's Set To Tattle*, DAILY NEWS, February 23, 1997. (Grover Dec., Exhibit U.)

It is well-settled that widespread publicity of facts relating to a claim can constitute constructive knowledge sufficient to trigger a duty to inquire. *See, e.g., Kronisch, supra,* 150 F.3d at 121 (televised hearings on CIA drug testing experiments); *Hughes v. Vanderbilt Univ.,* 215 F.3d 543, 548, (6th Cir. 2000) (significant media attention in 1990's to experiments); *United Klans of Am. v. McGovern,* 621 F.2d 152, 154 (5th Cir. 1980) ("Where events receive such widespread publicity, Plaintiffs may be charged with knowledge of their occurrence.")(citations omitted).

Here, news coverage about Scarpa, and the purported link between the DeVecchio-Scarpa relationship and the murder of Grancio, was pervasive as early as 1994 throughout the New York metropolitan area, in which plaintiff resides. *See* Grover Dec., ¶ 23 and Exhibits L to U thereto. For this reason alone, plaintiff had constructive knowledge of the facts she relies upon in the complaint. *See, e.g., Hughes, supra,* 215 F.3d at 548 (attributing knowledge of facts of local notoriety to local resident).

Moreover, even if plaintiff only had "suspicions" concerning her claim, she "would have still been under a duty to diligently investigate" them. *Kronisch, supra,* 150 F.3d at 122. Given the widespread publicity of the sensational theory that the FBI may have been complicit in murders committed by Scarpa in the early 1990s, including the well-publicized gangland-style

killing of Grancio in 1992, plaintiff had a duty to investigate her claim against the FBI and DeVecchio. *See, e.g., Kronisch, supra,* 150 F.3d at 121. Once her duty to inquire arose, she was charged with all the knowledge that she would have acquired through the exercise of reasonable diligence. *Kronisch, supra,* 150 F.3d at 123-24. Accordingly, given the applicable three-year statute of limitations, her *Bivens* claim is barred and should be dismissed under Rule 12(b)(6).[10]

Further, summary judgment should be granted because any reasonable jury would find that the plaintiff should have discovered the bases of her claims if she had exercised reasonable diligence. *See, e.g., Kronisch, supra,* 150 F.3d at 122, 124; *Corcoran v. Sinclair*, No. 97 CIV. 9286, 1999 WL 177444, at *11 (S.D.N.Y. 1999) (Plaintiff was aware of the critical facts in support of his claim for at least six years prior to filing his action.). Accordingly, plaintiff's *Bivens* claim is barred as a matter of law because it was not filed within the applicable three-year statute of limitations.

## III.   A STAY OF ALL CLAIMS THAT SURVIVE THIS MOTION IS WARRANTED IN LIGHT OF THE CRIMINAL CASE

In the event that this Court determines that dismissal or summary judgment is not warranted on all claims contained in the complaint, those claims remaining should be stayed pending resolution of the criminal case. It is well-settled that a district court has the authority to stay a proceeding when the interests of justice so require. *Crawford & Sons, Ltd. v. Besser*, 298 F. Supp. 2d 317 (E.D.N.Y. 2004). In determining whether to stay an action pending the outcome of a criminal case, this Court should consider the following factors: (1) the extent to which the issues in the criminal case overlap with those presented in this action; (2) the status of the criminal case, including whether DeVecchio has been indicted; (3) the private interests of the

---

[10]   Where the Court may consider matters of which judicial notice may be taken, resolution on a motion to dismiss is appropriate. *See Shah v. Meeker*, 435 F.3d 244, 249 (2d Cir. 2006); *Vasquez v. City of New York*, No. 99 Civ. 4606, 2000 WL 869492, at *1, n.1 (S.D.N.Y. June 29, 2000)(relying on public documents); FED. R. EVID. 201(b)(2).

plaintiff in proceeding expeditiously; (4) the private interests of, and the burden on, DeVecchio; and (5) the interests of the courts and the public. *Crawford, supra,* 298 F. Supp. 2d at 319; *see also Hicks v. City of New York,* 268 F. Supp. 2d 238, 241 (E.D.N.Y. 2003). Courts must evaluate these factors on a case by case basis, "with the basic goal being to avoid prejudice." *Volmar Distributors v. New York Post,* 152 F.R.D. 36 (S.D.N.Y. 1993). As demonstrated below, a stay here is necessary to avoid prejudice to DeVecchio.

### A. The issues in the criminal case and this one substantially overlap, thus warranting a stay

This Court has held that "a stay of civil proceedings is most likely to be granted where the civil and criminal actions involve the same subject matter." *Crawford, supra,* 298 F. Supp. 2d at 319; *see also Trustees of the Plumbers and Pipefitters National Pension Fund v. Transworld Mechanics, Inc.,* 886 F. Supp. 1134, 1139 (S.D.N.Y. 1995); *Volmar, supra,* 152 F.R.D. at 39 ("The most important factor at the threshold is the degree to which the civil issues overlap with the criminal issues.")(citations and internal quotation marks omitted). Importantly, the conduct underlying both actions need not be identical; to grant a stay, this Court need only determine that the outcome of the criminal case may affect the outcome of this action. *See Hicks, supra,* 268 F. Supp. 2d at 241-242. The significance of the overlap factor is readily apparent: the danger of self-incrimination is most likely where issues between the civil and criminal cases overlap. *See Trustees of the Plumbers, supra,* 886 F. Supp. at 1139. A simple approach to gauging the overlap is to compare the criminal indictment and the related civil complaint. *See, e.g., id.*

A comparison of the indictment (a copy of which is annexed to the Grover Dec. as Exhibit A) and the affidavit of Assistant District Attorney Ann Bordley, dated May 24, 2006, which was submitted in the criminal case and is annexed to the Grover Dec. as Exhibit W

("Bordley Aff."), together with the civil complaint here, demonstrates that the facts underlying both cases overlap significantly. The indictment contains four counts of murder, each of which allege that DeVecchio did "solicit, request, command, importune and intentionally aid" Scarpa in shooting each victim to death, the same theory that forms the basis of the present Complaint. The Bordley affidavit specifically acknowledges that the Grancio homicide was an integral part of its investigation of the District Attorney's investigation that led to the initiation of the grand jury investigation, and is still being investigated. *See* Grover Dec., ¶ 28, *citing* Bordley Aff. at Exhibit W to the Grover Dec.

The complaint here alleges that DeVecchio was a "supporter, booster, advocate, sponsor, supervisor, promoter, facilitator, and aid" of Scarpa in connection with the commission of "Scarpa's criminal campaign," including the murder of Grancio. Complaint, ¶ 61. Unless plaintiff is prepared to litigate this case in a complete vacuum, the agent-informant relationship between DeVecchio and Scarpa, as well as the other allegations of improper conduct, are all central to the proof in the criminal case. There is simply no way to carve that out. Nor do we believe that plaintiff would chose to do so.

Further, the complaint clearly reveals that plaintiff intends to explore facts, events, conduct and relationships well beyond the Grancio murder. For example, plaintiff alleges at one point that DeVecchio aided Scarpa in "a campaign of murders ... in addition to the murder of Nicholas Grancio ... ." Complaint, ¶ 61(D). Elsewhere in the complaint, plaintiff alleges that from "1980 through at least 1992, DeVecchio ... knowingly allowed, protected, encouraged and facilitated Scarpa's commissions of a broad range of crimes, including, but not limited to fraud, robbery, loansharking, and murder on a ongoing and repeated basis." Complaint, ¶ 41. In short, it is inescapable that this action will involve the same facts, same events and same conduct that

will be explored in the criminal case.   It is equally inescapable that because of this overlap, DeVecchio's Fifth Amendment right against self-incrimination will be directly implicated in the defense of this civil suit if a stay is not granted.

**B.  The status of the criminal case supports the grant of a stay**

As this Court noted in *Hicks*, the "strongest argument for granting a stay is where a party is under criminal indictment… ."  *See Hicks, supra,* 268 F. Supp. 2d at 242.  The reason for this is evident – to avoid the evils that proceeding with both the criminal and civil cases could "(1) undermine a party's Fifth Amendment privilege against self-incrimination; and (2) expose the basis of a party's criminal defense in advance of trial; or (3) otherwise prejudice the criminal or civil case." *Id.*

It is indisputable that the criminal indictment arises from DeVecchio's actions as Scarpa's "handler."  Thus granting DeVecchio's request for a stay will comport with this Court's practice of "generally stay[ing] a civil proceeding when a criminal investigation has ripened into an indictment against the proponent of a stay." *Id.*  Moreover, a stay is appropriate in this action even though Grancio's homicide is not included in the Indictment. *See, accord, United States v. The Leasehold Interests in 188 Avenue D,* 754 F. Supp. 282 (E.D.N.Y. 1990).  In the *Leasehold* decision, this Court held that opposition to a stay is without merit on the basis that the claimant in the civil case is not a party to the criminal case where "the criminal trial is 'related' to this proceeding, in the sense that the activities that allegedly took place . . . form the basis of some of the acts alleged in the criminal indictment." *Leasehold, supra,* 754 F. Supp. at 288.  The same circumstance exists here.

Additionally, there is no prohibition which would prevent the D.A.'s Office from seeking an indictment against DeVecchio for the Grancio murder on the basis of information it learns in this action.  Indeed, this remains a possibility.  This would also implicate DeVecchio's Fifth

Amendment rights, and it weighs heavily in favor of providing a safeguard to that right in the form of a stay.  By issuing a stay, DeVecchio will not be forced to choose between defending his civil action and effectively forfeiting the civil suit.

### C.  The private and public interests weigh in favor of the issuance of a stay

More than 15 years have lapsed since the Grancio murder, and almost two years have lapsed since plaintiff claims to have first learned of DeVecchio's alleged involvement.  *See* Complaint, ¶¶ 8, 25 and 31.  Plaintiff cannot seriously argue that she will be prejudiced by a delay that cannot have any additional impact on the already stale evidence.  In fact, the results of the criminal case may streamline this action and plaintiff's burden in that "a conviction or acquittal in the [criminal case] may negate or buttress some or all of plaintiff's claims." *See Crawford, supra,* 298 F. Supp. 2d at 320; *see also Trustees of the Plumbers, supra,* 886 F. Supp. at 1140.  In any event, where a defendant's Fifth Amendment rights and the inconvenience to the plaintiff compete, the latter must bow to the defendant's Constitutional right. *Id.; see also Volmar, supra,* 152 F.R.D. at 40.

A stay in this action would also serve the interests of the Court and the public.  As this Court has previously held, a stay should be granted when it will "promote efficiency and avoid duplication as this Court and the parties would have the benefit of the transcripts and rulings in the criminal action." *Crawford, supra,* 298 F. Supp. 2d at 319.  Here, where the same factual background underlies both cases, involving many (if not all) of the same witnesses, judicial efficiency would be served by staying this action.  Furthermore, the duration of the stay will be relatively short, since the criminal case is scheduled to begin in less than four months.  *See Trustees of the Plumbers, supra,* 886 F. Supp. at 1139.

33

Assessing the totality of the circumstances, including the pending indictment and the significant overlap of this action with the criminal case, justice requires that this action be stayed to avoid prejudice to DeVecchio.

### CONCLUSION

For the foregoing reasons and the reasons set forth in the motions filed by defendant DeVecchio's co-defendants, which are incorporated herein, DeVecchio respectfully requests that this Court either dismiss each and every count in the complaint pursuant to Fed.R.Civ.P. 12(b)(6), or grant summary judgment pursuant to Fed.R.Civ.P. 56, or in the alternative, issue an Order staying this action until the conclusion of the criminal case.

Dated: New York, New York
     January 29, 2007

                        THOMPSON HINE LLP
                        *Attorneys for Defendant R. Lindley DeVecchio*

                        By:    *Joseph B. Koczko*
                             Douglas E. Grover (DG 6037)
                             Joseph B. Koczko (JK 7259)
                        335 Madison Avenue
                        New York, New York 10017
                        Tel.: 212.344.5680