UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
MARIA GRANCIO, individually and in her capacity
as Executrix and Personal Representative of the Estate
of Nicholas P. Grancio,

                    Plaintiff,

         - against -

R. LINDLEY DEVECCHIO,
CHRISTOPHER FAVO,
UNITED STATES OF AMERICA,

                  Defendants.
------------------------------------------------------------------X

Case No. 06 CV 00069 (FB)(CLP)

**DEFENDANT R. LINDLEY
DEVECCHIO'S REPLY STATEMENT
OF FACTS PURSUANT TO
<u>LOCAL CIVIL RULE 56.1</u>**

Pursuant to Local Civil Rule 56.1, defendant R. Lindley DeVecchio ("DeVecchio"), by

his attorneys, Thompson Hine LLP, hereby replies to Part II of Plaintiff Maria Grancio's

Consolidated Local Rule 56.1 Statement ("Grancio Rule 56.1 Statement"), which was filed in

response to DeVecchio's Statement of Undisputed Facts Pursuant to Local Civil Rule 56.1 ("the

DeVecchio Rule 56.1 Statement").[1] For the convenience of the Court, the DeVecchio Rule 56.1

and Grancio Rule 56.1 Response Statements are each set forth, respectively, in bold and italic.

As can readily be seen, comparison of these statements clearly demonstrate that there is no

genuine issue of material fact to be tried. Accordingly, defendant is entitled to judgment as a

matter of law.

## GENERAL OBJECTIONS TO PLAINTIFF'S RESPONSIVE 56.1 STATEMENT

      1.      Plaintiff has failed to offer any facts or admissible evidence, as required by Fed.

R. Civ. P. 56(c) and (e) and Local Civil Rule 56.1 of the Eastern District of New York, to refute

---

[1] In addition to defendant's replies set forth herein, DeVecchio also incorporates by reference and joins all
statements and objections made by co-counsel on behalf of co-defendants Christopher Favo and the United States in
reply or response to Plaintiff Maria Grancio's Consolidated Local Rule 56.1 Statement.

the DeVecchio Rule 56.1 Statement; thus, plaintiff's opposition should be rejected, and the DeVecchio Rule 56.1 statement should be deemed undisputed.

2.    To the extent that plaintiff's response fails to dispute the substance of the respective statement of fact by DeVecchio, that statement should be deemed undisputed.

3.    To the extent that the documents and/or testimony cited by plaintiff in support of her responses fail to support the proposition for which plaintiff has cited such documents and/or testimony, plaintiff's responses should be rejected, and the respective DeVecchio statements should be deemed undisputed.

4.    To the extent that plaintiff's responsive statements are argumentative and unsupported by evidence, these assertions must be rejected.  Plaintiff cannot raise an issue of fact merely by disagreement or speculation.

5.    To the extent that plaintiff's responsive statements cite to compendia of testimony and entire transcripts of proceedings, rather than particular pages and line numbers of testimony and proceedings, or to reports, rather than particular pages, such statements should be rejected for failing to cite to evidence with specificity as required by Local Civil Rule 56.1.

6.    To the extent that plaintiff's responsive statements are offered as affirmative evidence in support of plaintiff's case-in-chief, such statements should be rejected because they are immaterial to the instant motion.

7.    To the extent that plaintiff's responsive statements are offered as affirmative evidence in support of plaintiff's case-in-chief, such statements should be rejected because they constitute unsupported allegations, speculation and/or legal conclusions, rather than facts, and fail to cite to admissible evidence, as required by Fed. R. Civ. P. 56 and Local Civil Rule 56.1.

8.    To the extent that plaintiff's responsive statements argue that a jury may disagree with or find implausible the sworn statements of fact set forth in the DeVecchio Rule 56.1

Statement, these assertions must be rejected as argumentative. Plaintiff cannot raise an issue of fact merely by claiming that a jury might disagree with facts plaintiff does not like.

9.     To the extent that plaintiff's responsive statements rely upon hearsay, such statements should be rejected for failing to cite to admissible evidence, as required by Fed. R. Civ. P. 56 and Local Civil Rule 56.1.

10.     To the extent that plaintiff's responsive statements rely upon exhibits that plaintiff has failed to establish the authenticity and accuracy of, such responses or additional statements should be rejected for failing to cite to admissible evidence, as required by Fed. R. Civ. P. 56 and Local Civil Rule 56.1.

Subject to the foregoing General Objections and all additional specific objections set forth below, defendant hereby replies as follows:

## THE UNDISPUTED FACTS SHOW DEFENDANT DEVECCHIO'S LACK OF INVOLVEMENT IN THE GRANCIO MURDER

### DEVECCHIO UNDISPUTED FACT NO. 1

**Neither Gregory Scarpa, Sr. ("Scarpa"), Larry Mazza ("Mazza") or James DelMasto ("DelMasto") were aware of any police surveillance when they discovered Nicholas Grancio ("Grancio") on January 7, 1992. Grover Dec.[2] Exhibit K Mazza Tr.[3] at 99:23-100:3; 104:24–105:14.**

> *Plaintiff's Response No. 1:*
>
> *Mrs. Grancio disputes this assertion and asserts that all three were aware of the police surveillance and discussed it. [Exhs. 27, 28; Schoen Aff.]*

---

[2] "Grover Dec." refers to the Declaration of Douglas E. Grover dated January 29, 2007 and submitted in support of defendant's motion for summary judgment.

[3] "Mazza Tr." refers to the Transcript of Testimony of Larry Mazza in *Orena v. U.S.,* United States District Court, Eastern District of New York, Case No. CV-96-1474 (Weinstein, S.J.), dated January 7, 2004.

DeVecchio Reply No. 1:

Plaintiff's response fails to cite to any evidence that would be admissible as required by Fed. R. Civ. P. 56(c) and (e) and Local Civil Rule 56.1, and thus concedes the facts asserted in DeVecchio Fact No. 1. First, in support of her response, plaintiff cites to Exhibit 27, the Declaration of Flora Edwards ("Edwards Declaration"), and the Affirmation of David Schoen, plaintiff's attorney ("Schoen Affirmation"). The statements contained within the Edwards Declaration and Schoen Affirmation constitute unsupported allegations, speculation and legal conclusions, rather than facts, and are inadmissible hearsay. The Edwards Declaration and Schoen Affirmation fail to provide any admissible evidence as required by Fed. R. Civ. P. 56(c) and (e) and Local Civil Rule 56.1.

Second, with respect to the Edwards Declaration, it is contradicted by the sworn testimony of Mazza himself, who testified (on direct examination by Ms. Edwards at an earlier proceeding) that neither he, Scarpa nor DelMasto were aware of any police surveillance when they discovered Grancio on January 7, 1992. Grover Dec.[4] Exhibit K Mazza Tr.[5] at 99:23-100:3; 104:24–105:14.

Third, plaintiff cites to Exhibit 28, which is identified as an excerpt from a report concerning Scarpa. Nothing in the excerpt refers to any police surveillance of Grancio, or even the details of Grancio's murder. Exhibit 28 appears to be completely unrelated to this case and contains nothing in support of plaintiff's response.

Finally, plaintiff's response offers conclusory allegations in support of plaintiff's case-in-chief, and these allegations are immaterial to defendant's motion.

Accordingly, DeVecchio Fact No. 1 should be deemed admitted.

---

[4] "Grover Dec." refers to the Declaration of Douglas E. Grover dated January 29, 2007 and submitted in support of defendant's motion for summary judgment.

**DeVecchio Undisputed Fact No. 2**

**Scarpa, Mazza and DelMasto were watching a social club of a Colombo crime family member on January 7, 1992, when Grancio showed up unexpectedly. Mazza Tr. at 98:6-15; 109:4-110:14.**

> *Plaintiff's Response No. 2:*
>
> *They also were looking for Grancio and others when they found Grancio.*
> *[Exh. 28; 5]*

DeVecchio Reply No. 2:

Plaintiff's response fails to cite to any evidence that would be admissible as required by

Fed. R. Civ. P. 56(c) and (e) and Local Civil Rule 56.1 and thus concedes the facts asserted in

DeVecchio Fact No. 2. In support of her response, plaintiff cites to Exhibits 5 and 28. Exhibits

5 and 28 are unrelated to and contain nothing in support of her response. Further, plaintiff's

response offers conclusory allegations with no support, and these allegations are immaterial to

defendant's motion.

Accordingly, DeVecchio Fact No. 2 should be deemed admitted.

**DeVecchio Undisputed Fact No. 3**

**On January 7, 1992, Scarpa, Mazza and DelMasto left Scarpa's house looking for anyone on the Orena side of the Colombo crime family that they could find. Mazza Tr. at 108:20-109:3.**

> *Plaintiff's Response No. 3:*
>
> *They were looking for Grancio and others. [Exh. 28; 5]*

DeVecchio Reply No. 3:

Plaintiff's response fails to cite to any evidence that would be admissible as required by

Fed. R. Civ. P. 56(c) and (e) and Local Civil Rule 56.1 and thus concedes the facts asserted in

DeVecchio Fact No. 3. In support of her response, plaintiff cites to Exhibits 5 and 28. Exhibits

---

[5] "Mazza Tr." refers to the Transcript of Testimony of Larry Mazza in *Orena v. U.S.,* United States District Court, Eastern District of New York, Case No. CV-96-1474, dated January 7, 2004.

5 and 28 are unrelated to and contain nothing in support of her response.  Further, plaintiff's

response offers conclusory allegations with no support, and these allegations are immaterial to

defendant's motion.

Accordingly, DeVecchio Fact No. 3 should be deemed admitted.

**DEVECCHIO UNDISPUTED FACT NO. 4**

**From the moment Scarpa, Mazza and DelMasto first saw Grancio on January 7, 1992, until the moment that Grancio was killed, there was no time to make any telephone calls. Mazza Tr. at 113:15-18.**

*Plaintiff's Response No. 4:*

*There was time to make phone calls and at least one phone call was made to Lindley DeVecchio. [Exhs. 27, 28; Schoen Aff.]*

DEVECCHIO REPLY NO. 4:

Plaintiff's response fails to cite to any evidence that would be admissible as required by

Fed. R. Civ. P. 56(c) and (e) and Local Civil Rule 56.1 and thus concedes the facts asserted in

DeVecchio Fact No. 4.  First, in support of her response, plaintiff cites to the Edwards

Declaration and Schoen Affirmation.  The statements contained within the Edwards Declaration

and Schoen Affirmation constitute unsupported allegations, speculation and legal conclusions

rather than facts and are inadmissible hearsay.  The Edwards Declaration and Schoen

Affirmation fail to provide any admissible evidence as required by Fed. R. Civ. P. 56(c) and (e)

and Local Civil Rule 56.1.

Second, with respect to the Edwards Declaration, her declaration is refuted and

contradicted by Mazza himself when he specifically testified that he, Scarpa and DelMasto came

upon Grancio quite unexpectedly, and that: "[f]rom the moment [they] first saw Grancio till the

moment he was killed, there was no time to make any phone calls." Mazza Tr. at 113:15-18.

Third, plaintiff cites to Exhibit 28, which is identified as an excerpt from a report regarding Scarpa. Nothing in Exhibit 28 mentions the details of Grancio's death. Exhibit 28 is unrelated to and contains nothing in support of plaintiff's response.

Further, plaintiff's response offers conclusory allegations in support of plaintiff's case-in-chief, and these allegations are immaterial to defendant's motion.

Accordingly, DeVecchio Fact No. 4 should be deemed admitted.

**DEVECCHIO UNDISPUTED FACT NO. 5**

**DeVecchio never received a telephone call from Scarpa on January 7, 1992, during which Scarpa asked DeVecchio to remove any surveillance of Grancio. DeVecchio Aff.[6] ¶ 3; Mazza Tr. at 98:22-99:5; 103:5-19.**

*Plaintiff's Response No. 5:*

*DeVecchio received phone calls from Scarpa on 1/7/92 and in at least one such phone call Scarpa complained to DeVecchio about police surveillance on Grancio and demanded to have it removed. [Exh. 28, 27; Schoen Aff.]*

DEVECCHIO REPLY NO. 5:

Plaintiff's response fails to cite any evidence that would be admissible as required by Fed. R. Civ. P. 56(c) and (e) and Local Civil Rule 56.1, and thus concedes the facts asserted in DeVecchio Fact No. 5. First, in support of her response, plaintiff cites to the Edwards Declaration and Schoen Affirmation. The statements contained within the Edwards Declaration and Schoen Affirmation constitute unsupported allegations, speculation and legal conclusions, rather than facts, and are inadmissible hearsay. The Edwards Declaration and Schoen Affirmation fail to provide any admissible evidence as required by Fed. R. Civ. P. 56(c) and (e) and Local Civil Rule 56.1.

---

[6] "DeVecchio Aff." refers to the Affidavit of R. Lindley DeVecchio, sworn to on January 29, 2007.

Second, with respect to the Edwards Declaration, her statements are contradicted by Mazza himself when he specifically testified (in response to examination by Ms. Edwards) that he did not remember Scarpa calling DeVecchio on the day of Grancio's death. Mazza Tr. at 98:22-99:5; 103:5-19.

Third, plaintiff cites to Exhibit 28, which is identified as an excerpt from a report regarding Scarpa. Nothing in Exhibit 28 provides details about Grancio's death. Exhibit 28 is unrelated to and contains nothing in support of plaintiff's response.

Further, plaintiff's response offers conclusory allegations in support of plaintiff's case-in-chief, and these allegations are immaterial to defendant's motion.

Accordingly, DeVecchio Fact No. 5 should be deemed admitted.

## DEVECCHIO UNDISPUTED FACT NO. 6

**DeVecchio did not call Christopher Favo ("Favo") on January 7, 1992, to direct Favo to terminate any surveillance of Grancio. DeVecchio Aff. ¶¶ 3-4; Favo Aff.[7] ¶¶ 17-18.**

> *Plaintiff's Response No. 6:*
>
> *Scarpa called DeVecchio to have the surveillance removed and shortly afterward Favo called the police officers on surveillance and directed them to leave their surveillance post. [Exhs. 27, 28, Schoen Aff.] Mrs. Grancio is entitled to ask jurors to draw the inference that DeVecchio had Favo call to remove the surveillance, given the relationship between them, Scarpa's relationship with DeVecchio and their efforts together to kill those Scarpa perceived as his enemies, as well as DeVecchio's other efforts at facilitating Scarpa's criminal agenda, and his use of Favo, unwittingly or not, to do so (e.g. by having him get addresses for Scarpa's enemies, loan shark customers, etc.).*

DEVECCHIO REPLY NO. 6:

Plaintiff's response fails to cite to any evidence that would be admissible as required by Fed. R. Civ. P. 56(c) and (e) and Local Civil Rule 56.1, and thus concedes the facts asserted in

---

[7] "Favo Aff." refers to the Affidavit of Christopher Favo, sworn to on January 17, 2007.

DeVecchio Fact No. 6.   First, in support of her response, plaintiff cites to the Edwards Declaration and Schoen Affirmation.  The statements contained within the Edwards Declaration and Schoen Affirmation constitute unsupported allegations, speculation and legal conclusions rather than facts and are inadmissible hearsay.   The Edwards Declaration and Schoen Affirmation fail to provide any admissible evidence as required by Fed. R. Civ. P. 56(c) and (e) and Local Civil Rule 56.1.

Second, plaintiff cites to Exhibit 28, which is identified as an excerpt from a report relating to Scarpa.  Nothing in Exhibit 28 mentions the details of Grancio's death.   Exhibit 28 is unrelated to and contains nothing in support of plaintiff's response.

Third, both DeVecchio and Favo have submitted sworn statements stating that DeVecchio neither called Detective Simone nor directed Favo to contact anyone to terminate surveillance of Grancio.  DeVecchio Aff. ¶¶ 3-4; Favo Aff.[8] ¶¶ 17-18.

Further, plaintiff's response offers conclusory allegations in support of plaintiff's case-in-chief, and these allegations are immaterial to defendant's motion.

Accordingly, DeVecchio Fact No. 6 should be deemed admitted.

---

[8] "Favo Aff." refers to the Affidavit of Christopher Favo, sworn to on January 17, 2007.

## DeVecchio Undisputed Fact No. 7

**On January 7, 1992, Favo called former New York City Detective Joseph Simone ("Simone") and requested that he and his partner attend a meeting at FBI headquarters at 26 Federal Plaza ("FBI Headquarters").  Favo Aff. ¶¶ 16-18.**

> *Plaintiff's Response No. 7:*
>
> *Favo directed Simone and his partner to attend the meeting, notwithstanding Simone's protestations regarding the impact on his surveillance of Grancio. [Exh. 25]*

## DeVecchio Reply No. 7:

Plaintiff's response fails to cite to any evidence that would be admissible as required by

Fed. R. Civ. P. 56(c) and (e) and Local Civil Rule 56.1, and thus concedes the facts asserted in

DeVecchio Fact No. 7.

Further, plaintiff's response offers additional allegations in support of plaintiff's claims

that are immaterial to defendant's motion.

## DeVecchio Undisputed Fact No. 8

**At the time that Favo called Simone on January 7, 1992, Favo did not know that Simone and his partner were watching Grancio.  Favo Aff. ¶ 18.**

> *Plaintiff's Response No. 8:*
>
> *At the time Favo called Simone, he knew that Simone and his partner were watching Grancio.  [Exh. 25]*

## DeVecchio Reply No. 8:

Plaintiff's response fails to cite to any evidence that would be admissible as required by

Fed. R. Civ. P. 56(c) and (e) and Local Civil Rule 56.1, and thus concedes the facts asserted in

DeVecchio Fact No. 8.  Plaintiff cites without specificity to Exhibit 25, Declaration of Joseph

Simone, to allege that defendant Favo knew Simone was observing Grancio.  Nothing in Exhibit

25 establishes that Favo had knowledge of the alleged surveillance when Favo made the call to

Simone.

## DeVecchio Undisputed Fact No. 9

**Between 12:45 PM and 1:30 PM on January 7, 1992, Simone and his partner were observing and following Grancio in a car. Grover Dec., Exhibit G, Simone Tr.[9] at 134:8-135:14; 148:9-18; 150:2-4.**

*Plaintiff's Response No. 9:*

*Simone and his partner had Grancio under surveillance at various times. [Exh. 15]*

DeVecchio Reply No. 9:

Plaintiff's response admits that Simone and his partner observed Grancio. Exhibit 15, the Investigators Daily Activity Report ("DAR") for Joseph Simone, shows that on January 7, 1992 from 12:45 PM to 1:30 PM, Simone was on surveillance. Simone has testified that the DAR in Plaintiff's Exhibit 15 show that they were on surveillance of Grancio from 12:45 PM to 1:30 PM. *See* Plaintiff's Exhibit 15; *see also* Grover Dec., Exhibit G, Simone Tr.[10] at 134:8-135:14; 148:9-18; 150:2-4. Further, plaintiff's response does not dispute any of the remaining facts asserted in DeVecchio Fact No. 9. Accordingly, DeVecchio Fact No. 9 should be deemed admitted.

## DeVecchio Undisputed Fact No. 10

**At 1:30 PM, on January 7, 1992, Simone and his partner were en route to FBI Headquarters. Simone Tr. at 135:15-24; 150:2-4.**

*Plaintiff's Response No. 10:*

*The Daily Activity Report from 1/7/92 indicates that from 1:30 p.m. to 2:00 p.m. on 1/7/92, Simone and his partner were en route to 26 Federal Plaza. [Exh. 15]*

---

[9] "Simone Tr." refers to the Transcript of Testimony of Joseph Simone in *Orena v. U.S.,* United States District Court, Eastern District of New York, Case No. CV-96-1474, dated January 7, 2004.

[10] "Simone Tr." refers to the Transcript of Testimony of Joseph Simone in *Orena v. U.S.,* United States District Court, Eastern District of New York, Case No. CV-96-1474, dated January 7, 2004.

DEVECCHIO REPLY NO. 10:

Plaintiff's response admits DeVecchio Fact No. 10 and thus should be deemed admitted.

All parties agree that Simone left his surveillance of Grancio by 1:30 PM.

## DEVECCHIO UNDISPUTED FACT NO. 11

**Grancio's murder occurred on January 7, 1992, at 1520 hours (3:20 PM). Grover Dec., Exhibit J, Report of Medical Examiner of New York, dated January 7, 1992; *see also* Grover Dec., Exhibit I, New York Police Department AIDED Report (identifying time of death at 3:15 PM).**

*Plaintiff's Response No. 11:*

*This is an approximate time of death.*

DEVECCHIO REPLY NO. 11:

Plaintiff's response does not dispute the facts asserted in DeVecchio Fact No. 11; instead, plaintiff concedes the facts asserted in DeVecchio Fact no. 11 that Grancio's murder was at or about 3:15 PM or 3:20 PM, almost a full two hours after Simone had left his surveillance of Grancio. Further, plaintiff's response fails to set forth any specific fact showing that there is a genuine issue for trial, and she cites no evidence that would be admissible as required by Fed. R. Civ. P. 56(c) and (e) and Local Civil Rule 56.1. Accordingly, DeVecchio Fact No. 11 should be deemed admitted.

## DEVECCHIO UNDISPUTED FACT NO. 12

**While at the FBI Headquarters on January 7, 1992, Simone heard that Grancio was shot at 4:00 PM. Simone Tr. at 136:11-20.**

*Plaintiff's Response No. 12:*

*Simone learned that Grancio was shot while he (Simone) was at 26 Federal Plaza. [Exh. 25]*

DEVECCHIO REPLY NO. 12:

Plaintiff's response does not dispute the facts asserted in DeVecchio Fact No. 12; instead, plaintiff concedes the facts asserted in DeVecchio Fact no. 12 that Simone was at FBI

Headquarters when he learned that Grancio had been shot.  Further, plaintiff's response fails to

set forth any specific fact showing that there is a genuine issue for trial and cites to no evidence

that would be admissible as required by Fed. R. Civ. P. 56(c) and (e) and Local Civil Rule 56.1.

Accordingly, DeVecchio Fact No. 12 should be deemed admitted.

## THE UNDISPUTED FACTS RELATING TO THE STATUTE OF LIMITATIONS BAR PLAINTIFF'S *BIVENS* CLAIM[11]

### DEVECCHIO UNDISPUTED FACT NO. 13

**The "exposure of Mr. Scarpa's double life" as an FBI informant "raised questions about whether the F.B.I. funneled confidential information to Mr. Scarpa and immunized him from a prison sentence for decades." Scarpa "confessed that he led the hit team that shot [Grancio]." *The Mobster Was a Mole for the F.B.I.; Tangled Life of Mafia Figure Who Died of AIDS Is Exposed,* N.Y. TIMES, Nov. 20, 1994, at 49. (Grover Dec., Exhibit L).**

*Plaintiff's Response No. 13*:

> *Mrs. Grancio acknowledges that the media pieces excerpted in these paragraphs reported what is quoted, based on the copies provided with DeVecchio's motion papers. She did not read the paper at the time these pieces appeared. [Exh. 24]. She expressly disputes the assertion in footnote 6 on page 3 of the L.R. 56.1 statement insofar as it asserts that any statements provided or any other "evidence" demonstrate "that the allegations underlying the instant action and the individuals with first-hand knowledge regarding plaintiff's claims have long been public, and plaintiff knew or should have known of the information sufficient to trigger the accrual of her instant claims." These statements do not demonstrate anything of the sort.*

### DEVECCHIO REPLY NO. 13:

Plaintiff's response does not dispute or offer any evidence controverting any of the facts

asserted in DeVecchio Fact No. 13; instead, plaintiff's response offers conclusory allegations in

---

[11]   The DeVecchio Rule 56.1 Statement is comprised almost entirely of statements reported in newspapers, magazines and television media between 1991 and 1999. Defendant accepts as true, and offers as undisputed, the fact that these statements were published. Defendant, however, does not accept as true the substance of the news reports set forth in this Rule 56.1 Statement. Specifically, these statements are set forth herein to demonstrate, as a fact, that the allegations underlying the instant action and the individuals with first-hand knowledge regarding plaintiff's claims have long been public, and plaintiff knew or should have known of information sufficient to trigger the accrual of her instant claims.  Thus, DeVecchio's Rule 56.1 Statement is accepted as true only for the purposes of defendant's instant motion.

support of plaintiff's case-in-chief, and these allegations are immaterial to defendant's motion.

Accordingly, DeVecchio Fact No. 13 should be deemed admitted.

## DeVecchio Undisputed Fact No. 14

**"The prosecutors said the agent [DeVecchio] funneled to [Scarpa] information about his enemies' possible hideaways during a[n] internal Colombo war from 1991 to 1993 in which 10 men were killed. . . . In effect, the prosecutors indicated that while Mr. Scarpa was a mole for the [FBI] inside the Mafia, he was also getting potentially valuable information from Mr. DeVecchio."** *Prosecutors Say F.B.I. Agent Passed Information to a Colombo Mob Figure*, N.Y. TIMES, May 9, 1995, at 3. (Grover Dec., Exhibit M).

*Plaintiff's Response No. 14:*

*Same as Plaintiff's Response No. 13.*

DeVecchio Reply No. 14:

Plaintiff's response does not dispute or offer any evidence controverting any of the facts

asserted in DeVecchio Fact No. 14; instead, plaintiff's response offers conclusory allegations in

support of plaintiff's case-in-chief, and these allegations are immaterial to defendant's motion.

Further, plaintiff fails to respond separately and specifically as required by Local Civil Rule

56.1.  Accordingly, DeVecchio Fact No. 14 should be deemed admitted.

## DeVecchio Undisputed Fact No. 15

**"[F]eds believe that DeVecchio . . . leaked critical information to the homicidal Scarpa on at least eight occasions."** *The Lawman & Mafioso FBI Big Aided Mob, Fed Sez*, DAILY NEWS, May 10, 1995, at 7. (Grover Dec., Exhibit N).

*Plaintiff's Response No. 15:*

*Same as Plaintiff's Response No. 13.*

DeVecchio Reply No. 15:

Plaintiff's response does not dispute or offer any evidence controverting any of the facts

asserted in DeVecchio Fact No. 15; instead, plaintiff's response offers conclusory allegations in

support of plaintiff's case-in-chief, and these allegations are immaterial to defendant's motion.

Further, plaintiff fails to respond separately and specifically as required by Local Civil Rule 56.1. Accordingly, DeVecchio Fact No. 15 should be deemed admitted.

## DeVecchio Undisputed Fact No. 16

**The "FBI gave Scarpa a pass to commit crime" and knew that Scarpa had "shotgunned rival gangster [Grancio]." *Mobster Had Deal with FBI*, Daily News, May 11, 1995, at 30. (Grover Dec., Exhibit O).**

> *Plaintiff's Response No. 16:*

> *Same as Plaintiff's Response No. 13.*

## DeVecchio Reply No. 16:

Plaintiff's response does not dispute or offer any evidence controverting any of the facts asserted in DeVecchio Fact No. 16; instead, plaintiff's response offers conclusory allegations in support of plaintiff's case-in-chief, and these allegations are immaterial to defendant's motion. Further, plaintiff fails to respond separately and specifically as required by Local Civil Rule 56.1. Accordingly, DeVecchio Fact No. 16 should be deemed admitted.

## DeVecchio Undisputed Fact No 17.

**"At this latest trial of six reputed gangsters charged with participating in the Colombo family war between 1991 and 1993, federal prosecutors acknowledged that FBI Special Agent R. Lindley DeVecchio, assigned to the elite squad investigating the Colombo family, 'may have' supplied information to Scarpa about his rivals." *Mob Trial Points to Ties Between FBI, Gangsters*, Newsday, May 29, 1995, at A15. (Grover Dec., Exhibit P).**

> *Plaintiff's Response No. 17:*

> *Same as Plaintiff's Response No. 13.*

## DeVecchio Reply No. 17:

Plaintiff's response does not dispute or offer any evidence controverting any of the facts asserted in DeVecchio Fact No. 17; instead, plaintiff's response offers conclusory allegations in support of plaintiff's case-in-chief, and these allegations are immaterial to defendant's motion.

Further, plaintiff fails to respond separately and specifically as required by Local Civil Rule

56.1. Accordingly, DeVecchio Fact No. 17 should be deemed admitted.

**DEVECCHIO UNDISPUTED FACT NO. 18**

**"[Scarpa] and DeVecchio had established a regular trade in intelligence, with the advantage generally on Scarpa's side. . . . DeVecchio now knows to his sorrow that Scarpa began the counterattack by killing . . . Nicky Grancio for the New Year."** *The FBI Gave Him An Edge*, NEWSDAY, **June 4, 1995, at 33. (Grover Dec., Exhibit Q).**

> *Plaintiff's Response No. 18:*

> *Same as Plaintiff's Response No. 13.*

DEVECCHIO REPLY NO. 18:

Plaintiff's response does not dispute or offer any evidence controverting any of the facts

asserted in DeVecchio Fact No. 18; instead, plaintiff's response offers conclusory allegations in

support of plaintiff's case-in-chief, and these allegations are immaterial to defendant's motion.

Further, plaintiff fails to respond separately and specifically as required by Local Civil Rule

56.1. Accordingly, DeVecchio Fact No. 18 should be deemed admitted.

**DEVECCHIO UNDISPUTED FACT NO. 19**

**Jurors stated that a pivotal moment in acquitting seven defendants of murder in the Colombo family war was when they saw the sheet of conversations between DeVecchio and Scarpa, which showed that "'Scarpa was basically running free'" to commit murders.** *7 Found Not Guilty in Plot Tied to a Mob Family Feud*, **N.Y. TIMES, July 1, 1995, at 25;** *The Thin Line Between Mole and Manager*, **N.Y. TIMES, July 2, 1995, at 25.   (Grover Dec., Exhibit R).**

> *Plaintiff's Response No. 19:*

> *Same as Plaintiff's Response No. 13.*

DEVECCHIO REPLY NO. 19:

Plaintiff's response does not dispute or offer any evidence controverting any of the facts

asserted in DeVecchio Fact No. 19; instead, plaintiff's response offers conclusory allegations in

support of plaintiff's case-in-chief, and these allegations are immaterial to defendant's motion.

16

Further, plaintiff fails to respond separately and specifically as required by Local Civil Rule

56.1. Accordingly, DeVecchio Fact No. 19 should be deemed admitted.

**DeVecchio Undisputed Fact No. 20**

**"If there had indeed been a Colombo war, Scarpa had held its liveliest gun and used it to kill Amato, Fusaro and Grancio. These combats were all but exclusively Scarpa's; and he enlisted DeVecchio as a Persico partisan . . . [DeVecchio's] zest may or may not be excused by the dream that, when peace was restored . . . the FBI would at last own a boss among bosses."** *FBI Rewards the Gullible*, Newsday, September 29, 1996, at A41. (Grover Dec. Exhibit S).

*Plaintiff's Response No. 20:*

*Same as Plaintiff's Response No. 13.*

DeVecchio Reply No. 20:

Plaintiff's response does not dispute or offer any evidence controverting any of the facts

asserted in DeVecchio Fact No. 20; instead, plaintiff's response offers conclusory allegations in

support of plaintiff's case-in-chief, and these allegations are immaterial to defendant's motion.

Further, plaintiff fails to respond separately and specifically as required by Local Civil Rule

56.1. Accordingly, DeVecchio Fact No. 20 should be deemed admitted.

**DeVecchio Undisputed Fact No. 21**

**F.B.I. agents suspected that DeVecchio "had helped Mr. Scarpa escape arrest and track down supporters of Mr. Orena."** *Ex-F.B.I. Official Is Pressured To Testify on Ties to Mobster*, N.Y. Times, Jan. 26, 1997, at 23. (Grover Dec., Exhibit T).

*Plaintiff's Response No. 21:*

*Same as Plaintiff's Response No. 13.*

DeVecchio Reply No. 21:

Plaintiff's response does not dispute or offer any evidence controverting any of the facts

asserted in DeVecchio Fact No. 21; instead, plaintiff's response offers conclusory allegations in

support of plaintiff's case-in-chief, and these allegations are immaterial to defendant's motion.

Further, plaintiff fails to respond separately and specifically as required by Local Civil Rule

56.1. Accordingly, DeVecchio Fact No. 21 should be deemed admitted.

**DEVECCHIO UNDISPUTED FACT NO. 22**

**"DeVecchio is accused of leaking government secrets to Scarpa over the course of a 12-year relationship . . . [including] sensitive details that may have helped fuel the internal Colombo crime family war between 1991 and 1992."** *Fed's Set To Tattle*, DAILY NEWS, **February 23, 1997, at 19. (Grover Dec., Exhibit U).**

> *Plaintiff's Response No. 22:*

> *Same as Plaintiff's Response No. 13.*

DEVECCHIO REPLY NO. 22:

Plaintiff's response does not dispute or offer any evidence controverting any of the facts

asserted in DeVecchio Fact No. 22; instead, plaintiff's response offers conclusory allegations in

support of plaintiff's case-in-chief, and these allegations are immaterial to defendant's motion.

Further, plaintiff fails to respond separately and specifically as required by Local Civil Rule

56.1. Accordingly, DeVecchio Fact No. 22 should be deemed admitted.

**DEVECCHIO UNDISPUTED FACT NO. 23**

**Various legal decisions refer to the DeVecchio-Scarpa relationship and DeVecchio's conduct in the Colombo war. U.S. v. Cutolo, 868 F. Supp. 39, 41 (E.D.N.Y. 1994) (Nickerson, J.) (addressing claims that "'Scarpa, a government agent, was sent out by the F.B.I. in order to spread fear among the defendants.'"); U.S. v. Persico, 1997 WL 867788 \*1–\*17 (E.D.N.Y. 1997) (Sifton, J.) (describing in detail the relationship between Scarpa and the FBI, and DeVecchio in particular); Id. at \*13 n.8 (noting DeVecchio "expressed joy at the deaths of Orena faction members"); Orena v. U.S., 956 F. Supp. 1071, 1087 (E.D.N.Y. 1997) (finding that: "Over the course of their relationship DeVecchio may well have made a number of unauthorized disclosures of information to Scarpa."), aff'd 145 F.3d 551 (2d Cir. 1998); U.S. v. Brady, 1999 WL 438468, \*4 (E.D.N.Y. Apr. 30, 1999) (Glasser, J.)("Colombo war was the product of a Machiavellian plan devised and incited by Scarpa and DeVecchio for their own undefined purposes"); Id., at \*3 (summarizing allegations that "'the FBI condoned, tolerated and influenced Scarpa's campaign of murder as most readily reflected in FBI Agent DeVecchio's exclamation that '[w]e're going to win this thing'").**

18

*Plaintiff's Response No. 23*:

*The legal decisions refer to some aspects of the DeVecchio-Scarpa relationship and DeVecchio's conduct in the "Colombo war" (we do not concede that it was a "Colombo war"); but they omit and misstate many material aspects of the same.*

DEVECCHIO REPLY NO. 23:

Plaintiff's response does not dispute or offer any evidence controverting any of the facts asserted in DeVecchio Fact No. 23; instead, plaintiff's response offers conclusory allegations in support of plaintiff's case-in-chief, and these allegations are immaterial to defendant's motion. Accordingly, DeVecchio Fact No. 23 should be deemed admitted.

Dated: New York, New York
        July 30, 2007

                                THOMPSON HINE LLP
                                *Attorneys for Defendant R. Lindley DeVecchio*

                                By: _____
                                     Douglas E. Grover (DG 6037)
                                     Joseph B. Koczko (JK 7259)
                                     335 Madison Avenue
                                     New York, New York 10017
                                     Tel.: (212) 344-5680

19