UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------ X
MARIA GRANCIO, individually, and in her           :
capacity as Executrix and Personal Representative  :
of the Estate of Nicholas P. Grancio,             :
                                                  :
                        Plaintiff,                :   CIVIL ACTION NO.
V.                                                :   06 CV 0069 (FB)(CLP)
                                                  :
R. LINDLEY DeVECCHIO;                             :
                                                  :
CHRISTOPHER FAVO;                                 :
                                                  :
UNITED STATES OF AMERICA.                         :
                                                  :
                        Defendants.               :
------------------------------------------------------------ X


**REPLY MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT CHRISTOPHER FAVO'S MOTION TO DISMISS OR,
IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................. 1

ARGUMENT ...................................................................................................... 2

I.    THE COMPLAINT FAILS TO ASSERT A SUBSTANTIVE DUE PROCESS
      CLAIM AGAINST FAVO, AND, FAVO IS ENTITLED TO QUALIFIED
      IMMUNITY ................................................................................................ 2

      A.    The Complaint Alleges No Substantive Due Process Violation ............................ 2

      B.    Favo Is Entitled to Qualified Immunity On The Substantive Due Process
            Claim ................................................................................................... 3

II.   FAVO IS ENTITLED TO SUMMARY JUDGMENT ON THE DUE PROCESS
      CLAIM ....................................................................................................... 6

III.  PLAINTIFF'S BIVENS CLAIMS ARE ALL BARRED BY THE STATUTE OF
      LIMITATIONS ............................................................................................ 10

IV.   PLAINTIFF'S REQUEST FOR DISCOVERY SHOULD BE DENIED ...................... 12

CONCLUSION .................................................................................................. 15

# TABLE OF AUTHORITIES

## CASES

Page

*Adler v. Kent Village Housing Co.*, 123 F. Supp. 2d 91 (E.D.N.Y. 2000) .....................................13

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) .....................................................................9

*Barrett v. United States*, 337 F. Supp. 2d 370 (D. Mass. 2004), *aff'd* 462 F.3d 28 (1st Cir. 2006) ............................................................................................................................................11

*Bennett v. FBI*, 278 F. Supp. 2d 104 (D. Mass. 2003) ...............................................................11, 12

*Burlington Coat Factory Warehouse Corp. v. Esprit de Corp.*, 769 F.2d 919 (2d Cir. 1985) ......................................................................................................................................13

*Burt v. Rumsfeld*, 354 F. Supp. 2d 156 (D. Conn. 2005) .............................................................14

*Conn. Nat'l Bank v. Trans World Airlines, Inc.*, 762 F. Supp. 76 (S.D.N.Y. 1991) ......................14

*Contemporary Mission, Inc. v. United States Postal Serv.*, 648 F.2d 97 (2d Cir. 1981) ..............13

*County of Sacramento v. Lewis*, 523 U.S. 833 (1998) ....................................................................9

*Davis v. United States,* 340 F. Supp. 2d 79 (D. Mass. 2004) ..........................................................6

*DeShaney v. Winnebago County Dep't of Social Servs.*, 489 U.S. 189 (1989)...........................2, 3

*Dwares v. City of New York*, 985 F.2d 94 (2d Cir. 1993) ................................................................3

*Eastway Constr. Corp. v. City of New York*, 762 F.2d 243 (2d Cir. 1985)...................................13

*Ford v. Moore*, 237 F.3d 156 (2d Cir. 2001) ..............................................................................7, 8

*Harbert Int'l Inc. v. James*, 157 F.3d 1271 (5th Cir. 1998) ..........................................................14

*Heins v. Potter*, 271 F. Supp. 2d 545 (S.D.N.Y. 2003) ................................................................11

*Kronisch v. United States*, 150 F.3d 112 (2d Cir. 1998).........................................................10, 11

*Limone v. United States,* 271 F. Supp. 2d 345 (D. Mass. 2003), *aff'd sub nom. Limone v. Condon, 372 F.3d 39 (1st Cir. 2004)* ........................................................................................6

*Limone v. United States*, 336 F. Supp. 2d 18 (D.  Mass 2004)......................................................11

*Litle v. Arab Bank, PLC*, 2007 U.S. Dist. LEXIS 20539 (E.D.N.Y. Mar. 22, 2007) ..................10

*Lombardi v. Whitman*, 485 F.3d 73 (2d Cir. 2007)...........................................................3, 6, 8, 9

*Maturine v. Am. Int'l Group, Inc.*, 2006 U.S. Dist. LEXIS 56455 (S.D.N.Y. Aug. 10, 2006) ...........................................................................................................................13, 14

*McCullough v. Wyandanch Union Free Sch. Dist.*, 187 F.3d 272 (2d Cir. 1999).........................3

*McIntyre v. United States*, 336 F. Supp. 2d 87 (D. Mass. 2004) ..........................................1, 4, 5, 6

*McIntyre v. United States*, 367 F.3d 38 (1st Cir. 2004) .................................................................12

*Nat'l Union Fire Ins. Co. v. Stroh Cos.*, 265 F.3d 97 (2d Cir. 2001)............................................13

*Natsource LLC v. GFI Group, Inc.*, 332 F. Supp. 2d 626 (S.D.N.Y. 2004) ..................................14

*Niagara Mohawk Power Corp. v. Jones Chem., Inc.*, 315 F.3d 171 (2d Cir. 2003) .................8, 9

*Orena v. United States*, 956 F. Supp. 1071 (E.D.N.Y. 1997)........................................................15

*Pinaud v. County of Suffolk*, 52 F.3d 1139 (2d Cir. 1995) .....................................................10, 12

*Rotella v. Wood*, 528 U.S. 549 (2000) ....................................................................................10, 11

*Silkwood v. Kerr-McGee Corp.*, 637 F.2d 743 (10th Cir. 1980) ....................................................8

*Young v. County of Fulton*, 160 F.3d 899 (2d Cir. 1998) ...............................................................4

**STATUTES**

Federal Rule of Civil Procedure 56(f) ................................................................................12, 13, 14

**MISCELLANEOUS**

11-56 Moore's Federal Practice -- Civil § 56.10[8][a] (2007) ......................................................14

## <u>INTRODUCTION</u>

This is a case, at base, claiming that a mob informant, with the alleged encouragement of the FBI supervisor who handled him, murdered Nicholas Grancio, another reputed mob member. The Complaint, however, also attempts to sweep in Christopher Favo -- an agent whose name has appeared in the public record because he reported suspicions about Scarpa and DeVecchio's relationship -- on the tenuous theory that he violated Grancio's constitutional rights by calling in detectives on an alleged surveillance of Grancio for a meeting.  As the moving papers and record now demonstrate, this theory is legally defective, factually unsupportable, and cries out for a finding that Favo is entitled to qualified immunity.

In her response to Favo's moving papers, Plaintiff fails to contest, or even to address, most of the controlling authorities that demonstrate Favo's entitlement to dismissal of each claim against him.  Indeed, in asserting only the presence of "at least one constitutionally viable theory for recovery" (Pls. Mem. at 30), Plaintiff concedes that her Fourth Amendment, Eighth Amendment and conspiracy claims against Favo are not viable.  And the Fifth Amendment theory that Plaintiff does attempt to press fails to state a due process claim against Favo, fails to satisfy the "conscience shocking" threshold, cannot be proven on the undisputed record, and in any event plainly entitles Favo to qualified immunity.

Nothing in Plaintiff's papers alters these conclusions.  Plaintiff relies heavily on a Massachusetts case, *McIntyre v. United States*, which involves claims palpably dissimilar to those she asserts against Favo.  Indeed, if *McIntyre* bears on Favo at all, it is because it unequivocally <u>dismisses</u> claims against an FBI agent situated similarly to Favo.  Plaintiff also relies on a "kitchen sink" strategy, throwing out scattershot assertions which are not based on personal knowledge, represent hearsay, and often do not relate to Favo at all.  (*See, e.g.*, Pls. 56.1

St. at 8 ("Judge Glasser knowingly concealed Scarpa's informant status"); *see generally* Favo

Consol. 56.1 St., Part II.)  And the handful of alleged facts regarding Favo, even assuming their

truth for purposes of this motion, either plainly fail to create any genuine issue for trial or relate

to the period after Grancio's murder when his constitutional rights had ceased.  Recognizing

these deficiencies, Plaintiff resorts to discovery requests, which should be denied because they

reflect, at best, speculation that discovery somehow might support her claims.  Plaintiff's

requests also misperceive the applicable standards.  To avoid dismissal against Favo, Plaintiff

must state a claim for the deprivation of a clearly-established constitutional right; to avoid

summary judgment, she must produce evidence creating a triable issue of fact.  Plaintiff turns

these standards upside down, seeking to prop up an inadequate complaint and record through

subsequent discovery.

Finally, Plaintiff has failed to refute the conclusion that her claims against Favo accrued

long before she filed suit in 2006 -- some fourteen years after Grancio's death -- and are thus

time barred.  For all of these reasons, Favo's motion for qualified immunity and dismissal is ripe

to be and should be granted.

## ARGUMENT

I.    The Complaint Fails To Assert A Substantive Due Process Claim Against Favo, And,
      Favo Is Entitled To Qualified Immunity.

A.    The Complaint Alleges No Substantive Due Process Violation.

As set out in Favo's opening brief, the Complaint's allegation that Favo violated

Grancio's due process rights by failing to protect Grancio from Scarpa does not state a due

process violation.  *See DeShaney v. Winnebago County Dep't of Social Servs.*, 489 U.S. 189, 197

(1989); Favo Mem. at 12-13.  While courts have carved a limited custodial (or "special

relationship") exception to the *DeShaney* rule for when the state involuntarily restrains an

individual "through incarceration, institutionalization, or other similar restraint of personal liberty," the Complaint nowhere alleges that Favo involuntarily restrained Grancio.  *See DeShaney*, 489 U.S. at 200; Favo Mem. at 13-14.  Similarly, while the Second Circuit has held that the official sanction of private violence may constitute "state created danger" following *Dwares v. City of New York*, 985 F.2d 94 (2d Cir. 1993), the Complaint does not assert that Favo ever communicated to anyone that Scarpa could do violence to Grancio.  (*See* Favo Mem. at 14-16.)  Plaintiff's Memorandum does not contest either of these defects.

In addition, the Second Circuit recently underscored that, in order to "trigger a violation of substantive due process, official conduct must be <u>outrageous and egregious under the circumstances; it must be truly 'brutal and offensive to human dignity</u> . . . .'" *Lombardi v. Whitman*, 485 F. 3d 73, 81 (2d Cir. 2007) (citation omitted) (emphasis added).  The Circuit held that, even assuming that officials had disseminated to 9/11 recovery workers information on environmental safety "they knew to be inaccurate, and that this had tragic consequences for the plaintiffs," plaintiffs had pleaded no constitutional violation.  *Id*. at 85.  Here too, the allegations against Favo fall far short of the conscience-shocking standard.  (*See* Favo Mem. at 26.)

B.   <u>Favo Is Entitled to Qualified Immunity On The Substantive Due Process Claim.</u>

In his opening brief, Favo demonstrated that, because the Complaint alleges only conduct that "did not violate clearly established rights" in 1992 and was "objectively reasonable," Favo is entitled to qualified immunity.  *E.g., McCullough v. Wyandanch Union Free Sch. Dist.*, 187 F.3d 272, 278 (2d Cir. 1999); Favo Mem. at 10-11, 16-18.

First, as set forth above, *DeShaney* narrowly circumscribed the custodial exception to instances of involuntary restraint.  We remain unaware of any controlling law that, by January 1992 or otherwise, had expanded the exception to the countless individuals (many engaged in activities posing danger from third parties) subject to surveillance by the government.  Second, in

-3-

January 1992, the Second Circuit had not articulated a "state created danger" exception to the *DeShaney* rule, and thus a reasonable agent in Favo's position could not have understood it at that time.  (See Favo Mem. at 17-18.)  In response, Plaintiff's Memorandum posits only that "[t]hrough discovery, she may well show Favo's constitutional duties in this situation . . . were clearly established under *DeShaney* well before *Dwares* . . . ."  (Pls. Mem. at 33.)  This unadorned speculation is insufficient to show that the Complaint pleads a constitutional deprivation against Favo or to controvert his entitlement to qualified immunity.[1]

Because the controlling law in this Circuit is well-defined and dispositive, Plaintiff seeks refuge in excerpts from a Massachusetts district court decision.  That decision does not control this Court, and further, in assessing qualified immunity specifically, the Second Circuit "puts significant weight on whether or not the law was governed by controlling precedent of this Circuit."  *Young v. County of Fulton*, 160 F.3d 899, 903 (2d Cir. 1998).  In any event, plaintiff's reliance on *McIntyre v. United States*, 336 F. Supp. 2d 87 (D. Mass. 2004), is unquestionably misplaced with respect to Favo.

In the *McIntyre* case, the plaintiff alleged that Connolly, who was responsible for handling two informants, Bulger and Flemmi, (i) disclosed to Bulger and Flemmi prior to McIntyre's death the cooperation of several other witnesses, who were then murdered, and (ii) disclosed to Bulger and Flemmi the cooperation of McIntyre, who was then murdered.  *See id*. at 97-99.  The *McIntyre* court held that an individual such as McIntyre could have a substantive due process right, "if the individual is murdered as a result of the disclosure by the agent to violent criminals that the individual is cooperating with the government in investigations of the unlawful activities of the criminals, and the agent knows or should know that the criminals will kill the

---

[1] Plaintiff fails to do even this much with respect to Favo's showing that Plaintiff has not alleged or offered facts establishing his knowing personal involvement in any constitutional deprivation.  (*See* Favo Mem. 7-9, 24.)

individual, reasonably believing that the agent will protect them from prosecution for that murder." *Id*. at 126.

In this case, the Complaint does not allege (nor could it) that Favo disclosed to Scarpa anything about Grancio prior to Grancio's murder or at any time. It does not allege (nor could it) that Favo knew that Scarpa would kill Grancio in the belief that Favo would protect Scarpa. It does not allege (nor could it) that Favo disclosed to Scarpa that other witnesses were cooperating prior to Grancio's murder or at any time. Instead, the Complaint theorizes that Favo was aware that Grancio, a reputed mob member, was in danger from other mob members in an opposing faction of an organized crime family and failed to protect Grancio by maintaining surveillance on him. As distinct from the *McIntyre* case, this alleged conduct does not violate any clearly-established right, whether analyzed under controlling authority in the Second Circuit or under non-controlling precedent as in *McIntyre*.

To the extent that the *McIntyre* decision is illuminating at all with respect to Favo, it is in its clear-cut dismissal of due process claims against another defendant. The plaintiffs in *McIntyre* sued several agents with formal supervisory authority over Connolly. They also sued Kennedy, an FBI agent and operational liaison at the time of McIntyre's murder. *See McIntyre*, 336 F. Supp. 2d at 97. Plaintiffs alleged that, prior to McIntyre's death, Kennedy knew some of Bulger and Flemmi's criminal activities but did not report this information to the DEA and prosecutors; knew McIntyre was cooperating and interviewed him; and reported to others that McIntyre had incriminating information about Connolly's informants. *See id*. at 128.

The *McIntyre* court first held that "[t]he danger in incriminating Bulger and Flemmi was a risk McIntyre faced regardless of whether Bulger and Flemmi were informants for the FBI. McIntyre did not have a constitutional right to be free from this risk; so there was no right, based

-5-

on the risk alone, to which Kennedy could have been deliberately indifferent."[2]  *Id.* at 128-29.

The court further held that, unlike the agents with formal supervisory authority over Connolly, plaintiffs had <u>not</u> alleged that Kennedy had such authority and thus any easily-available ways to change Connolly's conduct.  *See id.* at 129.  Finally, notwithstanding that the allegations against Kennedy were more substantial than those against Favo, the *McIntrye* court held that Kennedy could <u>not</u> be liable for allegedly emboldening Connolly's informants:  the "alleged misconduct of Kennedy was not conduct intended to injure McIntyre; nor do the allegations suggest deliberate indifference.  With 'liability for negligently inflicted harm' being 'categorically beneath the threshold of constitutional due process' . . . the conduct of Kennedy does not 'shock the judicial conscience'".[3]  *Id.* at 110 (citations omitted).  The same conclusion is compelled with respect to Favo under the high bar recently reiterated by the Second Circuit.  *See Lombardi*, 485 F.3d at 81 ("official conduct must be outrageous and egregious under the circumstances; it must be truly 'brutal and offensive to human dignity . . . .'").

## II.    <u>Favo Is Entitled To Summary Judgment On The Due Process Claim.</u>

In her Memorandum, Plaintiff argues that Favo is responsible for Grancio's murder first on the theory that "when Scarpa called Devecchio and told him that he needed the surveillance pulled off of Grancio so that he could kill him without having law enforcement officers present, it is alleged that Devecchio directed Favo to call the surveillance team and remove them."  (Pls.

---

[2]  Similarly, the danger of injury by members of the opposing faction in an internecine organized crime war was a risk Grancio faced regardless of whether Scarpa was an informant, and Grancio had no constitutional right based on that risk to which Favo could have been indifferent.

[3]  Plaintiff relies in passing on two other Massachusetts cases related to the actions of Bulger and Flemmi. In *Limone v. United States*, the court held that federal agents who framed three men for a murder committed by Flemmi and others were not entitled to qualified immunity at the motion to dismiss stage.  271 F. Supp. 2d 345, 365-66 (D. Mass. 2003), *aff'd sub nom. Limone v. Condon*, 372 F. 3d  39 (1st Cir. 2004).  Here, the Complaint in no way asserts that Favo framed Grancio or otherwise procured Grancio's wrongful conviction.   In *Davis v. United States*, the court addressed a motion to dismiss by the United States, 340 F. Supp. 2d 79, 81, 93 (D. Mass. 2004), and thus did not deal with the *Bivens* liability of an individual like Favo.

Mem. at 32.)  On the uncontroverted record, however, Plaintiff cannot prove her theory at trial.
That record demonstrates, *inter alia*, that Favo called the detectives for a previously-scheduled
task force meeting, that Favo was neither told nor otherwise aware of any call between Scarpa
and DeVecchio regarding any removal of surveillance, and that Favo was neither told nor
otherwise aware that Scarpa wanted any surveillance removed.[4]  (*See* Favo Mem. at 25-26; Favo
Consol. 56.1 St. at 12-16.)  In support of her theory, Plaintiff urges that Favo provided
DeVecchio with "information on Scarpa's loan shark victims, Scarpa's enemies, etc."; that
NYPD detectives Simone and Higgins have indicated that Grancio was a target in the Colombo
family war; and that Simone told Favo that he should not be taken off surveillance of Grancio.
(Pls. Mem. at 33 & n. 19.)

With respect to the allegation about Favo providing information to DeVecchio about
Scarpa's victims, even assuming for purposes of this argument that Favo provided DeVecchio
such information,[5] it is uncontested that this occurred <u>after</u> Grancio's murder.  Thus,
DeVecchio's requests for such information, like the other conduct after Grancio's murder alleged
by Plaintiff, shed no light on the information Favo possessed at the time of that murder.
Relatedly, Favo cannot have violated any due process right of Grancio <u>after</u> his death.  Grancio's
constitutional rights came to an end with and cannot be violated after his death.  *See, e.g., Ford v.
Moore*, 237 F.3d 156, 165 (2d Cir. 2001) (reversing a denial of summary judgment on the basis
of qualified immunity where plaintiff alleged that an officer had conspired to cover up a

_____

[4] Notably, while there is no admissible evidence of an underlying call between Scarpa and DeVecchio, for
purposes of the claim against Favo, the Complaint does not plead, and no evidence exists, that Favo was aware of
any such call.  Similarly, while there is no admissible evidence that DeVecchio directed Favo to remove
surveillance, the Complaint does not plead, and no evidence exists, that DeVecchio told Favo that any such removal
was at Scarpa's request or that Scarpa planned to murder Grancio.

[5] We assume this and certain other allegations solely for purposes of this motion; Favo reserves his rights
to contest such allegations for all other purposes.  In fact, Favo never provided DeVecchio with information
knowing that it was for any improper purpose.  (*See* Favo Consol. 56.1 St. at 30.)

-7-

shooting); *Silkwood v. Kerr-McGee Corp.*, 637 F.2d 743, 749 (10th Cir. 1980) (affirming the dismissal of *Bivens* claims against FBI agents for "cover-up actions" taken after the decedent's death) (cited in *Ford v. Moore*, 237 F.3d at 165).

Likewise, even assuming for purposes of this argument that (i) detectives Simone and Higgins understood that Grancio was a target in the Colombo family war and (ii) Simone told Favo "the importance of maintaining" surveillance on Grancio (see Pls. Ex. 20, at 685, and Ex. 25, at ¶ 6; Favo Consol. 56.1 St. at 15-16 and 20-21), these assumed facts also do not impair Favo's entitlement to summary judgment.[6]  In particular, Simone has not indicated that he told Favo that Scarpa was at the scene, that he considered surveillance necessary to protect Grancio, or that leaving the scene would imperil Grancio.  Thus, even if (as Plaintiff contends) Favo was aware that Grancio was a target and that Simone told Favo the importance of maintaining surveillance, these assumed facts do <u>not</u> controvert that Favo called the detectives for a previously-scheduled task force meeting, that he was not aware of any call between Scarpa and DeVecchio regarding any removal of surveillance on Grancio, and that he was not aware that Scarpa wanted any surveillance removed.

Further, these assumed facts plainly do not rise to the level of "outrageous and egregious" conscience-shocking conduct required for a substantive due process violation.  *E.g., Lombardi*, 485 F. 3d at 81; *see also* Favo Mem. at 26.  Indeed, assuming that Favo was aware that Grancio was a target and that Simone told Favo that the surveillance was important, Favo's actions in calling the detectives in for a law enforcement meeting would not even support a finding that

---

[6] As set out in Favo's Consolidated 56.1 Statement, where Plaintiff's 56.1 Statement and supporting affidavits are not based on personal knowledge and reflect inadmissible hearsay (such as the hearsay statement that Higgins was expected to testify that he tried to warn Grancio), they should not be relied upon to controvert summary judgment.  *See, e.g., Niagara Mohawk Power Corp. v. Jones Chem., Inc.,* 315 F.3d 171, 175 (2d Cir. 2003) (non-movant must respond with "'specific facts showing that there is a genuine issue for trial.'") (citation omitted).

Favo was negligent.  And even if they did, it is clear that negligence cannot suffice to state a constitutional violation.  Rather, the Constitution "does not guarantee due care on the part of state officials; liability for negligently inflicted harm is <u>categorically beneath the threshold of constitutional due process</u>."  *County of Sacramento v. Lewis*, 523 U.S. 833, 848 & n.8 (1998) (emphasis added); see also *Lombardi*, 485 F.3d at 81-82.

Plaintiff posits as a second theory that Favo "knew Scarpa's propensities as a killer, he knew about and fostered actively and passively (and despite knowing he had a legal obligation to do otherwise) Scarpa's license to commit violent crimes with impunity from his relationship with the FBI, and because he knew Grancio was an imminent target of Scarpa and his 'faction.'"  (Pls. Mem. at 33.)  As set forth above, allegations of Favo's awareness that Grancio was in danger and failure to protect him do not state a due process violation.  In addition, the unsupported argument that Favo "knew about and fostered actively and passively" Scarpa's commission of violence in connection with Grancio's murder (*see* Pls. Mem. at 35, 37), is empty rhetoric.  Plaintiff simply does not muster, as she must on this motion, the "concrete evidence from which a reasonable juror could return a verdict" against Favo.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *see also Niagara Mohawk Power Corp.*, 315 F.3d at 175 (non-movant must respond, not with "conclusory allegations, conjecture, and speculation," but with "'specific facts showing that there is a genuine issue for trial.'").

Importantly, Favo is also entitled to summary judgment on Plaintiff's due process claim on the basis of qualified immunity.  First, summary judgment should be granted because the due process right asserted by Grancio was not clearly established in 1992 or at any time.  (*See* Favo Mem. at 27-28.)  Second, since it is uncontroverted that Favo called the detectives for a scheduled task force meeting, that he was neither told nor otherwise aware of any call between

-9-

Scarpa and DeVecchio regarding any removal of surveillance, and that he was neither told nor otherwise aware that Scarpa wanted any surveillance removed, it was objectively reasonable for Favo to request the detectives join the meeting.

III.  Plaintiff's *Bivens* Claims Are All Barred By The Statute Of Limitations.

In addition, Plaintiff's *Bivens* claims, asserted some fourteen years after Grancio's death, are also barred by the three-year statute of limitations because they accrued long before 2003 and the statute was not tolled.  Plaintiff's opposing arguments are to no avail.

First, Plaintiff's assertion that she did not have "actual knowledge" of her claims before late 2004, even if true, misses the point.  (See Pls. Mem. at 12-13.)   Under the federal discovery rule, a claim accrues "'when the plaintiff knows or has reason to know of the injury which is the basis of his action.'"  *Pinaud v. County of Suffolk*, 52 F. 3d 1139, 1156 (2d Cir. 1995).

Second, Favo has shown that Plaintiff's claims accrued no later than 1998, when she knew or had reason to know the "basic facts of the injury" under *Kronisch v. United States*, 150 F.3d 112, 121 (2d Cir. 1998).[7]  (*See* Favo Mem. at 29-32.)  Indeed, Plaintiff now admits that there "was widespread media coverage" of the allegedly "corrupt relationship between Devecchio and Scarpa and the alleged cover-up of the same by Devecchio, Favo, and others and that crimes have been publicly attributed to the corrupt relationship."  (Pls. Mem. at  14-15, 17, 23.)  Despite that concession, Plaintiff insists there was no reason to suspect Defendants' alleged involvement in Grancio's death before January 2004.  Plaintiff is wrong.  By 1998, it was a matter of public record both that Grancio was murdered by Scarpa as part of the very war that

_____

[7] Some courts recently have applied an even more relaxed standard than that in *Kronisch*.  In *Litle v. Arab Bank, PLC,* 2007 U.S. Dist. LEXIS 20539, at *8-11 (E.D.N.Y. Mar. 22, 2007) (Pohorelsky, *M.J.*), the court, relying on *Rotella v. Wood*, concluded that accrual does not require knowledge of both harm and causation.  In *Rotella*, the Supreme Court observed that "in applying a discovery accrual rule . . . discovery of the injury, *not discovery of the other elements of a claim*, is what starts the clock".  528 U.S. 549, 555 (2000).  Under *Litle's* analysis, Plaintiff's claims accrued when she learned of Grancio's murder, and the point when she "knew or had reason to know of the defendant[s'] [alleged] participation . . . is irrelevant".  2007 U.S. Dist. LEXIS 20539, at * 8.

-10-

DeVecchio and the FBI were accused of inciting and that Favo was criticized for allegedly covering up the Scarpa-DeVecchio relationship.  (*See* Favo Mem. at 30-32.)  Contrary to Plaintiff's claim (Pls. Mem. at 17-18), the media reports of the 1990's explicitly referenced the alleged connection between these events and the Grancio murder.  (*See* United States 56.1 St., ¶¶ 7-42, 88-100, 103.)  If Plaintiff had timely inquired, she would have found most of the Complaint's allegations in media reports and judicial decisions.  (*See* Favo Mem. at 30-32.)  One exception is the allegation that surveillance was called in on the day of Grancio's murder, but accrual does not require knowledge of "the other elements of a claim" or all "supportive facts".  *Rotella*, 528 U.S. at 555; *Kronisch*, 150 F.3d at 121, 125 n.11.  In any event, Plaintiff easily could have discovered that allegation by speaking with the alleged source, her nephew Joey Tolino.  (*See* Pls. Ex. 25, ¶ 7.)

Third, Plaintiff's remaining efforts to escape the statute of limitations are also unavailing. That the FBI took no action against DeVecchio after the OPR investigation, and that Favo remains an active agent, are irrelevant.  (*See* Pls. Mem. at 14, 26.)  Accrual does not require convincing proof that a claim has merit; in many cases, the charges will ultimately prove to be unfounded.  *See Kronisch*, 150 F.3d at 123 n.7; *Heins v. Potter*, 271 F. Supp. 2d 545, 555 (S.D.N.Y. 2003).  Plaintiff's implication that the requirements of Rule 11 delayed accrual of her claims (*see* Pls. Mem. at 23), "strains the straight-face test".  *Barrett v. United States*, 337 F. Supp. 2d 370, 376-77 (D. Mass. 2004), *aff'd* 462 F.3d 28 (1st Cir. 2006).  Similarly, the cases Plaintiff cites are distinguishable.  In *Limone v. United States*, 336 F. Supp. 2d 18, 28, 46-48 (D. Mass. 2004), the plaintiff could not have known that the FBI "was enabling . . . and covering up the perjury" until documents were released in 2000; here, most of the evidence Plaintiff relies upon was disclosed in media and other public reports during the 1990's.  In *Bennett v. FBI*, 278

-11-

F. Supp. 2d. 104, 117-18 (D. Mass. 2003), plaintiff's claim accrued when he learned his father's murderer was an FBI informant and then tolled after he made inquiries to the FBI; here, it was a matter of public record that Scarpa was a FBI informant by 1994 and Plaintiff has never made any inquiries of the FBI.  In *McIntyre v. United States*, 367 F.3d 38, 56 (1st Cir. 2004), the court found that McIntyre's mother did not have reason to believe that the FBI had betrayed her son's cooperation to his murderers until a date within the limitations period; here, there is no such allegation concerning Grancio.  Tellingly, Plaintiff omits that *McIntyre* affirmed the dismissal of the Wheeler plaintiffs' complaint, holding that they (like Plaintiff here) were on constructive notice of media reports indicating that the FBI had protected and encouraged Wheeler's murderers.  *See id*. at 57-61.

Finally, Plaintiff's equitable tolling claim should be dismissed because she has not adequately alleged fraudulent concealment or her specific investigative efforts in trying to uncover the facts.  (*See* Favo Mem. at 32-33.)  The tolling claim also fails on the merits because Plaintiff exercised no diligence in investigating her claims from 1992 through 2004.  (*See* Pls. Ex. 24, ¶¶ 4-6.)  Additionally, to toll the statute against Favo, Favo must have actively concealed information from Plaintiff.  *See Pinaud*, 52 F. 3d at 1158.  Because the source of many of Plaintiff's allegations is Favo's public testimony during the 1990's, any claim of concealment against Favo is doomed.  (*See* Favo Consol. 56.1 St., Part II; Pls. Exs. 1-3; Pls. Mem. at 21 n. 13.)  For all these reasons, Plaintiff's *Bivens* claims are barred by the statute of limitations.

IV.    Plaintiff's Request for Discovery Should Be Denied.

As shown above, Plaintiff's constitutional claims against Favo are not viable and Favo is entitled to summary judgment.  As a result, Plaintiff falls back on generalized discovery requests under Federal Rule of Civil Procedure 56(f).  (*See* Pls. Mem. at 34-35; Schoen Aff., ¶¶ 19-22.) On this record, Favo's motion is ripe for decision and Plaintiff's request should be denied.

A Rule 56(f) request requires that Plaintiff submit an affidavit articulating, *inter alia*, the facts she seeks and "how those facts are reasonably expected to create a genuine issue of material fact" for trial.  *Burlington Coat Factory Warehouse Corp. v. Esprit de Corp.*, 769 F.2d 919, 926 (2d Cir. 1985).  This she fails to do.[8]  Instead, Plaintiff generically asserts that she is entitled to discovery on what Favo knew about Scarpa and Scarpa's relationship with DeVecchio "to give rise to an inference, say, arising from Favo's pattern of conduct vis a vis DeVecchio and Scarpa earlier."  (Pls. Mem. at 32- 33.)  She hypothesizes that "[t]hrough discovery, she may well show how Favo's constitutional duties" were clearly established before *Dwares*.  (*Id*. at 32- 33.)

Plaintiff's request is nothing more than speculation that discovery may produce some evidence to somehow support her claims against Favo.  Rule 56(f) motions "based on speculation as to what potentially could be discovered" are properly denied.  *Nat'l Union Fire Ins. Co. v. Stroh Cos.*, 265 F.3d 97, 117 (2d Cir. 2001); *Adler v. Kent Village Housing Co.*, 123 F. Supp. 2d 91, 97 (E.D.N.Y. 2000) (Block, *J*.).  "An opposing party's mere hope that further evidence may develop" does not justify the denial of summary judgment.  *Contemporary Mission, Inc. v. United States Postal Serv.*, 648 F.2d 97, 107 (2d Cir. 1981).  Similarly, Plaintiff's assertion that the "evidence to support a fanciful allegation lies within the exclusive control of the defendants, and can be obtained only through discovery" is not sufficient to defeat Favo's  motion.  *See Eastway Constr. Corp.  v. City of New York*, 762 F.2d 243, 251 (2d Cir. 1985).  In short, discovery is not appropriate where, as here, a party proposes to go on a fishing expedition in the speculative hope that evidence may materialize to create a genuine issue of fact.  *See Maturine v. Am. Int'l Group, Inc*., 2006 U.S. Dist. LEXIS 56455, at *17 (S.D.N.Y. Aug. 10,

---

[8] Plaintiff also fails adequately to show, as required under Rule 56(f), the "efforts the affiant has made to obtain those facts" and "why those efforts were unsuccessful."  *Burlington*, 769 F.2d at 926.

2006) (collecting cases).[9]

Moreover, Plaintiff's purported need for discovery is critically undercut by the fact that she already has much of the information she seeks.  This is an unusual case in that Plaintiff has had access to the immense evidentiary record compiled during the Colombo war trials and post-conviction hearings, and in fact, has submitted many excerpts from that record addressing the very issues on which she seeks discovery.  (*See, e.g.*, Pls. Exs. 1-13, 16-17, 19-21, 23.)  Beyond her displeasure that this wealth of information does not controvert Favo's entitlement to summary judgment, Plaintiff has provided no good reason to believe that any additional discovery would do so either.

Because Plaintiff has failed to produce specific facts to support her claims, and because the qualified immunity doctrine confers extra weight against discovery requests, the Court should refuse to permit discovery and grant summary judgment.  *See, e.g., Burt v. Rumsfeld*, 354 F. Supp. 2d 156, 161-62 (D. Conn. 2005) (denying Rule 56(f) motion and granting summary judgment before discovery); *Natsource LLC v. GFI Group, Inc.*, 332 F. Supp. 2d 626, 637-38 (S.D.N.Y. 2004); *Conn. Nat'l Bank v. Trans World Airlines, Inc.*, 762 F. Supp. 76, 79 (S.D.N.Y. 1991)).  *See also* 11-56 *Moore's Federal Practice* – Civil § 56.10[8][a] (2007) ("qualified immunity provides a right not to face the burdens of litigation" and the court should "give extra weight against discovery"); *Harbert Int'l Inc. v. James*, 157 F.3d 1271, 1280 (5th Cir. 1998).

---

[9] Plaintiff's "kitchen sink" requests underscore that she is on a fishing expedition.  (*See, e.g.,* Schoen Aff. ¶ 21 A, J ("[a]ll information concerning all murders committed by Scarpa or in which Scarpa was a suspect pre-dating the Grancio murder" and "[a]ll witnesses and sources of information identified by Favo … as likely having information bearing on the Scarpa/Devecchio relationship").)

## **CONCLUSION**

As distinguished Judges in this district have chronicled, the Colombo family war was nothing less than "a deadly struggle for power between two Colombo factions – the Persicos and the Orenas . . . ." *E.g., Orena v. United States*, 956 F. Supp. 1071, 1077 (E.D.N.Y. 1997).  In this "fratricidal blood-letting," in which "over 100 guns were seized during the course of the fray," the pervasive violence ultimately "left ten people dead and another fourteen wounded." *Id*.  As Plaintiff's own evidence attests, Grancio was a "key figure" in the Orena faction and was surveilled in part for his own potential involvement in crime.  (Pls. Ex. 25 at ¶¶ 5-6; Favo Consol. 56.1 St. at 11.)

Against this backdrop, Plaintiff asserts that, as a result of a call from his supervisor, Favo brought in task force detectives on a surveillance of Grancio while aware that Grancio was a target in the Colombo family war.  Even if true, these allegations plainly do not state a "conscience-shocking" due process claim.  The clear inadequacy of Plaintiff's claim against Favo -- who reported to DeVecchio, came forward with suspicions regarding his relationship with Scarpa, and has continued to serve the FBI ever since -- emphatically underscores Favo's entitlement to qualified immunity.  That doctrine is intended for cases just like this, where the early termination of an unsupported constitutional claim will permit Favo to focus on his long-standing service to the government and encourage other dedicated professionals to do the same.

For all of these reasons, Favo respectfully submits that the Court grant Favo's Motion to Dismiss or, in the alternative, for Summary Judgment in its entirety.

-15-

July 30, 2007                          Respectfully submitted,

                                       DEFENDANT,
                                       CHRISTOPHER FAVO


                                       By    /s/  Michael G. Considine
                                           Michael G. Considine (MC-0516)
                                           Rosemary Q. Barry (RB-0733)
                                           Helen Harris (HH-4045)
                                           Day Pitney LLP
                                           One Canterbury Green
                                           Stamford, CT  06901
                                           203-977-7300 – Telephone
                                           203-977-7301 – Facsimile
                                           Email:  mgconsidine@daypitney.com

**CERTIFICATE OF SERVICE**

I hereby certify that on July 30, 2007, a copy of the foregoing Reply Memorandum of

Law in Support of Defendant Christopher Favo's Motion to Dismiss or, in the Alternative, for

Summary Judgment was filed with the Clerk of the Court and served in accordance with the

Federal Rules of Civil Procedure, and/or the Eastern District's Local Rules, and/or the Eastern

District's Rules on Electronic Service upon the following parties and participants:


Douglas E. Grover, Esq.
Thompson Hine LLP
335 Madison Avenue
12th Floor
New York, NY  10017
douglas.grover@thompsonhine.com

Gail A. Matthews, Esq.
United States Attorneys Office
One Pierrepont Plaza
14th Floor
Brooklyn, NY 11201
Gail.Matthews@usdoj.gov


Joseph Bernard Koczko, Esq.
Thompson Hine LLP
One Chase Manhattan Plaza
58th Floor
New York, NY  10005
joseph.koczko@thompsonhine.com

David I. Schoen, Esq.
David I. Schoen, Attorney at Law
2800 Zelda Road
Suite 100-6
Montgomery, AL 36106
dschoen593@aol.com


    /s/  Michael G. Considine
           Michael G. Considine