

BOSTON    CONNECTICUT    NEW JERSEY    NEW YORK    WASHINGTON, D.C.

**MICHAEL G. CONSIDINE**
Attorney at Law

7 Times Square, Times Square Tower
New York, NY  10036

T: (212) 297 2479 F: (718) 764 4384
mgconsidine@daypitney.com

December 7, 2007

VIA ELECTRONIC FILING AND OVERNIGHT MAIL

Honorable Frederic Block
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

        Re:    *Maria Grancio v. R. Lindley DeVecchio, et al.*
                 06 CV 00069 (Block, J.) (Pollak, M.J.)

Dear Judge Block:

        We represent defendant Christopher Favo ("Favo") in the above case.

        We write to apprise the Court of significant recent developments in advance of the conference scheduled for Friday, December 14, 2007.  Specifically, in the since-dismissed Kings County criminal trial of defendant R. Lindley DeVecchio ("DeVecchio"), witness Lawrence Mazza ("Mazza") gave sworn testimony that eviscerates plaintiff's central theory in this case.  Because the parties may seek to refer to Mazza's recent testimony during the conference, we attach and summarize the testimony and its relevance herein.  As Mazza's testimony establishes, the factual record now before the Court fails to raise any disputed issues for trial.  In addition, the testimony confirms that plaintiff's request for discovery pursuant to Fed. R. Civ. P. 56(f) should be rejected and that defendants' motions are ripe for decision.

        *Plaintiff's Allegations Regarding the Death of Grancio*
        *and Their Dependence on Mazza's Anticipated Testimony*

        Plaintiff's claims arise out of the January 7, 1992 murder of Nicholas Grancio ("Grancio") by Gregory Scarpa Sr. ("Scarpa"), Mazza and another Scarpa associate.  Plaintiff alleges that Favo is liable for the murder based on the following alleged events:  (i) just prior to killing Grancio, Scarpa called DeVecchio and requested the removal of law enforcement surveillance on Grancio, and DeVecchio agreed to remove such surveillance; (ii) at DeVecchio's direction, Favo caused the surveillance to be removed; and (iii) Scarpa and his associates shot and killed Grancio.  (*E.g.*, First Amended Complaint, dated October 1, 2006, at ¶¶ 17, 18, 22.)



Honorable Frederic Block
December 7, 2007
Page 2

      In January 2007, Favo, as well as DeVecchio and the United States, separately served motions to dismiss the complaint or, in the alternative, for summary judgment.  In response, plaintiff argued that Favo was responsible for Grancio's murder because "when Scarpa called Devecchio and told him that he needed the surveillance pulled off of Grancio so that he could kill him without having law enforcement officers present, it is alleged that DeVecchio directed Favo to call the surveillance team and remove them."[1]  (Consolidated Memorandum in Response to Defendants' Motions, dated May 16, 2007, Dkt. # 79, at 32.)  Similarly, counsel for plaintiff attested in opposition to the motions:

> [T]he first time I ever heard or otherwise <u>learned the facts/theory underlying this lawsuit</u> was in early 2004 . . . when someone drew my attention to what I recall to be a newspaper report of an allegation . . . <u>to the effect that Scarpa had called Devecchio before he killed Grancio, arranged for Devecchio to remove surveillance from Scarpa and then killed Grancio with the surveillance removed</u>.

(Affirmation of David I. Schoen, dated May 16, 2007 ("Schoen Aff."), Dkt. # 80, at ¶ 5 (emphasis added).)

      Plaintiff's counsel then recounted that he had learned from two individuals (Flora Edwards, an attorney, and Stephen Dresch, a now-deceased investigator) that Mazza had told them about these alleged events preceding Grancio's murder.  (*See* Schoen Aff. at ¶¶ 6, 10.)  In addition to representing double hearsay, these alleged statements reflect only perceptions of how Mazza might testify and thus have no independent evidentiary significance.

      By 2004, however, Mazza already had given sworn testimony contrary to plaintiff's theory in the *Orena v. United States* post-trial hearing before Judge Weinstein.  (*See infra* at 4.)  Notwithstanding the existence of this testimony, plaintiff pressed forward, relying on the hope that Mazza might recant his prior sworn statements and testify in keeping with an alleged hearsay declaration (that has never been submitted) and alleged hearsay statements to Edwards and Dresch.  (*See* Schoen Aff. at ¶ 16.)  Indeed, counsel later confirmed that:  "I firmly believe the accounts Mazza gave to both Ms. Edwards and Dr. Dresch . . . .  <u>If I did not believe those things, I would not have agreed to bring this case</u>." (E-mail from D. Schoen, dated June 11, 2007, at 4, attached to Letter from D. Schoen to Judge Block, dated June 27, 2007, Dkt. # 58 (emphasis added).)

---

[1] Plaintiff also argued that Favo generally fostered Scarpa's "license to commit violent crimes".  (*Id.*, at 33.)  For reasons set out in Favo's reply memorandum, that alternative theory is legally and factually futile.

71425857.1



Honorable Frederic Block
December 7, 2007
Page 3

*Mazza's October 2007 Testimony in the Kings County Trial
and Its Consistency with his Earlier 2004 Testimony*

In October 2007, DeVecchio was tried before the Honorable Gustin Reichbach in Kings County Supreme Court on charges of participation in four murders.  On November 1, 2007, the District Attorney dismissed all charges against DeVecchio.[2]

On October 18, 2007, Mazza testified about the events preceding Grancio's murder:

- On the day of the Grancio murder, Mazza, Scarpa and a third associate, Jimmy Delmasto, were driving around where they thought they would find Orena faction people.  (*People v. DeVecchio* Trial Transcript, dated October 18, 2007 ("*People v. DeVecchio* Tr."), attached in relevant part as Ex. A, at 710.)  Mazza, Scarpa and Delmasto were looking at clubs that were known Orena faction hang outs.  (*Id.*)  They saw Funzi D'Ambrosio's car, so they drove around the block, and parked where they could "watch the club" and "see when [D'Ambrosio] would come out."  (*Id.*)

- While parked to watch the club and observe D'Ambrosio's exit, Mazza spotted Grancio's truck.  (*People v. DeVecchio* Tr. at 710-11.)  Mazza said to Scarpa "that's Nicky Black," and Scarpa responded "let's get him."  (*Id.* at 711.)  Grancio pulled away in his truck, and with Delmasto driving, Mazza, Scarpa and Delmasto followed.  (*Id.*)  Grancio came around a triangle or square in the road and pulled over as somebody came running out of a house and stood by the passenger side of Grancio's truck.  (*Id.* at 711-12.)  As Grancio "pulled over and somebody came running out of the house to see him," "we pulled up alongside.  And we shot him."  (*Id.* at 711.)

---

[2] During the trial, Favo was called and testified as a witness.  In his Decision and Order dismissing the case, Justice Reichbach singled out Mr. Favo for praise:

> The Court would be remiss if it did not single out for praise Special Agents Favo, Tomlinson and Andjich.  In the face of what must have been enormous institutional pressure to turn a blind eye when they grew increasingly concerned that the defendant had lost the necessary perspective and had grown too close to his informant, they stepped forward, risking the opprobrium of their colleagues.

*People v. DeVecchio* Decision and Order, dated November 1, 2007, at 3.

71425857.1



Honorable Frederic Block
December 7, 2007
Page 4

- Mazza confirmed that he, Scarpa and Delmasto did not expect to see Grancio specifically, and that when Grancio showed up, everything happened quickly. (*People v. DeVecchio* Tr. at 864.)  There was no plan to kill Grancio; there was not much time to think; and Mazza just acted.  (*Id.*)  The Grancio murder happened "unexpectedly."  (*Id.* at 867 (emphasis added).)

Mazza's testimony in the *People v. DeVecchio* trial also confirms his earlier testimony in the 2004 *Orena v. United States* hearing:

- On the day of the Grancio murder, Mazza, Scarpa and Delmasto went out to find anybody on the Orena faction side.  (*Orena v. United States* Hearing Transcript, dated January 7, 2004 ("*Orena v. US* Tr."), Ex. K to the Declaration of Douglas E. Grover, dated January 29, 2007, Dkt. # 74, at 108-09.)  Mazza, Scarpa and Delmasto were watching Funzi D'Ambrosio's club.  (*See id.* at 109.)  They parked a block from the club and waited to see if D'Ambrosio showed up.  (*See id.* at 109-110.)

- While Mazza, Scarpa and Delmasto were hoping to find D'Ambrosio, Grancio showed up in his car.  (*Orena v. US* Tr. at 110.)  As soon as Grancio was spotted, Delmasto, who was driving, drove towards Grancio.  (*Id.* at 112.)  Grancio pulled away and circled the block.  (*Id.*)  As somebody ran from a house to Grancio's car, "we pulled up alongside, and the rest you know."  (*Id.* at 112-13.)

- Mazza confirmed that they did not expect to see Grancio.  (*Orena v. US* Tr. at 110.)  Scarpa made calls that day, but Mazza did <u>not</u> know who he was calling and could <u>not</u> say it was DeVecchio; in any event, the calls were made when they were still watching the club.  (*Id.* at 98-99, 113.)  Mazza confirmed that "<u>from the moment [he] first saw Mr. Grancio till the moment he was killed, there was no time to make any phone calls</u> . . . ."  (*Id.* (emphasis added).)

In addition to confirming his earlier sworn testimony, in the recent *Kings County* trial, Mazza addressed this lawsuit in particular.  Mazza explained that, while he had been contacted over the telephone by an investigator for plaintiff, he did <u>not</u> agree to testify in this lawsuit. (*People v. DeVecchio* Tr. at 914.)

In light of the developments in the Kings County case, on November 7, 2007 we wrote to plaintiff's counsel and asked plaintiff to withdraw her claims against Favo.  Plaintiff's counsel declined.



Honorable Frederic Block
December 7, 2007
Page 5

*Mazza's Recent Testimony Renders Plaintiff's Central Theory Futile*

As set forth above, plaintiff alleges that Favo is liable for the Grancio murder on the basis that, just prior to killing Grancio, Scarpa called DeVecchio and requested the removal of surveillance; DeVecchio directed Favo to remove surveillance; and then Scarpa and his associates killed Grancio.  Plaintiff relied on her hope that Mazza would substantiate this account by recanting his 2004 testimony before Judge Weinstein.[3]  (*See supra* at 1-2.)

That slim possibility no longer exists.  To the contrary, Mazza has testified under oath -- before and now, critically, after plaintiff opposed Favo's motion -- that Mazza, Scarpa and Delmasto came upon Grancio unexpectedly and things happened quickly; they immediately followed Grancio's truck until he pulled over and then they shot him; and that there was no time to make any phone calls from when they spotted Grancio.  (*See supra* at 3-4.)

Mazza's recent testimony confirms that plaintiff's theory of the events preceding Grancio's death is unfounded.  It further confirms that providing plaintiff the opportunity for discovery, beyond the immense evidentiary record she already has, cannot reasonably be expected to create any genuine issue of material fact.  Plaintiff cannot delay consideration of summary judgment merely by relying on her pleadings and baseless requests for discovery.  Finally, Mazza's recent testimony underscores Favo's entitlement to qualified immunity and accordingly, the early termination of this law suit against him.

We are prepared to further address these points, should the Court so desire, on December 14, 2007.

Respectfully,

/s/ Michael G. Considine

Michael G. Considine
Counsel to Christopher Favo

Attachment
cc:     Honorable Cheryl L. Pollak
        Counsel of Record (via ECF)

---

[3] Favo has attested that he was not directed by DeVecchio to terminate any surveillance on January 7, 1992.  (Affidavit of Christopher Favo, dated January 17, 2007, Dkt. # 68, at ¶ 17.)  DeVecchio has attested that Scarpa never asked him to terminate or remove any surveillance of Grancio, and that DeVecchio never in turn asked Favo to do so.  (Affidavit of R. Lindley DeVecchio, dated January 29, 2007, Dkt. # 70, at ¶¶ 3, 4.)

71425857.1