UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARIA GRANCIO, individually, and in her capacity as Executrix and Personal Representative of the Estate of Nicholas P. Grancio, <br><br> Plaintiff, <br><br> v. <br><br> R. LINDLEY DeVECCHIO; <br> CHRISTOPHER FAVO; <br> UNITED STATES OF AMERICA. <br><br> Defendants. | CIVIL ACTION NO.  06-CV-0069 (FB)(CPP) <br><br> **HEARING REQUESTED** <br><br> ECF Case |

### MEMORANDUM IN SUPPORT OF MARIA GRANCIO'S MOTION FOR RECONSIDERATION, TO AMEND JUDGMENT, OR RELIEF FROM JUDGMENT

On July 24, 2008, this Court entered a Memorandum and Order granting all Defendants' motions for summary judgment in this case, denying the Plaintiff's Rule 56(f) motion, and dismissing the case in its entirety. On July 25, 2008 a formal judgment corresponding to the Memorandum and Order was filed.  Mrs. Grancio now timely files this memorandum in support of her motion for reconsideration, under Local Civil Rule 6.3, or to amend the judgment under F.R.C.P. 59(e), or for relief from the judgment under F.R.C.P. 60(b) and will bring to the Court's attention the errors and matters overlooked, as well as the newly discovered evidence which require that the relief requested herein be granted.

For the reasons set forth below, Mrs. Grancio respectfully requests that all of her claims be reinstated and that she be given an opportunity for discovery as requested in her Rule 56(f) motion in order to avoid the manifest injustice effected by the Court's Memorandum and Order

and corresponding judgment.

## PROCEDURAL BASES FOR THE MOTION

Mrs. Grancio makes this motion, as noted, under three separate, but similar bases provided for by the Federal Rules of Civil Procedure and the Local Civil Rules of this Court.

First, she seeks reconsideration of the Court's Order and the corresponding Judgment under Local Civil Rule 6.3.[1]

Mrs. Grancio also proceeds under F.R.C.P. 59(e) and seeks to alter or amend the judgment entered by the Court on July 25, 2008 by which this Court erroneously dismissed all claims brought by Mrs. Grancio in her Amended Complaint.[2]

The standards for consideration of a motion for reconsideration under Local Civil Rule 6.3 and to alter or amend a judgment under Rule 59(e) "are identical." *Atlantic Casualty Insurance Company v. Joney Construction Corporation*, 2008 U.S. Dist. LEXIS (E.D.N.Y., July 12, 2008)(Spatt, J.). Such motions "should be granted only where the moving party demonstrates that the Court has overlooked factual matters of controlling precedent that were presented to it on the underlying motion and that would have changed its decision." *Id.* at *4 "Reconsideration may also be granted to 'correct a clear error or prevent manifest injustice." *Id*. *Accord, Wall v.*

---

[1] Local Civil Rule 6.3 provides that a notice of motion for reconsideration of a court order determining a motion must be served within 10 days after the entry of the order, or where the order results in the entry of a judgment, within 10 days of the entry of the judgment. The notice must be served with a memorandum "setting forth concisely the matters of controlling decisions which counsel believes the court has overlooked. There are to be no affidavits filed by any party nor any oral argument on the motion unless either is directed by the court. Since this is a combined motion and Local Rule 6.3 is the most specific of the three bases as to its procedural requirements (a memorandum is required, but no affidavit is permitted), Mrs. Grancio follows its provisions with respect to this submission and files her memorandum without any affidavit. However, to the extent factual representations are made herein, the undersigned makes them as an officer of the court and as if made pursuant to a formal declaration under 28 U.S.C. § 1746.

[2] Rule 59(e) provides simply that "Any motion to alter or amend a judgment shall be filed no later than 10 days after entry of the judgment."

*Union of NA, Laborers' International*, 2008 U.S. App. LEXIS 9536, *4 (2d Cir., May 2, 2008);

*Guilbert v. Corrections Officer James Sennet*, 235 Fed. Appx. 823 (2d Cir., June 6, 2007)(reversing dismissal of claim challenged by Rule 59(e) motion).

Mrs. Grancio also moves for relief from the Judgment and Order under F.R.C.P. 60(b) and, specifically under subsections (1), (2), and (6) of Rule 60(b).[3]

Like motions under the previously discussed bases, a motion under Rule 60(b) is too be strictly construed and not lightly granted and it is not intended to provide simply an opportunity for the re-litigation of issues already fully litigated and considered. *See e.g. Kneitel v. Danchuk*, 2007 U.S. Dist. LEXIS 92378, *10-*11 (E.D.N.Y., December 17, 2007); *Desena v. Pavel*, 2008 U.S. App. LEXIS (2d Cir., July 24, 2008)(reversing denial of Rule 60(b) motion).

## SUMMARY OF THE ARGUMENT

1.  The Court erred to the degree of creating a manifest injustice by dismissing the claims brought under the Federal Tort Claims Act. There was no notice of nor any argument presented in favor of dismissing those claims on the merits; nor could any such claim properly lie, especially at this juncture of the case. Indeed, a finding that the government's motion in any way went to the merits would undercut entirely and cannot possibly be reconciled with the government's express attempt to reserve its rights to challenge the merits in the event its motion were denied. [Govt. Memo at 1, n.2]

The only challenges to the FTCA claims raised by the government (the only party who could raise them on behalf of the Defendants in this case) were challenges to the timing of the

---

[3] The Rule and its relevant subsections provide the following: "On motion and upon such terms as are just, the court may relieve a party ... from a final judgment, order ... for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b) ... or (6) any other reason justifying relief from the operation of the judgment." The Rule further provides that a motion under it must be made within a "reasonable time" and as to reasons (1) and (2), within a year of the judgment at issue.

filing of those claims - i.e. whether they were filed outside the statute of limitations and whether they were filed properly in relation to the administrative claim.[4]

The Court ruled in favor of Mrs. Grancio and against the government with respect to both of its claims actually raised. That is, the Court entirely rejected the government's claim of lack of subject-matter jurisdiction. [M&O at 4,; 12-20] That was the entire basis for the government's

---

[4] The only thing even remotely approaching a suggestion that the government's motion could allow a consideration on the merits of the FTCA claims arose at oral argument. At pages 47-48 of the Transcript from the March 20, 2008 oral argument, after advising the government pretty clearly that the subject-matter arguments would not fly, the Court expressly recognized that the government had only moved to dismiss on statute of limitations and exhaustion grounds. But the Court suggested that the government cold move for summary judgment on the merits (after government counsel acknowledged that the government "would still be in the case" if the Court ruled in favor of the individual defendants on the *Bivens* claims. In one line, government counsel asserted: "I did. I joined the papers. The government joined the papers." [Tr. 47]. The Court then asked: "Basically, I can view your papers as also summary judgment on the merits of the case? Government counsel answered: Absolutely, Your Honor. My Notice of Motion was to dismiss the .... [Tr. 47-48]. Again, with all due respect to counsel, while the papers were styled as a motion to dismiss or for summary judgment, it clearly was done so only because materials outside the pleadings were being offered in support. It is utter nonsense to suggest even for a second that there is anything at all any place in the government's motion papers to give anyone notice that the government was in any way making any claim about the merits of the torts alleged in this case.

Moreover, again, any discussion of the merits would not in any way be limited to whether Scarpa called Devecchio after seeing Grancio or whether Devecchio called Favo to call of the surveillance. The inquiry is very different and is inextricably bound up in the need for discovery. The questions would be, for example, whether it was negligent for Favo and Devecchio to take allow (let alone take affirmative steps to license - as we already know they did) Scarpa to stay on the streets as a known and active murderer, and in this case, knowing Grancio to be his target, and to have called off such surveillance under any circumstances, let alone for a routine meeting, as claimed, especially in the face of specific warnings about Grancio being a target just the day before and the specific protestations of the surveillance officers. This is all apart from the constitutional violation conceptually and in terms of proof.

Similar to the *Bivens* claims, the suggestion by counsel for Mr. Favo that somehow even this question, whether on the constitutional failure to protect or on a tort claim of negligence or other relevant claim, turns on whether Favo knew Scarpa was in Grancio's presence when he called off the surveillance is more nonsense. [e.g. Tr. 30-31] The Court has before it already without any discovery competent evidence showing what Favo knew and that is enough for both the constitutional claims and the tort claims. The parties would have the Court consider the facts in a vacuum without considering what Favo and Devecchio knew already about Scarpa and licensed him to do before the Grancio murder and that is not appropriate.

motion to dismiss or for summary judgment. There was no discussion at all concerning the merits of her tort claims.

The Court clearly erred in treating the government's motion as if it went to the merits of the claims or in any way went beyond an argument based on subject-matter jurisdiction. The Court overlooked the allegations in the First Amended Complaint supporting causes of action in tort and specifically alleging the specific various causes of action in tort claimed here.[5] The FTCA claims are not all at all based on the facts the Court felt lacking such as to justify granting summary judgment on other claims in the case - i.e., the Court's finding on the lack of evidence

---

[5] The factual allegations supporting the various tort claims raised by Mrs. Grancio are found throughout the First Amended Complaint. On Page 18 of the First Amended Complaint, Mr. Grancio set out her Count III, in which she specifically alleged tort claims under the FTCA against the Defendant United States (standing in the place of the individual defendants pursuant to its FTCA certification) for negligence, gross negligence, failure to warn, failure to protect, intentional infliction of emotional distress, wrongful death, conspiracy, conscious pain and suffering, negligent hiring, negligent retention, negligent supervision of its agents, employees, and informants, and negligence *per se*, all of which, as properly alleged under the FTCA would subject the United States, if a private person, to liability for the acts and omissions of its employees and agents under the laws of the State of New York, the place of the acts and omissions.

Each cause of action in tort is then spelled out further in the following pages of the First Amended Complaint regarding the elements under New York law. None of these tort claims is in any way dependent on whether Scarpa called Devecchio after spotting Grancio or on whether Devecchio called Favo. Rather they are based on all of the facts and evidence submitted to the Court thus far and more to be sought through discovery which establishes and would establish further things like the defendants' corrupt relationship with Scarpa, giving him license to kill and stay on the street committing crimes and with a gun, knowing he was killing, covering up his murders and blaming others to continue to give him such license, knowing Grancio was a specific target on the day of his murder and that Scarpa was on the streets armed, looking for Grancio as a target, negligently ignoring the entreaties by the surveillance officers to not pull them off of surveillance, knowing the same, negligently retaining and failing to supervise Devecchio and Favo in light of their corrupt relationship with Scarpa and Devecchio's history with respect to the same, and on and on. The Defendants' negligence and liability for the other torts arises from their whole relationship with Scarpa in giving him license and the duty owed to Grancio, knowing him to be Scarpa's target and to the public at large. None of this depends on the matters the Court found "insufficient" concerning the Scarpa to Devecchio call and the Devecchio to Favo call. There was no lawful basis at all for even considering their merits at this stage and certainly not for dismissing these claims.

that Scarpa called Devecchio after spotting Grancio and before killing him and the lack of evidence of communication between Devecchio and Favo before the surveillance was removed by Favo. The FTCA claims must be reinstated in their entirety.

2.    The Court erred in dismissing all of the *Bivens* claims, resulting in a manifest injustice. Only one theory for relief in this case was dependent in any way on Mazza and even as to that claim, as will be discussed below, the Court construed the claim too narrowly and Mazza has since come forward voluntarily to explain further on what he told the authorities at the time, relevant to the Court's concern on the matter.

However, putting that aside here, other *Bivens* claims in the case were based on the indisputable facts that at the time Mr. Grancio was killed, the Defendants knew Scarpa to be a killer on the prowl for more victims, knew specifically that Grancio was one of his intended targets, had received an express warning of the same just before the killing, and the police officers on surveillance warned Favo of this in arguing against being pulled off surveillance. Mrs. Grancio alleged that this was actionable under *Bivens*, as set forth in her papers in response to the summary judgment motion with ample authority for that proposition. This was not in any way dependent on Mazza's role, the timing of Scarpa's phone call to Devecchio in relation to the murder or any other factor relied upon by the Court in granting summary judgment. These *Bivens* claims must be reinstated.

The facts supporting the various bases for the claims for relief under *Bivens* are set forth throughout the First Amended complaint. Moreover, in Counts I and II of the First Amended Complaint, the various cognizable legal theories for relief under *Bivens*, going well beyond just a claim of direct involvement in the murder from the Scarpa phone call, are set forth and the Court has overlooked all of those other claims in its dismissal of the case in its entirety, reflecting clear error resulting in a manifest injustice.

3. The Court's analysis of the *Bivens* claim based on a theory for relief which actually does look to evidence from Mazza, if not being "hinged" on it - the theory of direct action by Devecchio in having Favo call off the surveillance, based on a phone call by Scarpa requires far too narrow a set of facts and in that regard was a clear error as well, requiring the reinstatement of all claims and the granting of discovery in this case. There is no requirement that in order to establish that direct involvement *Bivens* theory, Mrs. Grancio has to prove that Scarpa called Devecchio after seeing Grancio and the surveillance in place. The Court's M&O implies that if while looking for Grancio and others on the day in question, Scarpa stopped at Mazza's sister's house and used the phone he regularly used to call Devecchio and told him he had seen surveillance while driving around or that he did not want any surveillance up that day, this would not be actionable because the request did not bear a sufficient temporal relationship to the killing. That simply is not a correct application of the law.

On this point, we have new evidence from Mazza described herein - evidence that would have surfaced undoubtedly if basic discovery would have been permitted. Additionally, while relying on Mazza's testimony at a hearing in the *Orena* case, the Court ignores Mazza's own statements about being intimidated by people working with Devecchio, ignores the hearsay nature as to the instant case of Mazza's testimony before Judge Weinstein in that case, the differing interests of the parties, and Mazza's own words that he was not asked the right questions.

The Court also ignores much of what was submitted by way of exhibits, including the sworn statement by Scarpa's own son who discussed the matter directly with his father and who also dealt directly with Devecchio in connection with murders Devecchio facilitated and actively helped them commit.

Finally, in the way of new evidence, to the extent the Court commented on and seems to

be impressed to some end that the dismissal of the criminal charges against Devecchio is relevant [e.g. Tr. 41; 46], the Court should be aware that the Special Prosecutor appointed originally to look into what happened with respect to the witness who was testifying at the criminal case when the case was dismissed (notwithstanding compelling fact witnesses on Devecchio's direct and facilitative involvement with various murders), upon information and belief, is pursuing many of the items we seek in discovery here as her investigation has broadened into why the D.A.'s case was botched so badly and dropped, notwithstanding an abundance of evidence and he seeks answers to important questions through subpoenas and interviews that are many of the same questions we have raised and have asked for an opportunity to investigate through compelled discovery here.

It is neither appropriate under the relevant rules under which we are proceeding here, nor our intended purpose to reargue the merits addressed in our summary judgment and Rule 56(f) papers. Rather we set forth herein the errors we cite and the matters overlooked as directed by the relevant Rules.

## **RELEVANT ERRORS IN THE COURT'S MEMORANDUM AND ORDER**

The following reflects a summary of the Order at issue ["M&O"], with a focus on the portions particularly relevant here in order to provide the kind of "concise" submission directed under the applicable Rules. The Court begins with a description of the parties and the claims. It provides that the claims are of three basic varieties - *Bivens* claims, FTCA claims and New York State tort claims, with the latter due to be dismissed because of the FTCA certification. [M&O at 2][6]

---

[6] Perhaps one of the clear errors or matters overlooked identified below with respect to the *Bivens* claims was the Court's grouping in its mind of all of the *Bivens* claims together, for as one reads through the M&O the conclusion is inescapable that the Court seems to think that all of the *Bivens* claims (and the FTCA claims) are dependent on whether Scarpa called Devecchio after seeing Grancio and before killing him and on whether Devecchio told Favo to pull off the

Next the Court explains its understanding of the government's claims in its motion to dismiss or for summary judgment for an alleged lack of subject-matter jurisdiction with respect to the FTCA claims, noting that its claims are two-fold: (1) it challenged the claims on statute of limitations grounds and (2) on exhaustion grounds. [M&O at 2-3] Here the Court absolutely is correct. The Court then goes on to describe the individual defendants' claims for dismissal or summary judgment on the *Bivens* claims. [M&O at 3].

However, the Court clearly erred when it next found that "All defendants seek, in the alternative, summary judgment on the merits, arguing that Mrs. Grancio has failed to adduce sufficient evidence to support her claim that DeVecchio and Favo played a role in Grancio's murder." [M&O at 3]

This simply is not so and indisputably reflects a clear error which has resulted in a manifest injustice. In no way, shape, or form, did the government seek summary judgment on the merits, as an alternative or otherwise and with all due respect, the Court was wholly without authority or lawful basis to dismiss any of the FTCA claims in this case.

The government gave no notice of any such intention in its motion and made no argument which in any way touched on the merits, let alone which sought to dismiss the claims on the merits.[7] Indeed, just the opposite is true. The government expressly assumed the merits of the

---

surveillance and that simply is inaccurate and an altogether misreading or misunderstanding of the Amended Complaint. Indeed, neither factor is particularly relevant to and certainly is not necessary to prove any claim other than one of the *Bivens* claims (and even as to that one claim, the Court has too stringently required the call to have been made after seeing Grancio and before killing him and in requiring that alleged communication at that time between Devecchio and Favo, given what we have learned about Favo's direct responsibility for Scarpa as well). This will be explained further below.

[7] To the extent the government's motion was styled as a motion for summary judgment in the alternative, it was only insofar as it was asking the Court to consider materials outside the pleadings in connection with its exclusively jurisdictionally based motion, such that the Court could construe it as a motion for summary judgment. It was not in any way because it was a motion directed to the merits of the claims.

claims were true for purposes of the motion in trying to establish earlier notice of the facts underlying the claims.

Moreover, the government purported to expressly reserve the "right" to make motions addressed to the merits of the claims and particular merit-based FTCA defenses in the event the Court denied its motion which raised solely jurisdictional grounds.[8]  A reading of the Table of Contents and all motion papers submitted by the government further establish the point.

Then in previewing its decision at Page 4 of the M&O, after noting that it would be rejecting the government's subject-matter jurisdiction claims, the Court advised that it would, nevertheless be dismissing all claims because of a purported failure to "offer sufficient evidence to support (Mrs. Grancio's) claim that Devecchio and Favo were involved in the murder of her husband ... " and for this reason it did not have to consider, *inter alia*, whether she sufficiently alleged a constitutional violation or the doctrine of qualified immunity.

The Court's clear error here flows from a couple of areas.  First, it entirely misreads and misunderstands the *Bivens* and FTCA claims for the Court explains later in the M&O that what it means by a failure to adduce sufficient evidence that Devecchio and Favo were involved in the murder of her husband is that she failed to show that Scarpa called Devecchio after seeing Grancio and before killing him and failed to show that Devecchio directed Favo to call off the surveillance.

While it is of course true that Mrs. Grancio alleged those facts directly, based on what Mazza had told Dresch and Edwards, they were not necessary to prove even as to the one variety of *Bivens* claim to which they were relevant.  Indeed, since the motions were submitted, Mazza for the first time reached out to the undersigned, after refusing at all times previously to speak with or help the undersigned and advised that he told law enforcement investigating this matter

---

[8]  Government Memorandum in support of its Motion to Dismiss at 1, n.2.

from the very start (when they asked him repeatedly if he didn't think it was odd that surveillance was pulled off of Grancio before the murder and otherwise) that he believed Scarpa called Devecchio from his (Mazza's sister's) phone in advance to make sure the streets were clear of surveillance - and not from the car after seeing Grancio, since Grancio was just one of their targets that day - and that he had implored law enforcement to pull his sister's phone records to show the timing of the call. He said further that at the *Orena* hearing and at other times, no one asked him the right questions about it, just focusing on the time immediately before the murder and after Grancio was spotted. This, of course, is relevant under Rule 60(b)(2).

Perhaps more significantly here, the other *Bivens* claims and all of the FTCA claims do not in any way depend on whether or not Scarpa called Devecchio on the occasion of the murder or whether Devecchio told Favo to pull the surveillance as opposed to whether Favo did it on his own (especially now that we know, as we submitted in our moving papers, that Favo also had direct dealings with and responsibility for Scarpa, knew he had committed murders, knew that Grancio was a specific target on the day of his murder, and that the surveillance officers specifically argued with Favo about being pulled from surveillance, reminding him of the danger).

The *Bivens* claims, drawing on facts alleged throughout the First Amended Complaint and supported by numerous exhibits submitted in opposition to the summary judgment motions which establish even without critically important discovery, the corrupt relationship between Devecchio/Favo and Scarpa, giving him license to kill, covering up his killing with false documents and by failing to fulfill their reporting obligations, intervening to prevent his arrest, etc. and which further establish that both knew Grancio an intended target for Scarpa at the very time in question - expressly allege constitutional claims for wilfully, knowing, intentionally, maliciously, recklessly, wantonly, and with deliberate indifference caused or allowed to be

caused the death of Mr. Grancio by *inter alia*, violating their "lawfully required duties to warn (Grancio), to protect him, to report unlawful conduct by informants and by each other and others and to supervise the same...." There are additional *Bivens* claims alleged for a conspiracy to engage in conduct leading to or facilitating his death. [First Amended Complaint at 18-19] The Court has overlooked all of these additional *Bivens* claims for relief on theories having little or nothing to do with the two facts on which the Court's entire decision is based - the timing of the Scarpa phone call and the lack of concrete evidence showing how, when, and where, or even whether Devecchio actually called Favo and told him to call off the surveillance. This is further clear error resulting in a manifest injustice.

In describing the relationship between the FBI, Devecchio and Favo with Scarpa, [e.g. M&O at 7], the Court ignores the evidence we submitted, after obtaining it only by chance, establishing a much more direct role for Favo in dealing with Scarpa and in actively covering up his crimes and in trying to make others appear to be informants as to information Scarpa had provided, without regard to the danger he caused in doing so to Mazza and others.

The most significant examples of clear error in the Court's M&O are found beginning on Page 20 and continuing to the end, with special focus on Page 23. There is where the Court appears to have rested its decision to dismiss all claims on their merits and to deny any discovery - primarily, if not exclusively based on its conclusion that since there appears to be no proof that there was sufficient time for Scarpa to have called Devecchio to get the surveillance pulled after he spotted Grancio in the spot where he killed him.[9] That conclusion overlooks the majority of

---

[9] The Court attempts, at Pages 23-24 of the M&O to bolster the clearly erroneous conclusion that "Mrs. Grancio's claims hinge on Mazza" by taking a page from the Defendants' playbook and offering as proof an email I wrote to defense counsel to the effect that I would not have taken on the case if I had not believed Mazza's accounts as he gave them to Dr. Dresch and attorney Flora Edwards. This email was not intended in any way, shape, or form to indicate that claims which obviously by any objective consideration do not depend on Mazza actually "hinge" on him. The claims themselves and the evidence adduced and sought in support of them make

the legal theories alleged in the case and the bulk of the facts established by competent evidence and argument submitted in opposition to the summary judgment motions and in support of the Rule 56(f) motions, for the reasons already explained herein.

At Page 25 of the M&O, the Court finds that, while 3 of the 4 recognized prongs for a Rule 56(f) motion, the 2nd prong, requiring a showing on "how the discovery sought could be expected to create a genuine issue of material facts, other than a conclusory assertion that it might yield circumstantial evidence to support an inference that Devecchio and Favo acted improperly." The Court clearly appears to have overlooked the materials submitted in support of the Rule 56(f) motion, as well as the materials submitted in connection with the opposition to summary judgment which dealt to some degree to this issue, dealt expressly with and at length in the Schoen Affirmation in support of the rule 56(f) motion, especially at 9-end and the supporting Memorandum of law, especially at 7-10. It may be that the clear error in this regard

---

this abundantly clear. Moreover, what on earth does my willingness to take on a *pro bono* case, based on arbitrary criteria I establish for myself before I put in literally thousands of *pro bono* hours, as here, have to do with the point for which the email is offered. The fact that I believed Mazza's account and that this made it compelling enough for me to take on the case bears no relevant to and certainly does not logically lead to the conclusion worthy of comment by a Court that there is no case on other theories without that statement being true. Let me make it as clear as I can. I have to choose from many, many requests for *pro bono* cases every year. I won the American Bar Association's national award for such service because I do a lot of it (more than any mid-sized firm in the country according to the ABA) and I am a sole practitioner. I found Dr. Dresch's story, corroborated by Flora Edwards' story most compelling and their stories related to Mazza. Even with their stories, however, I did not agree to take the case on because of my own time and financial commitments elsewhere. However, when the lawyers who had agreed to take on the case concluded that they did not have enough experience with the constitutional claims and asked me to actually file the case, I agreed, virtually by default. What Dr Dresch and Flora Edwards told me were the deciding factors in my mind in agreeing to take it; but my personal views on which cases I should and should not take have no place in a decision like this and have no bearing on whether a particular theory of the case is exclusive or critically important or otherwise. It simply is wrong by any measure to conclude that Mrs. Grancio's claims "hinge" on Mazza and to suggest otherwise ignores all of the many other legal bases for the claims and the entire background of the corrupt relationship that existed here beyond dispute, as well as the many ways that relationship manifested itself - ways that are directly relevant to the applicable legal theories raised which do not in any way hinge on Mazza.

flows from a misunderstanding of the real nature of the *Bivens* claims and the tort claims and the facts on which they rely for proof of their elements; but whatever the source of the error, it was clear error and denying any and all opportunities on the background of this case, including indisputable facts about the rampant corruption and the seriousness of the issues in this case effected a manifest injustice.

## CONCLUSION

Based on all of the foregoing and under the appropriate relevant legal standards, the Court, respectfully must reconsider its Memorandum and Order and the resulting judgment, provide full relief from it by vacating it in its entirety, or at least must amend or alter it to effect the reinstatement of all FTCA claims and all *Bivens* claims which simply do not turn on the factors the Court found lacking in evidence on this record. We of course disagree as well with the Court's narrow reading of what proof ought to be adduced and what facts ought to have to be established at this juncture to support the claim based on Scarpa having called Devecchio to call off surveillance that day; but it is more understandable and is pretty clearly set up for appeal.

To have to go to the Court of Appeals because of the dismissal of the FTCA claims on their merits based on nonexistent arguments never made in this case and which cannot possibly be supported (as well as on the *Bivens* claims not dependent on when or if Scarpa called Devecchio in a close temporal relationship to killing Grancio) would an unfair and unnecessary expense and time burden to impose where, as here, the error is so clear and the injustice so manifest.

   Mrs. Grancio respectfully requests oral argument in connection with this motion.  The undersigned will be in Africa (remote sections of Zambia) and mostly without access to email or telephones until August 15, 2008, and therefore cannot reply or appear for argument before that date.

Dated: Johannesburg, South Africa
August 4, 2008

           Respectfully submitted,

        LAW OFFICES OF DAVID I. SCHOEN
          By:  <u>S/ David I. Schoen</u>
           David I. Schoen (DS-0860)
          2800 Zelda Road, Suite 100-6
          Montgomery, Alabama  36106
        (334) 395-6611; Fax: (917) 591-7586
           DSchoen593@aol.com

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

MARIA GRANCIO, individually, and
in her capacity as Executrix and Personal
Representative of the Estate of Nicholas P.
Grancio,

    Plaintiff,

v.                                                                          CIVIL ACTION NO.  06-CV-0069 (FB)(CPP)

R. LINDLEY DeVECCHIO;
CHRISTOPHER FAVO;
UNITED STATES OF AMERICA.
                                                                    ECF Case

    Defendants.

## CERTIFICATE OF SERVICE

       I hereby certify that on August 4, 2008, I served a copy of the foregoing Notice of Motion and Memorandum in Support of Mrs. Grancio's Motion under Local Civil Rule 6.3, F.R.C.P. 59(e) and 60(b) on counsel for all Defendants through the ECF system.

s/David I. Schoen (DS0860)

David I. Schoen, Attorney at Law
2800 Zelda Road, Suite 100-6
Montgomery, Alabama 36106
Phone: 334-395-6611; Fax: 917-591-7586
E-Mail: DSchoen593@aol.com

COUNSEL FOR PLAINTIFF